# APPENDIX 2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| ERICKSON OCASIO, on behalf of plaintiff and the class members described herein, | ) ) ) | |
| Plaintiff, | ) ) ) | Case No. 1:15-cv-10167 |
| vs. | ) ) ) | Judge Sara L. Ellis |
| FIRST FINANCIAL INVESTMENT FUND V LLC, and TATE & KIRLIN ASSOCIATES, INC., | ) ) ) ) | Magistrate Judge Maria Valdez |
| Defendants. | ) ) ) | |

## DECLARATION OF DANIEL A. EDELMAN

Daniel A. Edelman declares under penalty of perjury, as provided for by 28 U.S.C. §1746, that the following statements are true:

1. Edelman, Combs, Latturner & Goodwin, LLC, has 9 principals, Daniel A. Edelman, Cathleen M. Combs, James O. Latturner, Tara L. Goodwin, Francis R. Greene, Julie Clark, Heather Kolbus, Cassandra P. Miller, Tiffany N. Hardy, and four associates.

2. **Daniel A. Edelman** is a 1976 graduate of the University of Chicago Law School. From 1976 to 1981 he was an associate at the Chicago office of Kirkland & Ellis with heavy involvement in the defense of consumer class action litigation (such as the General Motors Engine Interchange cases). In 1981 he became an associate at Reuben & Proctor, a medium-sized firm formed by some former Kirkland & Ellis lawyers, and was made a partner there in 1982. From the end of 1985 he has been in private practice in downtown Chicago. Virtually all of his practice involves litigation on behalf of consumers, through both class and individual actions. He is the author of the chapters on the "Fair Debt Collection Practices Act," "Truth in Lending Act," and "Telephone Consumer Protection Act" in *Illinois Causes of Action* (Ill. Inst. For Cont. Legal Educ. 2014 and earlier editions), author of the chapter on the Telephone Consumer Protection Act in *Federal Deception Law* (National Consumer Law Center 2013 Supp.), author of *Collection Defense* (Ill. Inst. Cont. Legal Educ. 2008, 2011), and *Collection Litigation: Representing the Debtor* (Ill. Inst. Cont. Legal Educ. 2014); author of Chapter 6, "Predatory Lending and Potential Class Actions," in *Real Estate Litigation* (Ill. Inst. For Cont. Legal Educ. 2004, 2008, 2013), co-author of Rosmarin & Edelman, *Consumer Class Action Manual* (2d-4th editions, National Consumer Law Center 1990, 1995 and 1999); author of *Representing Consumers in Litigation with Debt Buyers* (Chicago Bar Ass'n 2008); *Predatory Mortgage Lending* (Ill. Inst. for Cont. Legal. Educ. 2008, 2011), author of Chapter 6, "Predatory Lending and Potential Class Actions," in *Real Estate Litigation* (Ill. Inst. For Cont. Legal Educ. 2004, 2008, 2014), *Illinois Consumer Law*, in Consumer Fraud and Deceptive Business Practices Act and Related Areas Update (Chicago Bar Ass'n 2002); *Payday Loans: Big Interest Rates and Little Regulation*, 11 Loy.Consumer L.Rptr. 174 (1999); author of *Consumer Fraud and Insurance Claims*, in Bad Faith and Extracontractual Damage Claims in Insurance Litigation, Chicago Bar Ass'n 1992; co-author of Chapter 8, "Fair Debt Collection Practices Act," *Ohio*

1

*Consumer Law* (1995 ed.); co-author of *Fair Debt Collection: The Need for Private Enforcement*, 7 Loy.Consumer L.Rptr. 89 (1995); author of *An Overview of The Fair Debt Collection Practices Act*, in Financial Services Litigation, Practicing Law Institute (1999); co-author of *Residential Mortgage Litigation*, in Financial Services Litigation, Practicing Law Institute (1996); author of *Automobile Leasing: Problems and Solutions*, 7 Loy.Consumer L.Rptr. 14 (1994); author of *Current Trends in Residential Mortgage Litigation*, 12 Rev. of Banking & Financial Services 71 (April 24, 1996); co-author of *Illinois Consumer Law* (Chicago Bar Ass'n 1996); co-author of D. Edelman and M. A. Weinberg, *Attorney Liability Under the Fair Debt Collection Practices Act* (Chicago Bar Ass'n 1996); and author of *The Fair Debt Collection Practices Act: Recent Developments*, 8 Loy.Consumer L. Rptr. 303 (1996), among others. Mr. Edelman is also a frequent speaker on consumer law topics for various legal organizations including the Chicago Bar Association, the National Consumer Law Center's Consumer Rights Litigation Conference, and the Illinois Institute for Continuing Legal Education, and he has testified on behalf of consumers before the Federal Trade Commission and the Illinois legislature. He is a member of the Illinois bar and admitted to practice in the following courts: United States Supreme Court, Seventh Circuit Court of Appeals, First Circuit Court of Appeals, Second Circuit Court of Appeals, Third Circuit Court of Appeals, Fifth Circuit Court of Appeals, Sixth Circuit Court of Appeals, Eighth Circuit Court of Appeals, Ninth Circuit Court of Appeals, Tenth Circuit Court of Appeals, Eleventh Circuit Court of Appeals, United States District Courts for the Northern and Southern Districts of Indiana, United States District Courts for the Northern, Central, and Southern Districts of Illinois, United States District Courts for the Eastern and Western Districts of Wisconsin, and the Supreme Court of Illinois. He is a member of the Northern District of Illinois trial bar.

3. **Cathleen M. Combs** is a 1976 graduate of Loyola University Law School. From 1984-1991, she supervised the Northwest office of the Legal Assistance Foundation of Chicago, where she was lead or co-counsel in class actions in the areas of unemployment compensation, prison law, social security law, and consumer law. She joined what is now Edelman, Combs, Latturner & Goodwin, LLC in early 1991 and became a named partner in 1993. Ms. Combs received an Award for Excellence in Pro Bono Service from the Judges of the United States District Court for the Northern District of Illinois and the Chicago Chapter of the Federal Bar Association on May 18, 2012. Ms. Combs has argued over fifteen cases in the 1st, 3rd and 7th Circuit Court of Appeals and the Illinois Appellate Court, and she is a frequent speaker on consumer law topics at various legal organizations including the Chicago Bar Association, the National Consumer Law Center's Consumer Rights Litigation Conferences, and the Practicing Law Institute's Consumer Financial Services Institute. Ms. Combs is coauthor of *The Bankruptcy Practitioner's Guide to Consumer Financial Services Actions After the Subprime Mortgage Crisis* (LRP Publications 2010). Her reported decisions include: *Suesz v. Med-1 Solutions, LLC*, 757 F.3d 636 (7th Cir. 2014) (en banc); *Siwulec v. J.M. Adjustment Servs., LLC*, 465 Fed. Appx. 200 (3d Cir. 2012); *Nielsen v. Dickerson*, 307 F.3d 623 (7th Cir. 2002); *Chandler v. American General Finance, Inc.*, 329 Ill. App.3d 729, 768 N.E.2d 60 (1st Dist. 2002); *Miller v. McCalla Raymer*, 214 F.3d 872 (7th Cir. 2000); *Bessette v. Avco Financial Services*, 230 F.3d 439 (1st Cir. 2000); *Emery v. American Gen. Fin., Inc.*, 71 F.3d 1343 (7th Cir. 1995); *McDonald v. Asset Acceptance, LLC,* 296 F.R.D. 513 (E.D.Mich. 2013); and *Tocco v. Real Time Resolutions*, ___ F.Supp.2d ___, 1:14CV810, 2014 WL 3964948 (S.D.N.Y., Aug. 13, 2014). She is a member of the Illinois bar and admitted to practice in the following courts: United States District Courts for the Northern, Central and Southern Districts of Illinois, United States District Courts for the Northern and Southern Districts of Indiana, Seventh Circuit Court of Appeals, Third Circuit Court of Appeals, Fifth Circuit Court of Appeals, Tenth Circuit Court of Appeals, and United States District Court for the District of Colorado. She is a member of the Northern District of Illinois trial bar.

4.      **James O. Latturner** is a 1962 graduate of the University of Chicago Law School.  Until 1969, he was an associate and then a partner at the Chicago law firm of Berchem, Schwanes & Thuma.  From 1969 to 1995 he was Deputy Director of the Legal Assistance Foundation of Chicago, where he specialized in consumer law, including acting as lead counsel in over 30 class actions.  His publications include Chapter 8 ("Defendants") in *Federal Practice Manual for Legal Services Attorneys* (M. Masinter, Ed., National Legal Aid and Defender Association 1989); *Governmental Tort Immunity in Illinois*, 55 Ill.B.J. 29 (1966); *Illinois Should Explicitly Adopt the Per Se Rule for Consumer Fraud Act Violations*, 2 Loy.Consumer L.Rep. 64 (1990), and *Illinois Consumer Law* (Chicago Bar Ass'n 1996).  He has taught in a nationwide series of 18 Federal Practice courses sponsored by the Legal Services Corporation, each lasting four days and designed for attorneys with federal litigation experience.  He has argued over 30 appeals, including two cases in the United States Supreme Court, three in the Illinois Supreme Court, and numerous cases in the Seventh, Third, Fifth, and Eleventh Circuits.  Mr. Latturner was involved in many of the significant decisions establishing the rights of Illinois consumers. He is a member of the Northern District of Illinois trial bar.

5.      **Tara L. Goodwin** is a graduate of the University of Chicago (B.A., with general honors, 1988) and Illinois Institute of Technology, Chicago-Kent College of Law (J.D., with high honors,1991).  Ms. Goodwin was Chair of the Chicago Bar Association's Consumer Law Committee from 2007 - 2010, and she has been on the faculty of the Practicing Law Institute's Consumer Financial Services Institute in Chicago for the past few years, speaking on issues relating to the Fair Debt Collection Practices Act and mortgage litigation.  Ms. Goodwin is also a frequent speaker at the Chicago Bar Association, speaking on topics such as how to assist consumers with credit reporting problems.  **Reported Cases.**  *Williams v. Chartwell Financial Services, Ltd.*, 204 F.3d 748 (7th Cir. 2000); *Hillenbrand v. Meyer Medical Group*, 288 Ill.App.3d 871, 682 N.E.2d 101 (1st Dist. 1997), later opinion, 308 Ill.App.3d 381, 720 N.E.2d 287 (1st Dist. 1999); *Bessette v. Avco Fin. Servs.*, 230 F.3d 439 (1st Cir. 2000); *Large v. Conseco Fin. Servicing Co.*, 292 F.3d 49 (1st Cir. 2002); *Flippin v. Aurora Bank, FSB*, 12 C 1996, 2012 WL 3260449 , 2012 U.S. Dist. LEXIS 111250 (N.D.Ill. Aug. 8, 2012); *Henry v. Teletrack, Inc.*, 11 C 4424,  2012 WL 769763, 2012 U.S. Dist. LEXIS 30495 (N.D.Ill.  March 7, 2012); *Kesten v. Ocwen Loan Servicing, LLC*, 11 C 6981, 2012 WL 426933, 2012 U.S. Dist. LEXIS 16917 (N.D.Ill. Feb. 9, 2012); *Bunton v. Cape Cod Village, LLC*, No. 09-1044, 2009 WL 2139441, 2009 U.S. Dist. LEXIS 57801 (C.D.Ill. July 6, 2009); *Wilson v. Harris N.A.*, No. 06 C 5840, 2007 WL 2608521, 2007 U.S. Dist. LEXIS 65345  (N.D.Ill. Sept. 4, 2007); *Carbajal v. Capital One*, 219 F.R.D. 437 (N.D.Ill. 2004); *Russo v. B&B Catering*, 209 F.Supp.2d 857 (N.D.Ill. 2002);  *Romaker v. Crossland Mtg. Co.*, No. 94 C 3328,  1996 WL 254299, 1996 U.S.Dist. LEXIS 6490  (N.D.Ill. May 10, 1996);  *Mount v. LaSalle Bank Lake View*, 926 F.Supp. 759 (N.D.Ill 1996).  Ms. Goodwin is a member of the Illinois bar and is admitted in the Seventh, First, and D.C. Circuit Courts of Appeals, and the United States District Courts for the Northern and Central Districts of Illinois, and the Northern District of Indiana.   She is also a member of the Northern District of Illinois trial bar.

6.      **Francis R. Greene** is a graduate of Johns Hopkins University (B.A 1984), Rutgers University (Ph.D. 1991), and Northwestern University School of  Law (J.D., 2000).  Mr. Greene was Chair of the Chicago Bar Association's Consumer Law Committee from 2011-2012 and Vice-Chair from 2010-11. **Reported Cases:** *Janetos v. Fulton, Friedman & Gullace, LLP*, 825 F.3d 317  (7th Cir. 2016); *Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076 (7th Cir. 2013); *Soppet v. Enhanced Recovery Co.*, 679 F.3d 637 (7th Cir.  2012); *Ruth v. Triumph Partnerships*, 577 F.3d 790 (7th Cir. 2009); *Handy v. Anchor Mortgage Corp.*, 464 F.3d 760 (7th Cir. 2006); *Tri-G, Inc. v. Burke, Bosselman & Weaver*, 222 Ill.2d 218, 856 N.E.2d 389 (2006); *Johnson v. Thomas*, 342 Ill.App.3d 382,  794 N.E.2d 919 (1st Dist. 2003);  *Hale v. Afni, Inc.*, 08 C 3918, 2010 WL 380906, 2010 U.S. Dist. LEXIS 6715 (N.D.Ill. Jan. 26, 2010); *Parkis v. Arrow Fin*

*Servs.*, 07 C 410, 2008 WL 94798, 2008 U.S. Dist. LEXIS 1212 (N.D.Ill. Jan. 8, 2008); *Foster v. Velocity Investments*, 07 C 824, 2007 WL 2461665, 2007 U.S. Dist. LEXIS 63302 (N.D. Ill. Aug. 24, 2007); *Foreman v. PRA III, LLC*, 05 C 3372, 2007 WL 704478, 2007 U.S. Dist. LEXIS 15640 (N.D. Ill. March 5, 2007); *Schutz v. Arrow Fin. Services*, 465 F. Supp. 2d 872 (N.D.Ill. 2006); *Pleasant v. Risk Management Alternatives*, 02 C 6886, 2003 WL 22175390 (N.D.Ill. Sept. 19, 2003). He is a member of the Illinois Bar and is admitted to practice in the Seventh Circuit Court of Appeals, the United States District Courts for the Northern, Central, and Southern Districts of Illinois, Eastern District of Wisconsin, Northern District of Indiana, and Western District of Texas. He is a member of the Northern District of Illinois Trial Bar.

7.     **Julie Clark** (neé Cobalovic) is a graduate of Northern Illinois University (B.A., 1997) and DePaul University College of Law (J.D., 2000). **Reported Cases:** *Record-A-Hit, Inc. v. Nat'l. Fire Ins. Co.*, 377 Ill. App. 3d 642; 880 N.E.2d 205 (1st Dist. 2007); *Qualkenbush v. Harris Trust & Savings Bank*, 219 F. Supp.2d 935 (N.D.Ill. 2002); *Covington-McIntosh v. Mount Glenwood Memory Gardens*, 00 C 186, 2002 WL 31369747 (N.D.Ill., Oct. 21, 2002), later opinion, 2003 WL 22359626 (N.D.Ill. Oct. 15, 2003); *Western Ry. Devices Corp. v. Lusida Rubber Prods.*, 06 C 52, 2006 WL 1697119, 2006 U.S. Dist. LEXIS 43867 (N.D.Ill. June 13, 2006); *Nautilus Ins. Co. v. Easy Drop Off, LLC*, 06 C 4286, 2007 U.S. Dist. LEXIS 42380 (N.D.Ill. June 4, 2007); *Ballard Nursing Center, Inc. v. GF Healthcare Products, Inc.*, 07 C 5715, 2007 WL 3448731, 2007 U.S. Dist. LEXIS 84425 (N.D.Ill. Nov. 14, 2007); *Sadowski v. Med1 Online, LLC*, 07 C 2973, 2008 WL 2224892, 2008 U.S. Dist. LEXIS 41766 (N.D.Ill. May 17, 2008); *Sadowski v. OCO Biomedical, Inc.*, 08 C 3225, 2008 WL 5082992, 2008 U.S. Dist. LEXIS 96124 (N.D.Ill. Nov. 25, 2008); *ABC Bus. Forms, Inc. v. Pridamor, Inc.*, 09 C 3222, 2009 WL 4679477, 2009 U.S. Dist. LEXIS 113847 (N.D.Ill. Dec. 1, 2009); *Glen Ellyn Pharmacy v. Promius Pharma, LLC*, 09 C 2116, 2009 WL 2973046, 2009 U.S. Dist. LEXIS 83073 (N.D.Ill. Sept. 11, 2009); *Garrett v. Ragle Dental Lab., Inc.*, 10 C 1315, 2010 WL 4074379, 2010 U.S. Dist. LEXIS 108339 (N.D.Ill. Oct. 12, 2010); *Garrett v. Sharps Compliance, Inc.*, 10 C 4030, 2010 WL 4167157, 2010 U.S. Dist. LEXIS 109912 (N.D.Ill. Oct. 14, 2010).

8.     **Heather A. Kolbus** (neé Piccirilli) is a graduate of DePaul University (B.S. *cum laude,* 1997), and Roger Williams University School of Law (J.D., 2002). **Reported Cases:** *Clark v. Experian Info. Solutions, Inc.*, 8:00cv1217-22, 2004 WL 256433, 2004 U.S. Dist. LEXIS 28324 (D.S.C., Jan. 14, 2004); *DeFrancesco v. First Horizon Home Loan Corp.*, 06-0058, 2006 WL 3196838, 2006 U.S. Dist. LEXIS 80718 (S.D.Ill. Nov. 2, 2006); *Jeppesen v. New Century Mortgage Corp.*, 2:05cv372, 2006 WL 3354691, 2006 U.S. Dist. LEXIS 84035 (N.D.Ind. Nov. 17, 2006); *Benedia v. Super Fair Cellular, Inc.*, 07 C 1390, 2007 WL 2903175, 2007 U.S. Dist. LEXIS 71911 (N.D.Ill. Sept. 26, 2007); *Gonzalez v. Codilis & Assocs., P.C.*, 03 C 2883, 2004 WL 719264, 2004 U.S. Dist. LEXIS 5463 (N.D.Ill. March 30, 2004); *Centerline Equipment Corp. v. Banner Personnel Svc., Inc.*, 07 C 1611, 2009 WL 1607587, 2009 U.S. Dist. LEXIS 48092 (N.D.Ill. June 9, 2009); *R. Rudnick & Co. v. G.F. Protection, Inc.*, 08 C 1856, 2009 WL 112380, 2009 U.S. Dist. LEXIS 3152 (N.D.Ill. Jan. 15, 2009); *Pollack v. Cunningham Financial Group, LLC*, 08 C 1405, 2008 WL 4874195, 2008 U.S. Dist. LEXIS 4166 (N.D.Ill. June 2, 2008); *Pollack v. Fitness Innovative Techs., LLC*, No. 08 CH 03430, 2009 WL 506280, 2009 TCPA Rep. 1858 (Ill. Cir. Ct., Jan. 14, 2009); *R. Rudnick & Co. v. Brilliant Event Planning, Inc.*, No. 09 CH 18924, 2010 WL 5774848, 2010 TCPA Rep. 2099 (Ill. Cir. Ct., Nov. 30, 2010).

9.     **Cassandra P. Miller** is a graduate of the University of Wisconsin – Madison (B.A. 2001) and John Marshall Law School (J.D. *magna cum laude* 2006). **Reported Cases:** *Pietras v. Sentry Ins. Co.*, 513 F.Supp.2d 983 (N.D.Ill. 2007); *Hernandez v. Midland Credit Mgmt.*, 04 C 7844, 2007 WL 2874059, 2007 U.S. Dist. LEXIS 16054 (N.D.Ill. Sept. 25, 2007); *Balogun v. Midland Credit Mgmt.*, 1:05cv1790, 2007 WL 2934886, 2007 U.S.

4

Dist. LEXIS 74845 (S.D.Ind. Oct. 5, 2007); *Herkert v. MRC Receivables Corp.*, 655 F. Supp. 2d 870 (N.D.Ill. 2008); *Miller v. Midland Credit Management, Inc.*, No. 08 C 780, 2009 WL 528796, 2009 U.S. Dist. LEXIS 16273 (N.D.Ill. March 2, 2009); *Frydman v. Portfolio Recovery Associates, LLC*, 11 C 524, 2011 WL 2560221, 2011 U.S. Dist. LEXIS 69502 (N.D.Ill. June 28, 2011).

10.  **Tiffany N. Hardy** is a graduate of Tuskegee University (B.A. 1998) and Syracuse University College of Law (J.D. 2001).  **Reported cases:** *Unifund v. Shah*, 407 Ill.App.3d 737, 946 N.E.2d 885 (1st Dist. 2011), later opinion, 2013 IL App (1st) 113658, 993 N.E.2d 518; *Tocco v. Real Time Resolutions*, 14cv810, 2014 WL 3964948 (S.D.N.Y., Aug. 13, 2014); *Balbarin v. North Star*, 10 C 1846, 2011 WL 211013, 2011 U.S. Dist. LEXIS 686 (N.D.Ill. Jan. 5, 2011)(class certified); *Diaz v. Residential Credit Solutions, Inc.*, 965 F.Supp.2d 249 (E.D.N.Y. 2013), later opinion, 297 F.R.D. 42 (E.D.N.Y. 2014), later opinion, 299 F.R.D. 16 (E.D.N.Y. 2014); *Manlapaz v. Unifund*, 08 C 6524, 2009 WL 3015166, 2009 U.S. Dist. LEXIS 85527 (N.D.Ill. Sept. 15, 2009); *Matmanivong v. Unifund*, 08 C 6415, 2009 WL 1181529, 2009 U.S. Dist. LEXIS 36287 (N.D.Ill. Apr. 28, 2009); *Kubiski v. Unifund*, 08 C 6421, 2009 WL 774450, 2009 U.S. Dist. LEXIS 26754 (N.D.Ill. Mar. 25, 2009); *Cox v. Unifund CCR Partners*, 08 C 1005 (N.D.Ill. Dec. 4, 2008) (Report and Recommendation for Class Certification); *Ramirez v. Palisades Collection LLC*, 250 F.R.D. 366 (N.D.Ill. 2008) (class certified), later opinion, 07 C 3840, 2008 WL 2512679, 2008 U.S. Dist. LEXIS 48722 (N.D.Ill., June 23, 2008) (summary judgment denied); *Cotton v. Asset Acceptance*, 07 C 5005, 2008 WL 2561103, 2008 U.S. Dist. LEXIS 49042 (N.D.Ill. June 26, 2008) (class certified); *Ketchem v. American Acceptance Co.*, 641 F. Supp. 2d 782 (N.D.Ind. 2008); *D'Elia v. First Capital*, 07 C 6042, 2008 WL 4344571, 2008 U.S. Dist. LEXIS 22461 (N.D.Ill. Mar. 19, 2008).  She is admitted in New York and the District of Columbia as well as Illinois.

11.  **Associates**:

    a.  **Emiliya Gumin Farbstein** is a graduate of the University of Illinois at Urbana-Champaign (B.S.B.A. 2006) and University of Minnesota Law School (J.D., magna cum laude, 2012).

    b.  **Michelle Alyea** is a graduate of Valparaiso University (B.A., 1998, M.A., 2009) and Valparaiso University School of Law (J.D., 2012).  She is admitted in Illinois and Indiana.

    c.  **Patricia N. Jjemba** is a graduate of Miami University – Oxford (B.A. 2012) and Michigan State University College of Law (J.D. 2016).

    d.  **Corey Varma**  is a graduate of California State University (B.A., 2013) and John Marshall Law School (J.D. 2017).

12.  The firm also has a dozen legal assistants and support staff.

13.  Since its inception, the firm has recovered more than $500 million for consumers.  The types of cases handled by the firm are illustrated by the following:

14.  **Collection practices:**  The firm has brought numerous cases under the Fair Debt Collection Practices Act, both class and individual.  Decisions include: *Jenkins v. Heintz*, 25 F.3d 536 (7th Cir. 1994), aff'd  514 U.S. 291 (1995) (FDCPA coverage of attorneys); *Suesz v. Med-1 Solutions, LLC*, 757 F.3d 636 (7th Cir. 2014)(en banc); *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010 (7th Cir. 2014),  later opinion, 807 F.3d 872 (7th Cir. 2015)

5

(collection of time-barred debts); *Siwulec v. J.M. Adjustment Servs., LLC*, 465 Fed. Appx. 200 (3d Cir. 2012); (activities of mortgage company field agents); *Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562 (7ᵗʰ Cir. 2004); *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534 (7ᵗʰ Cir. 2003) (FDCPA coverage of debt buyers); *Peter v. GC Servs. L.P.*, 310 F.3d 344 (5ᵗʰ Cir. 2002); *Nielsen v. Dickerson*, 307 F.3d 623 (7ᵗʰ Cir. 2002) (attorney letters without attorney involvement); *Boyd v. Wexler*, 275 F.3d 642 (7ᵗʰ Cir. 2001); *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872 (7ᵗʰ Cir. 2000); *Johnson v. Revenue Management, Inc.*, 169 F.3d 1057 (7ᵗʰ Cir.1999); *Keele v. Wexler & Wexler*, 95 C 3483, 1995 WL 549048, 1995 U.S.Dist. LEXIS 13215 (N.D.Ill. Sept. 12, 1995) (motion to dismiss), later opinion, 1996 WL 124452, 1996 U.S.Dist. LEXIS 3253 (N.D.Ill., March 18, 1996) (class), aff'd, 149 F.3d 589 (7th Cir. 1998); *Mace v. Van Ru Credit Corp.*, 109 F.3d 338 (7th Cir. 1997); *Maguire v. Citicorp Retail Services, Inc.*, 147 F.3d 232 (2nd Cir. 1998); *Young v. Citicorp Retail Services, Inc.*, No. 97-9397, 1998 U.S.App. LEXIS 20268, 159 F.3d 1349 (2nd Cir., June 29, 1998) (unpublished); *Charles v. Lundgren & Assocs., P.C.*, 119 F.3d 739 (9th Cir. 1997); *Avila v. Rubin*, 84 F.3d 222 (7th Cir. 1996), aff'g *Avila v. Van Ru Credit Corp.*, 94 C 3234, 1994 WL 649101 (N.D.Ill., Nov. 14, 1994), later opinion, 1995 WL 22866 (N.D.Ill., Jan. 18, 1995), later opinion, 1995 WL 41425 (N.D.Ill., Jan. 31, 1995), later opinion, 1995 WL 55255 (N.D.Ill., Feb. 8, 1995), later opinion, 1995 WL 683775, 1995 U.S.Dist. LEXIS 17117 (N.D.Ill., Nov. 16, 1995); *Tolentino v. Friedman*, 833 F.Supp. 697 (N.D.Ill. 1993), aff'd in part and rev'd in part, 46 F.3d 645 (7th Cir. 1995); *Diaz v. Residential Credit Solutions, Inc.*, 965 F.Supp.2d 249 (E.D.N.Y. 2013), later opinion, 297 F.R.D. 42 (E.D.N.Y. 2014), later opinion, 299 F.R.D. 16 (E.D.N.Y. 2014); *Stubbs v. Cavalry SPV I*, 12 C 7235, 2013 WL 1858587 (N.D.Ill., May 1, 2013); *Osborn v. J.R.S.-I., Inc.*, 13 C 621, 2013 WL 2467654 (N.D.Ill., June 7, 2013); *Terech v. First Resolution Mgmt. Corp.*, 854 F.Supp.2d 537, 544 (N.D.Ill. 2012); *Casso v. LVNV Funding, LLC*, 12 C 7328, 2013 WL 3270654 (N.D.Ill., June 26, 2013); *Simkus v. Cavalry Portfolio Services, LLC*, 11 C 7425, 2012 WL 1866542 (N.D.Ill., May 22, 2012); *McDonald v. Asset Acceptance LLC*, 296 F.R.D. 513 (E.D.Mich. 2013); *Ramirez v. Apex Financial Management, LLC*, 567 F. Supp.2d 1035 (N.D. Ill. 2008); *Cotton v. Asset Acceptance, LLC*, 07 C 5005, 2008 WL 2561103, 2008 U.S. Dist. LEXIS 49042 (N.D.Ill., June 26, 2008); *Buford v. Palisades Collection, LLC*, 552 F. Supp. 2d 800 (N.D.Ill. 2008); *Martin v. Cavalry Portfolio Servs., LLC*, 07 C 4745, 2008 WL 4372717, 2008 U.S. Dist. LEXIS 25904 (N.D.Ill., March 28, 2008); *Ramirez v. Palisades Collection LLC*, 250 F.R.D. 366 (N.D.Ill. 2008) (class certified), later opinion, 07 C 3840, 2008 WL 2512679, 2008 U.S. Dist. LEXIS 48722 (N.D.Ill., June 23, 2008) (summary judgment denied); *Hernandez v. Midland Credit Mgmt.*, 04 C 7844, 2007 WL 2874059, 2007 U.S. Dist. LEXIS 16054 (N.D.Ill., Sept. 25, 2007) (balance transfer program); *Blakemore v. Pekay*, 895 F.Supp.972 (N.D.Ill. 1995); *Oglesby v. Rotche*, 93 C 4183, 1993 WL 460841, 1993 U.S.Dist. LEXIS 15687 (N.D.Ill., Nov. 5, 1993), *later opinion*, 1994 U.S.Dist. LEXIS 4866, 1994 WL 142867 (N.D.Ill., April 18, 1994); *Laws v. Cheslock*, 98 C 6403, 1999 WL 160236, 1999 U.S.Dist. LEXIS 3416 (N.D.Ill., Mar. 8, 1999); *Davis v. Commercial Check Control, Inc.*, 98 C 631, 1999 WL 89556, 1999 U.S. Dist. LEXIS 1682 (N.D.Ill., Feb. 12, 1999); *Hoffman v. Partners in Collections, Inc.*, 93 C 4132, 1993 WL 358158, 1993 U.S.Dist. LEXIS 12702 (N.D.Ill., Sept. 15, 1993); *Vaughn v. CSC Credit Services, Inc.*, 93 C 4151, 1994 WL 449247, 1994 U.S.Dist. LEXIS 2172 (N.D.Ill., March 1, 1994), adopted, 1995 WL 51402, 1995 U.S.Dist. LEXIS 1358 (N.D.Ill., Feb. 3, 1995); *Beasley v. Blatt*, 93 C 4978, 1994 WL 362185, 1994 U.S.Dist. LEXIS 9383 (N.D.Ill., July 11, 1994); *Taylor v. Fink*, 93 C 4941, 1994 WL 669605, 1994 U.S.Dist. LEXIS 16821 (N.D.Ill., Nov. 23, 1994); *Gordon v. Fink*, 93 C 4152, 1995 WL 55242, 1995 U.S.Dist. LEXIS 1509 (N.D.Ill., Feb. 7, 1995); *Brujis v. Shaw*, 876 F.Supp. 198 (N.D.Ill. 1995).

15.     *Jenkins v. Heintz* is a leading decision regarding the liability of attorneys under the Fair Debt Collection Practices Act. Mr. Edelman argued it before the Supreme Court and Seventh Circuit. *Avila v. Rubin* and *Nielsen v. Dickerson* are leading decisions on phony "attorney letters." *Suesz v. Med-1 Solutions, LLC* is a leading decision on the FDCPA venue

6

requirements. *McMahon v. LVNV Funding, LLC* is a leading decision on the collection of time-barred debts.

16.     **Debtors' rights**. Important decisions include: *Ramirez v. Palisades Collection LLC*, 250 F.R.D. 366 (N.D.Ill. 2008) (class certified), later opinion, 07 C 3840, 2008 WL 2512679, 2008 U.S. Dist. LEXIS 48722 (N.D.Ill., June 23, 2008) (summary judgment denied); z (Illinois statute of limitations for credit card debts); *Parkis v. Arrow Fin Servs.*, 07 C 410, 2008 WL 94798, 2008 U.S. Dist. LEXIS 1212 (N.D.Ill. Jan. 8, 2008); *Rawson v. Credigy Receivables, Inc.,*  05 C 6032, 2006 WL 418665, 2006 U.S. Dist. LEXIS 6450 (N.D.Ill., Feb. 16, 2006) (same); *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010 (7th Cir. 2014) (collection of time-barred debts without disclosure); *Jones v. Kunin*, 99-818-GPM, 2000 WL 34402017, 2000 U.S. Dist. LEXIS 6380 (S.D.Ill., May 1, 2000) (scope of Illinois bad check statute); *Qualkenbush v. Harris Trust & Sav. Bank*, 219 F. Supp. 2d 935 (N.D.Ill. 2002) (failure to allow cosigner to take over obligation prior to collection action); *Suesz v. Med-1 Solutions, LLC*, 757 F.3d 636 (7th Cir. 2014) (en banc) (venue abuse).

17.     **Telephone Consumer Protection Act.**  The firm has brought a number of cases under the Telephone Consumer Protection Act, 47 U.S.C. §227, which prohibits "junk faxes," spam text messages, robocalls to cell phones, and regulates telemarketing practices. Important junk fax and spam text message decisions include:  *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446 (7th Cir. 2005); *Sadowski v. Med1 Online, LLC*, 07 C 2973, 2008 WL 2224892, 2008 U.S. Dist. LEXIS 41766 (N.D.Ill., May 27, 2008); *Benedia v. Super Fair Cellular, Inc.*,  07 C 01390, 2007 WL 2903175, 2007 U.S. Dist. LEXIS 71911 (N.D.Ill., Sept. 26, 2007); *Centerline Equip. Corp. v. Banner Pers. Serv.*, 545 F. Supp. 2d 768 (N.D.Ill. 2008); *ABC Business Forms, Inc. v. Pridamor, Inc.*, 09 C 3222, 2009 WL 4679477, 2009 U.S. Dist. LEXIS 113847 (N.D.Ill. Dec. 1, 2009); *Glen Ellyn Pharmacy, Inc. v. Promius Pharma, LLC*, 09 C 2116, 2009 WL 2973046, 2009 U.S. Dist. LEXIS 83073 (N.D.Ill. Sept. 11, 2009); *Garrett v. Ragle Dental Laboratory, Inc.*, 10 C 1315, 2010 WL 3034709, 2010 U.S. Dist. LEXIS, 108339 (N.D.Ill., Aug. 3, 3010).

18.     The firm has also brought a number of cases complaining of robocalling and telemarketing abuse, in violation of the Telephone Consumer Protection Act.  Decisions in these cases include: *Soppet v. Enhanced Recovery Co.*, 679 F.3d 637 (7th Cir. 2012); *Balbarin v. North Star Capital Acquisition, LLC*, 10 C 1846, 2011 WL 211013, 2011 U.S. Dist. LEXIS 686 (N.D.Ill. Jan. 21, 2011), *motion to reconsider denied,* 2011 U.S. Dist. LEXIS 58761 (N.D.Ill. 2011); *Sojka v. DirectBuy, Inc.*, 12 C 9809 et al., 2014 WL 1089072 (N.D.Ill., Mar. 18, 2014), later opinion, 2014 WL 1304234 (N.D.Ill., March 31, 2014). The firm has a leadership role in Portfolio Recovery Associates, LLC, Telephone Consumer Protection Act Litigation, MDL No. 2295, and Midland Credit Management, Inc., Telephone Consumer Protection Act Litigation, MDL No. 2286.

19.     **Fair Credit Reporting Act:** The firm has filed numerous cases under the Fair Credit Reporting Act, which include: *Henry v. Teletrack, Inc.,* 11 C 4424,  2012 WL 769763, 2012 U.S. Dist. LEXIS 30495 (N.D.Ill.  March 7, 2012).

20.     Another line of cases under the Fair Credit Reporting Act which we have brought, primarily as class actions, alleges that lenders and automotive dealers, among others, improperly accessed consumers' credit information, without their consent and without having a purpose for doing so permitted by the FCRA.  *Cole v. U.S. Capital, Inc.*, 389 F.3d 719 (7th Cir. 2004); *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948 (7th Cir. 2006); *Perry v. First National Bank*, 459 F.3d 816 (7th Cir. 2006).

21.    **Class action procedure:**  Important decisions include *McMahon v. LVNV Funding, LLC*, 807 F.3d 872 (7th Cir. 2015);  *Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076 (7th Cir. 2013); *Crawford v. Equifax Payment Services, Inc.,* 201 F.3d 877 (7th Cir. 2000); *Blair v. Equifax Check Services, Inc.*, 181 F.3d 832 (7th Cir. 1999); *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997); *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010 (7th Cir. 2014) (mootness); *Ballard RN Center, Inc. v. Kohll's Pharmacy and Homecare, Inc.*, 2015 IL 118644, 48 N.E.3d 1060 (Ill.Sup.Ct.) (mootness),  and *Gordon v. Boden,* 224 Ill.App.3d 195, 586 N.E.2d 461 (1st Dist. 1991).

22.    **Landlord-tenant:**  The firm has brought more than 20 class actions against landlords to enforce tenants' rights.  Claims include  failing to pay interest on security deposits or commingling security deposits.  Reported decisions include *Wang v. Williams*, 343 Ill. App. 3d 495; 797 N.E.2d 179 (5th Dist. 2003); *Dickson v. West Koke Mill Vill. P'Ship*, 329 Ill. App. 3d 341; 769 N.E.2d 971 (4th Dist. 2002); and *Onni v. Apartment Inv. & Mgmt. Co.*,  344 Ill. App. 3d 1099; 801 N.E.2d 586 (2nd Dist. 2003).

23.    **Mortgage charges and servicing practices:**  The firm has been involved in dozens of cases, mostly class actions, complaining of illegal charges on mortgages and improper servicing practices.  These include MDL-899, *In re Mortgage Escrow Deposit Litigation*, and MDL-1604, *In re Ocwen Federal Bank FSB Mortgage Servicing Litigation*, as well as the Fairbanks mortgage servicing litigation.  Decisions in the firm's mortgage cases include:  *Hamm v. Ameriquest Mortg. Co.*, 506 F.3d 525 (7th Cir.  2007);  *Handy v. Anchor Mortgage Corp.*, 464 F.3d 760 (7th Cir. 2006); *Christakos v. Intercounty Title Co.*, 196 F.R.D. 496 (N.D.Ill. 2000); *Flippin v. Aurora Bank, FSB*, 12 C 1996, 2012 WL 3260449 , 2012 U.S. Dist. LEXIS 111250 (N.D.Ill. Aug. 8, 2012); *Kesten v. Ocwen Loan Servicing, LLC*, 11 C 6981, 2012 WL 426933, 2012 U.S. Dist. LEXIS 16917  (N.D.Ill. Feb. 9, 2012); *Johnstone v. Bank of America, N.A.*, 173 F.Supp.2d 809 (N.D.Ill. 2001); *Leon v. Washington Mut. Bank, F.A.*, 164 F.Supp.2d 1034 (N.D.Ill. 2001);  *Williamson v. Advanta Mortg. Corp.*, 99 C 4784, 1999 WL 1144940, 1999 U.S. Dist. LEXIS 16374 (N.D.Ill., Oct. 5, 1999); *McDonald v. Washington Mut. Bank, F.A.*, 99 C 6884, 2000 WL 875416, 2000 U.S. Dist. LEXIS 11496 (N.D.Ill., June 22, 2000); *GMAC Mtge. Corp. v. Stapleton*, 236 Ill.App.3d 486, 603 N.E.2d 767 (1st Dist. 1992), leave to appeal denied, 248 Ill.2d 641, 610 N.E.2d 1262 (1993); *Leff v. Olympic Fed. S. & L. Ass'n,* 86 C 3026, 1986 WL 10636 (N.D.Ill. Sept. 19, 1986); *Aitken v. Fleet Mtge. Corp*., 90 C 3708, 1991 WL 152533,, 1991 U.S.Dist. LEXIS 10420 (N.D.Ill. July 30, 1991), later opinion, 1992 WL 33926, 1992 U.S.Dist. LEXIS 1687 (N.D.Ill., Feb. 12, 1992); *Poindexter v. National Mtge. Corp*., 94 C 45814, 1995 WL 242287, 1995 U.S.Dist. LEXIS 5396 (N.D.Ill., April 24, 1995); *Sanders v. Lincoln Service Corp.*, 91 C 4542, 1993 WL 1125433, 1993 U.S.Dist. LEXIS 4454 (N.D.Ill. April 5, 1993); *Robinson v. Empire of America Realty Credit Corp.*, 90 C 5063, 1991 WL 26593, 1991 U.S.Dist. LEXIS 2084 (N.D.Ill., Feb. 20, 1991); *In re Mortgage Escrow Deposit Litigation*, M.D.L. 899, 1994 WL 496707, 1994 U.S.Dist. LEXIS 12746 (N.D.Ill., Sept. 9, 1994); *Greenberg v. Republic Federal S. & L. Ass'n*, 94 C 3789, 1995 WL 263457, 1995 U.S.Dist. LEXIS 5866 (N.D.Ill., May 1, 1995).

24.    The recoveries in the escrow overcharge cases alone are over $250 million.  *Leff* was the seminal case on mortgage escrow overcharges.

25.    The escrow litigation had a substantial effect on industry practices, resulting in limitations on the amounts which mortgage companies held in escrow.

26.    **Bankruptcy:**  The firm brought a number of cases complaining that money was being systematically collected on discharged debts, in some cases through the use of invalid reaffirmation agreements, including the national class actions against Sears and General Electric.

*Conley v. Sears, Roebuck*, 1:97cv11149 (D.Mass); *Fisher v. Lechmere Inc.*, 1:97cv3065 (N.D.Ill.). These cases were settled and resulted in recovery by nationwide classes. Cathleen Combs successfully argued the first Court of Appeals case to hold that a bankruptcy debtor induced to pay a discharged debt by means of an invalid reaffirmation agreement may sue to recover the payment. *Bessette v. Avco Financial Services*, 230 F.3d 439 (1st Cir. 2000).

27.    **Automobile sales and financing practices:** The firm has brought many cases challenging practices relating to automobile sales and financing, including:

a.    Hidden finance charges resulting from pass-on of discounts on auto purchases. *Walker v. Wallace Auto Sales, Inc.*, 155 F.3d 927 (7th Cir. 1998).

b.    Misrepresentation of amounts disbursed for extended warranties. *Taylor v. Quality Hyundai, Inc.*, 150 F.3d 689 (7th Cir. 1998); *Grimaldi v. Webb*, 282 Ill.App.3d 174, 668 N.E.2d 39 (1st Dist. 1996), leave to appeal denied, 169 Ill.2d 566 (1996); *Slawson v. Currie Motors Lincoln Mercury, Inc.*, 94 C 2177, 1995 WL 22716, 1995 U.S.Dist. LEXIS 451 (N.D.Ill., Jan. 13, 1995); *Cirone-Shadow v. Union Nissan, Inc.*, 955 F.Supp. 938 (N.D.Ill. 1997) (same); *Chandler v. Southwest Jeep-Eagle, Inc.*, 162 F.R.D. 302 (N.D.Ill. 1995); *Shields v. Lefta, Inc.*, 888 F. Supp. 891 (N.D.Ill. 1995).

c.    Spot delivery. *Janikowski v. Lynch Ford, Inc.*, 98 C 8111, 1999 WL 608714 (N.D.Ill., Aug. 5, 1999); *Diaz v. Westgate Lincoln Mercury, Inc.*, 93 C 5428, 1994 U.S.Dist. LEXIS 16300 (N.D.Ill. Nov. 14, 1994); *Grimaldi v. Webb*, 282 Ill.App.3d 174, 668 N.E.2d 39 (1st Dist. 1996), leave to appeal denied, 169 Ill.2d 566 (1996).

d.    Force placed insurance. *Bermudez v. First of America Bank Champion, N.A.*, 860 F.Supp. 580 (N.D.Ill. 1994); *Travis v. Boulevard Bank*, 93 C 6847, 1994 U.S.Dist. LEXIS 14615 (N.D.Ill., Oct. 13, 1994), modified, 880 F.Supp. 1226 (N.D.Ill. 1995); *Moore v. Fidelity Financial Services, Inc.*, 884 F. Supp. 288 (N.D.Ill. 1995).

e.    Improper obligation of cosigners. *Lee v. Nationwide Cassell*, 174 Ill.2d 540, 675 N.E.2d 599 (1996); *Taylor v. Trans Acceptance Corp.*, 267 Ill.App.3d 562, 641 N.E.2d 907 (1st Dist. 1994), leave to appeal denied, 159 Ill.2d 581, 647 N.E.2d 1017 (1995); *Qualkenbush v. Harris Trust & Sav. Bank*, 219 F. Supp. 2d 935 (N.D.Ill. 2002).

f.    Evasion of FTC holder rule. *Brown v. LaSalle Northwest Nat'l Bank*, 148 F.R.D. 584 (N.D.Ill. 1993), later opinion, 820 F.Supp. 1078 (N.D.Ill. 1993), later opinion, 92 C 8392, 1993 U.S.Dist. LEXIS 11419 (N.D.Ill., Aug. 13, 1993).

28.    These cases also had a substantial effect on industry practices. The warranty cases, such as *Grimaldi, Gibson, Slawson, Cirone-Shadow, Chandler*, and *Shields*, resulted in the Federal Reserve Board's revision of applicable disclosure requirements, so as to prevent car dealers from representing that the charge for an extended warranty was being disbursed to a third party when that was not in fact the case.

29.    **Predatory lending practices:** The firm has brought numerous cases challenging predatory mortgage and "payday" lending practices, both as individual and class actions. *Jackson et al v. Payday Financial LLC et al*, 764 F.3d 765 (7th Cir. 2014), *cert. denied*, 135 S.Ct. 1894 (2015); *Livingston v. Fast Cash USA, Inc.*, 753 N.E.2d 572 (Ind. Sup. Ct. 2001); *Williams v. Chartwell Fin. Servs.*, 204 F.3d 748 (7th Cir. 2000); *Hamm v. Ameriquest Mortg. Co.*, 506 F.3d 525 (7th Cir. 2007); *Handy v. Anchor Mortg. Corp.*, 464 F.3d 760 (7th Cir. 2006); *Laseter v. Climateguard Design & Installation LLC*, 931 F.Supp.2d 862 (N.D.Ill. 2013); *Hubbard v.*

9

*Ameriquest Mortg. Co.*, 624 F.Supp.2d 913 (N.D.Ill. 2008); *Martinez v. Freedom Mortg. Team, Inc.*, 527 F. Supp. 2d 827 (N.D.Ill. 2007); *Pena v. Freedom Mortg. Team, Inc.*, 07 C 552, 2007 WL 3223394, 2007 U.S. Dist. LEXIS 79817 (N.D.Ill., October 24, 2007); *Miranda v. Universal Fin. Group, Inc.*, 459 F. Supp. 2d 760 (N.D.Ill. 2006); *Parker v. 1-800 Bar None, a Financial Corp., Inc.*, 01 C 4488, 2002 WL 215530 (N.D.Ill., Feb. 12, 2002); *Gilkey v. Central Clearing Co.*, 202 F.R.D. 515 (E.D.Mich. 2001); *Van Jackson v. Check 'N Go of Illinois, Inc.*, 193 F.R.D. 544 (N.D.Ill. 2000), later opinion, 114 F. Supp. 2d 731 (N.D.Ill. 2000), later opinion, 123 F. Supp. 2d 1079 (N.D.Ill. 2000), later opinion, 123 F. Supp. 2d 1085 (N.D.Ill. 2000); *Henry v. Cash Today, Inc.*, 199 F.R.D. 566 (S.D.Tex. 2000); *Donnelly v. Illini Cash Advance, Inc.*, 00 C 94, 2000 WL 1161076, 2000 U.S. Dist. LEXIS 11906 (N.D.Ill., Aug. 14, 2000); *Jones v. Kunin*, 99-818-GPM, 2000 WL 34402017, 2000 U.S. Dist. LEXIS 6380 (S.D.Ill., May 1, 2000); *Davis v. Cash for Payday*, 193 F.R.D. 518 (N.D.Ill. 2000); *Reese v. Hammer Fin. Corp.*, 99 C 716, 1999 U.S. Dist. LEXIS 18812, 1999 WL 1101677 (N.D.Ill., Nov. 29, 1999); *Pinkett v. Moolah Loan Co.*, 99 C 2700, 1999 WL 1080596, 1999 U.S. Dist. LEXIS 17276 (N.D.Ill., Nov. 1, 1999); *Gutierrez v. Devon Fin. Servs.*, 99 C 2647, 1999 U.S. Dist. LEXIS 18696 (N.D.Ill., Oct. 6, 1999); *Vance v. National Benefit Ass'n*, 99 C 2627, 1999 WL 731764, 1999 U.S. Dist. LEXIS 13846 (N.D.Ill., Aug. 26, 1999).

30.     **Other consumer credit issues:**  The firm has also brought a number of other Truth in Lending and consumer credit cases, mostly as class actions, involving such issues as:

a.      Phony nonfiling insurance.  *Edwards v. Your Credit Inc.*, 148 F.3d 427 (5th Cir. 1998); *Adams v. Plaza Finance Co.*, 168 F.3d 932  (7th Cir. 1999); *Johnson v. Aronson Furniture Co.*, 96 C 117, 1997 U.S. Dist. LEXIS 3979 (N.D.Ill., March 31, 1997), later opinion, 1993 WL 641342 (N.D.Ill., Sept. 11, 1998).

b.      The McCarran Ferguson Act exemption.  *Autry v. Northwest  Premium Services, Inc.*, 144 F.3d 1037 (7th Cir. 1998).

c.      Loan flipping.  *Emery v. American General*, 71 F.3d 1343 (7th Cir. 1995). *Emery* limited the pernicious practice of "loan flipping," in which consumers are solicited for new loans and are then refinanced, with "short" credits for unearned finance charges and insurance premiums being given through use of the "Rule of 78s."

d.      Home improvement financing practices.  *Fidelity Financial Services, Inc. v. Hicks*, 214 Ill.App.3d 398, 574 N.E.2d 15 (1st Dist. 1991), leave to appeal denied, 141 Ill.2d 539, 580 N.E.2d 112; *Heastie v. Community Bank of Greater Peoria*,  690 F.Supp. 716 (N.D.Ill. 1989), later opinion, 125 F.R.D. 669 (N.D.Ill. 1990), later opinions, 727 F.Supp. 1133 (N.D.Ill. 1990), and 727 F.Supp. 1140 (N.D.Ill. 1990).

e.      Insurance packing.  *Elliott v. ITT Corp.*, 764 F.Supp. 102 (N.D.Ill. 1990), later opinion, 150 B.R. 36 (N.D.Ill. 1992).

31.     **Automobile leases:**  The firm has brought a number of a cases alleging illegal charges and improper disclosures on automobile leases, mainly as class actions.  Decisions in these cases include *Lundquist v. Security Pacific Automotive Financial Services Corp*., 993 F.2d 11 (2d Cir. 1993); *Kedziora v. Citicorp Nat'l Services, Inc.*, 780 F.Supp. 516 (N.D.Ill. 1991), later opinion, 844 F.Supp. 1289 (N.D.Ill. 1994), later opinion, 883 F.Supp. 1144 (N.D.Ill. 1995), later opinion, 91 C 3428,  1995 U.S.Dist. LEXIS 12137 (N.D.Ill., Aug. 18, 1995), later opinion, 1995 U.S.Dist. LEXIS 14054 (N.D.Ill., Sept. 25, 1995); *Johnson v. Steven Sims Subaru and Subaru Leasing*, 92 C 6355, 1993 WL 761231, 1993 U.S.Dist. LEXIS 8078 (N.D.Ill., June 9, 1993), and 1993 WL 13074115, 1993 U.S.Dist. LEXIS 11694 (N.D.Ill., August 20, 1993);

10

*McCarthy v. PNC Credit Corp.*, 2:91CV00854 (PCD), 1992 U.S.Dist. LEXIS 21719 (D.Conn., May 27, 1992); *Highsmith v. Chrysler Credit Corp.*, 18 F.3d 434 (7th Cir. 1994); *Simon v. World Omni Leasing Inc.*, 146 F.R.D. 197 (S.D.Ala. 1992).

32.     *Lundquist* and *Highsmith* are leading cases; both held that commonly-used lease forms violated the Consumer Leasing Act. As a result of the *Lundquist* case, the Federal Reserve Board completely revamped the disclosure requirements applicable to auto leases, resulting in vastly improved disclosures to consumers.

33.     **Insurance litigation:** Often securing recovery for a class requires enforcement of the rights under the defendant's insurance policy. The firm has extensive experience with such litigation. Reported decisions in such cases include: *Record-A-Hit, Inc. v. Nat'l Fire Ins. Co.*, 377 Ill. App. 3d 642; 880 N.E.2d 205 (1st Dist. 2007); *Pietras v. Sentry Ins. Co.*, 06 C 3576, 2007 WL 715759, 2007 U.S. Dist. LEXIS 16015 (N.D.Ill., March 6, 2007), later opinion, 513 F. Supp. 2d 983 (N.D.Ill. 2007); *Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 06 C 2092, 2007 WL 2608559, 2007 U.S. Dist. LEXIS 65339 (N.D.Ill., Aug. 31, 2007); *National Fire Ins. Co. v. Tri-State Hose & Fitting, Inc.*, 06 C 5256, 2007 U.S. Dist. LEXIS 45685 (N.D.Ill., June 21, 2007); *Nautilus Ins. Co. v. Easy Drop Off, LLC*, 06 C 4286, 2007 U.S. Dist. LEXIS 42380 (N.D.Ill., June 4, 2007).

34.     Some of the other reported decisions in our cases include: *Elder v. Coronet Ins. Co.*, 201 Ill.App.3d 733, 558 N.E.2d 1312 (1st Dist. 1990); *Smith v. Keycorp Mtge., Inc.*, 151 B.R. 870 (N.D.Ill. 1992); *Gordon v. Boden*, 224 Ill.App.3d 195, 586 N.E.2d 461 (1st Dist. 1991), leave to appeal denied, 144 Ill.2d 633, 591 N.E.2d 21, cert. denied, U.S. (1992); *Armstrong v. Edelson*, 718 F.Supp. 1372 (N.D.Ill. 1989); *Newman v. 1st 1440 Investment, Inc.,* 89 C 6708, 1993 U.S.Dist. LEXIS 354 (N.D.Ill. Jan. 15, 1993); *Mountain States Tel. & Tel. Co.*, v. District Court, 778 P.2d 667 (Colo. 1989); *Harman v. Lyphomed, Inc.*, 122 F.R.D. 522 (N.D.Ill. 1988); *Haslam v. Lefta, Inc.*, 93 C 4311, 1994 WL 117463, 1994 U.S.Dist. LEXIS 3623 (N.D.Ill., March 25, 1994); *Source One Mortgage Services Corp. v. Jones*, 88 C 8441, 1994 WL 13664, 1994 U.S.Dist. LEXIS 333 (N.D.Ill., Jan. 13, 1994); *Wilson v. Harris N.A.*, 06 C 5840, 2007 WL 2608521, 2007 U.S. Dist. LEXIS 65345 (N.D.Ill. Sept. 4, 2007). *Wendorf v. Landers*, 755 F.Supp.2d 972 (N.D.Ill. 2010); *QuickClick Loans LLC v. Russell*, 407 Ill.App.3d 46; 943 N.E.2d 166 (1st Dist. 2011), *pet. denied*, 949 N.E.2d 1103 (2011) and *Adkins v. Nestle Purina Petcare Co.,* 973 F.Supp.2d 905 (N.D.Ill. 2013).

35.     *Gordon v. Boden* is the first decision approving "fluid recovery" in an Illinois class action. *Elder v. Coronet Insurance* held that an insurance company's reliance on lie detectors to process claims was an unfair and deceptive trade practice.

36.     The hourly rates for the attorneys set forth below, are the same as the regular current rates charged for their services in other contingent matters in class action litigation. They are also consistent with fees charged to occasional hourly paying clients. The firm adjusts them annually to account for inflation and increasing experience and they are consistent with the rates charged by attorneys of comparable experience and expertise in the Chicago area. The rates listed and used in this case represent rates previously approved in a number of cases plus an annual adjustment.

37.     Examples of the approval of counsel's rates include:

a.     The rates charged by Edelman, Combs, Latturner & Goodwin, LLC were used as a benchmark by Judge Kennelly in *In re Southwest Airlines Voucher Litigation*, No. 11 C 8176, 2013 WL 5497275 (N.D.Ill., Oct. 3, 2013), at 19-20:

In particular, the Court has reviewed fee awards approved for the law firm of Edelman, Combs, Latturner & Goodwin, a Chicago law firm that has a long-established practice in the same field as Siprut, PC, the firm representing the plaintiff class in this case. Here are some examples. In *Jablonski v. Riverwalk Holdings, Ltd.*, No. 11 C 840, 2012 WL 3043687, at *1 (N.D. Ill. July 12, 2012), Judge Blanche Manning approved rates of $400 per hour for work done in 2011 by attorneys Daniel Edelman, Catherine Combs, and James Latturner, who had, respectively, thirty-six, thirty-six, and fifty years of practice experience. *Id.* at *1. In 2009, in the case of *In re Trans Union Corp. Privacy Litig.*, No. 00 C 4729, 2009 WL 4799954, at *20 (N.D. Ill. Dec. 9, 2009), Judge Robert Gettleman appears to have okayed a $550 rate for attorney Edelman. That same year, in *Jones v. Ameriquest Mortg. Co.*, No. 05 C 432, 2009 WL 631617, at *4 (N.D. Ill. Mar. 10, 2009), Judge David Coar approved rates of $465 per hour for partners Latturner, Combs, and Tara Goodwin, and a rate of $250 per hour for an associate who was six or seven years out of law school during the relevant period. In 2008, Judge Sam Der-Yeghiayan approved rates of $450 per hour for partners at the Edelman firm and $210 per hour for the same associate. *See Hamm v. Ameriquest Mortg. Co.*, 549 F. Supp. 2d 1018, 1022 (N.D. Ill. 2008).

On September 25, 2013, the Court considered a fee award (a very modest one) in a case brought by the Edelman firm in which it obtained a default judgment. That firm submitted a very comprehensive affidavit by its lead partner, Daniel Edelman, supporting the following hourly rates claimed for each of its partners and associates:

- $550 for partners Edelman (thirty-seven years of experience), Combs (thirty-seven years), and Latturner (fifty-one years);

- $505 for partner Goodwin (twenty-two years);

- $445 for partners Francis Greene (thirteen years) and Julie Clark (thirteen years);

- $400 for partner Heather Kolbus (eleven years);

- $355 for a partner with ten years experience;

- $230 to $290 for associates; and

- $100 to $125 for paralegals.

*See Quazi v. Lizetty and Assoc. Grp. LLC*, Case No. 13 C 4512, dkt. no. 19-5 (affid. of Daniel Edelman). This Court's own experience in dealing with fee awards (mostly agreed-upon awards) in consumer cases is generally consistent with a range bracketed on the higher end by the hourly rates proposed for lawyers from the Edelman firm in the *Quazi* case and, at the lower end, with the awards approved by Judges Der-Yeghiayan, Coar, and Gettleman in the cases cited earlier. The latter are, at this point, several years old, indicating that they may not actually represent appropriate current rates. . . .

        b.        Rates of $700 for Daniel A. Edelman and $500 for Francis R. Greene were approved in *Manuel v. Caliber Home Loans, Inc.*, 14-5233-SRC-CLW (D. N.J. on August 20, 2015. The order is attached as <u>Exhibit A</u>.

        c.        Rates of $550 for Daniel A. Edelman and $230 for Cassandra P. Miller were approved in *Nadyenova v. Midland Funding, et al.*, 12-cv-632 (N.D.Ill.), on July 11, 2012.

The order is attached as <u>Exhibit B</u>.

        d.    Rates of $550 for Daniel A. Edelman, James O. Latturner and Cathleen M. Combs, $400 for former partner, Michelle R. Teggelaar, and $250 for former associate Jeremy P. Monteiro were requested in the Plaintiff's Final Approval Memorandum and approved in *Bruce v. Wells Fargo Bank*, 2:05cv243 (N.D.Ind.), on October 18, 2007 (Transcript of proceedings, <u>Exhibit C</u>).

        e.    A rate of $325 for Ms. Hardy was approved by the Honorable Arthur D. Spatt at a fairness hearing in the Eastern District of New York in 2014, *Altagracia Diaz v. Residential Credit Solutions,* 12-cv-03781 (<u>Exhibit D</u>).

    38.    In determining the rates charged by the firm charges and requests, counsel consults surveys of rates charged by other Chicago law firms. Such surveys have been relied upon by courts in awarding fees. *E.g.*, *FDIC v. Morris*, 1992 U.S. Dist. LEXIS 9439 (N.D.Ill., June 29, 1992); *Alliance to End Repression v. City of Chicago*, 1993 U.S. Dist. LEXIS 1972 (N.D.Ill., Feb. 22, 1993).

    39.    I am reasonably confident that the rates are accurate, based on my personal knowledge of rates in the legal community, court awards, negotiations with defendants, and discussions with other attorneys.

    40.    The rates we used are also consistent with fee awards by courts in this or other comparable areas for comparable work:

        a.    In *Harris N.A. v. Acadia Investments*, 09 C 6661, 2012 WL 1681985 (N.D.Ill., May 14, 2012) (Schenkier, M.J.), a commercial dispute in which the fees paid by plaintiff were shifted to the defendant pursuant to a contractual provision, the court awarded $775/ hour for a 1984 partner, $745/ hour for a 1985 partner, $700/ hour for a 1992 partner, and $570/ hour for a 1995 partner. Copies of the affidavits establishing these rates are in <u>Exhibit E</u>.

        b.    In *Winston v. O'Brien*, 10 C 8218, 2013 WL 2897161 (N.D.Ill., June 13, 2013) (Bucklo, J.), a police excessive force case, court awarded $535/ hour for lead counsel, $450/ hour for a 1994 graduate, $225/ hour for a second year associate, and $125 /hour for paralegal work.

        c.    In *McDonough v. Briatta*, 06 C 2732, 2013 WL 1303800 (N.D.Ill., March 27, 2013) (Pallmeyer, J.), a First Amendment retaliation claim, the court awarded $500/ hour for 1964 and 1984 partners, $450/ hour for a 1993 graduate, $425/ hour for a 1999 graduate, $400/ hour for a 2001 graduate, $285/ hour for 2006 and 2007 graduates, and $100/ hour for paralegal time.

        d.    In *Scott v. Illinois Youth Center Joliet*, 09 C 1633, 2011 WL 586408 (N.D.Ill., Feb. 9, 2011), an individual employment discrimination case, Magistrate Judge Brown awarded $100/ hour for paralegal time, $250/ hour for an associate with 5 years experience, and $285-$390/ hour for attorneys with 12-18 years experience, noting that only limited justification had been provided.

        e.    In *Richardson v. City of Chicago*, 08 C 4824, 2012 WL 6185867 (N.D.Ill., Nov. 20, 2012) (Cole, M.J.), a police misconduct case, the court approved rates of $425/ hour for an attorney with 17 years experience, $400/ hour for an attorney with 9 years experience, $300/ hour for an attorney with 7 years experience, and $175/ hour for a second year associate.

        f.    In *Covington v. District of Columbia*, 839 F. Supp. 894 (D.D.C., December 13, 1993), Judge Lamberth found, on the basis of court-approved surveys of rates in the Washington, D.C., area, that it was appropriate to award $260 per hour to attorneys with

between 11 and 19 years experience for the time period 1992-93. He further found that it was appropriate to have an annual increment of $10 per year or, alternatively, to multiply by 103.4% in accordance with the Consumer Price Index (the result is approximately the same). He also noted that it had been relied upon by six other District Judges in the District of Columbia and the Court of Appeals for the District of Columbia Circuit. Judge Lamberth awarded current rates for all work done in the past, in lieu of making the award at the then-current rate and awarding interest on it.

        g.     The figures used in the *Covington* case have been updated each year by the office of the U. S. Attorney for the District of Columbia. The updated figures (through 2013) are in the chart attached as <u>Exhibit F</u>, available on the Internet site of the U. S Attorney's office ("Laffey Matrix", after *Laffey v. Northwest Airlines, Inc.*, 572 F.Supp. 354 (D.D.C. 1983)).

41.     The usual rates which I and the others in my firm charge at the present time are as follows:

        a.     Daniel Edelman, Cathleen Combs, and James Latturner (partners): $700 an hour;

        b.     Tara Goodwin (partner): $600 an hour;

        c.     Francis R. Greene and Julie Clark (partners): $500 an hour;

        d.     Heather Kolbus (partner): $500 an hour;

        e.     Cassandra P. Miller (partner): $325 an hour;

        f.     Tiffany N. Hardy (partner): $325 an hour;

        g.     Emiliya Gumin Farbstein (associate): $230 an hour;

        h.     Michelle A. Alyea (associate): $230 an hour;

        i.     Corey J. Varma (associate): $230 an hour;

        j.     Patricia N. Jjemba (associate): $230 an hour;

        k.     Paralegals: $100-$125 an hour (based upon experience).

42.     All attorneys and legal assistants in my firm are required to and do in fact keep track of their time on a contemporaneous basis, on computer. Everyone enters their time into a computer program, by case number. The computer system automatically sorts the entries by case and generates totals. Expenses are entered into the same computer program as they are incurred. The printouts for this case are attached as <u>Exhibit G</u>.

Executed at Chicago, Illinois.

           <u>/s/ Daniel A. Edelman</u>
           Daniel A. Edelman

14

EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

# **EXHIBIT A**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

$C L$

| | |
|---|---|
| LUTHER B. MANUEL JR. and GERTRUDE MANUEL, on behalf of themselves and the class members described herein,<br><br>Plaintiffs,<br><br>vs.<br><br>CALIBER HOME LOANS, INC.; U.S. BANK TRUST, N.A., as Trustee of LSF8 MASTER PARTICIPATION TRUST; WELLS FARGO DELAWARE TRUST COMPANY, N.A., as Trustee for VERICREST OPPORTUNITY LOAN TRUST 2013 NPL2 and VERICREST OPPORTUNITY LOAN TRUST 2014 NPL2; and DOES 1-25,<br><br>Defendants. | Case No.: 2:14-cv-05233-SRC-CLW<br><br>~~[PROPOSED]~~<br>**FINAL APPROVAL ORDER** |

**WHEREFORE,** it appearing to the Court that:

A.     On May 5, 2015, this Court entered a Preliminary Approval Order which, among other things, preliminarily and conditionally certified this lawsuit to proceed as a class action for settlement purposes only, defined the Settlement Class and Settlement Class Claims, appointed Settlement Class Counsel, preliminarily approved the proposed Stipulation of Settlement which would be binding on the Settlement Class, provided for notice to the Settlement Class including an opportunity for Settlement Class members to request exclusion from the Settlement Class and to object to the proposed Stipulation of Settlement, and scheduled a hearing ("Final Hearing") for August 20, 2015, to consider any objections and to determine whether the proposed settlement is fair, reasonable, and adequate.

B.      In satisfaction of Fed. R. Civ. P. 23(e)(3), a copy of the Stipulation of Settlement was provided to the Court with the Parties' Joint Motion seeking the entry of the Preliminary Approval Order.

C.      In accordance with the Court's Preliminary Approval Order, on June 5, 2015, actual notice was sent by first class mail to 15,050 Settlement Class Members by Heffler Claims Group (the "Class Administrator"). A total of 1,331 notices were returned by the United States Postal Service as undeliverable with no forwarding address or further information; 49 notices were returned by the United States Postal Service with a new address and successfully re-mailed; and a total of 3,338 claim forms have been received.

D.      In accordance with the Court's Preliminary Approval Order, on June 5, 2015, the Class Administrator established a toll-free telephone number to answer questions from Settlement Class Members through an interactive voice response (IVR) system with an option to leave a message to be responded to by Class Counsel.

E.      On August 20, 2015, in accordance with the Preliminary Approval Order [Doc. 32] and Fed. R. Civ. P. 23(e)(2), counsel for the Parties timely appeared for the Final Fairness Hearing to determine whether the action satisfies the applicable prerequisites for class action treatment and whether the proposed settlement is fundamentally fair, reasonable, adequate, and in the best interest of the Class Members and should be approved by the Court;

F.      The Class Members were given an opportunity to object to the settlement. Only one Class Member, through counsel, objected to the settlement ("Objector") [Doc. 35]. The Objector's counsel appeared at the Final Hearing and presented the Objector's arguments against the Settlement. The Court having heard and considered the Objections finds them to be without merit and accordingly overrules them for the reasons stated on the record.

G.      The Class Members who made valid and timely requests for exclusion are excluded from the class and settlement and are not bound by this Order. Only 31 Class Members requested exclusion. The identities of such persons are set forth in **Exhibit A**, attached hereto; and

H.      With the Court having concluded that the proposed settlement is fair, reasonable, and adequate; and the Court being duly advised in the premises, and for good cause shown;

**IT IS HEREBY ORDERED AND ADJUDGED:**

1.      The Court confirms its certification in the Preliminary Approval Order of this lawsuit as a class action for settlement purposes only and, in accordance with Fed. R. Civ. P. 23(b)(3), defines the "Settlement Class" as:

> All persons who were sent the following letters from Caliber on the following dates: (1) A letter with the title "Notice of Sale of Ownership of Mortgage Loan", dated January 9, 2014; (2) A letter with the title "Welcome to Caliber", dated February 12, 2014; and, (3) A letter listing the creditor and principal amount of the loan, dated February 18, 2014.

The Court further defines the "Settlement Class Claims" as those claims of the Settlement Class arising from written communications sent by Caliber, in connection with its servicing of residential mortgage obligations, which allegedly failed to make accurate disclosures as required by 15 U.S.C. §1692(g)(a)(2), 12 U.S.C. §2605, and 15 U.S.C. §1641(g).

2.      The Court declares that the Parties' Notice Plan as set forth in the Stipulation, including the notice mailed to Class Members, satisfied the requirements of Fed. R. Civ. P. 23 and constitutional due process.

3.      The Court approves the disbursement of the Settlement Fund as provided for in the Stipulation of Settlement and directs that the Class Administrator disburse the payments in accordance with the terms of the Stipulation.

4.      The Court approves the award of attorneys' fees and costs to Settlement Class Counsel, in the amount of $\underline{288,000}$ , and declares such fees and costs, and the hourly rates sought to be fair and reasonable.

5.     The Stipulation, which was filed with the Court on April 3, 2015 [Doc. 30-2], and which shall be deemed incorporated herein by reference in its entirety, is finally approved and shall be consummated in accordance with the terms and provisions thereof, except as amended by any subsequent order issued by this Court.

6.     This Order is binding on all Class Members, except those individuals identified in **_Exhibit A_** hereto, who validly and timely excluded themselves from the Settlement Class.

7.     The Class Representatives, Class Members, and their successors and assigns are permanently barred and enjoined from instituting or prosecuting, either individually or as a class, or in any other capacity, any of the Released Claims against any of the Released Parties, as set forth in the Stipulation. Pursuant to the release contained in the Stipulation, the Released Claims are compromised, settled, released, discharged, and dismissed with prejudice by virtue of these proceedings and this Order.

8.     The Lawsuit is hereby dismissed with prejudice in all respects.

9.     This Order is not, and shall not be construed as, an admission by Defendants of any liability or wrongdoing in this or in any other proceeding.

10.     The Court retains jurisdiction over the interpretation, enforcement, and implementation of the Stipulation of Settlement and this Final Order. Except as retained, all claims against all Defendants are dismissed with prejudice and without taxing costs.

**IT IS SO ORDERED:**

HONORABLE STANLEY R. CHESLER
Judge, United States District Court

Dated: 8/20/15

-4-

# EXHIBIT "A"

| First Name | Last Name | Exclusion # |
|---|---|---|
| Steven | Catalfamo | 1 |
| Lazina | King | 2 |
| Rebecca | Luker | 3 |
| Charles | Wild | 4 |
| Trevor | Nightengale | 5 |
| Elwood | Gilchrist | 6 |
| Rhonda | Evans | 7 |
| Melissa | Filipos | 8 |
| Paul | Zawadzke | 9 |
| ███ | ███ | █ |
| Pamela | Carrig | 11 |
| Edward | Accomando | 12 |
| Latif | Giwa | 13 |
| Madison | Rogers | 15 |
| Hieu | Nguyen | 16 |
| William | Pastino | 17 |
| Suzanne | Thompson | 19 |
| Edna | Albright | 20 |
| Beverly | Marretta | 21 |
| Paula | Mexner | 22 |
| Fitzroy | Lyte | 24 |
| Hugh | Mills | 25 |
| Theresa | Jones | 26 |
| Richard | Koesler | 27 |
| David | Walkerr | 28 |
| Kelly | Smith | 29 |
| Laura | Wellnitz | 30 |
| Charlie | Smith | 31 |
| Michael | Szczepaniak | 32 |
| Ronald | Carter | 33 |
| Rodell | Cotrell | 34 |

| First Name | Last Name | Exclusion # |
|------------|-----------|-------------|
| Anuoluwa | Giwa | 14 |
| Heather | Rogers | 15 |
| Roberta | Pastino | 18 |
| Roberta | McGuane | 23 |
| San Juan | Koesler | 27 |

# EXHIBIT B

Order Form (01/2005)  Case: 1:12-cv-00632 Document #: 28 Filed: 07/11/12 Page 1 of 2 PageID #:67

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John J. Tharp, Jr. | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 12-c-632 | **DATE** | 7/11/2012 |
| **CASE TITLE** | Naydenova vs. Midland Funding et al. | | |

DOCKET ENTRY TEXT

Status hearing held. Parties waive briefing on fee petition following presentation of positions in open court and submit issue to Court for resolution. Upon review of Parties' LR 54.3(e) Joint Statement, the Court awards fees and costs to Plaintiff in the amount of $2,529.98. For further details see text below. This amount stands as the "reasonable attorneys' fees and costs" included in the Court's Judgment [22] entered 4/24/12. Case terminated.

⊠[ For further details see text below.]                                                   Docketing to mail notices.

00:06

---

## STATEMENT

This Fair Debt Collection Practices Act case was resolved by Plaintiff's acceptance of Defendants' Offer of Judgment, served on April 19, 2012, pursuant to FRCP 68. The Offer of Judgment was "in the amount of $1,001 plus reasonable attorneys' fees and costs, as determined by the Court and as allowed by law." This Court entered judgment on the accepted offer and directed the parties to confer regarding the amount of reasonable attorneys' fees and costs to be included in the judgment. On July 9, 2012, the parties reported by means of a Local Rule 54.3(e) Joint Statement, advising that they had been unable to reach agreement on the amount of reasonable attorneys' fees and costs to be included in the judgment. At the status hearing on July 12, the parties waived further briefing on the issue of the amount of attorneys' fees and costs to be awarded, and submitted the issue to the Court for determination. Having reviewed the Joint Statement, including the exhibits supplied by the parties, the Court concludes that attorneys' fees and costs in the amount of $2,529.98 should be awarded to Plaintiffs under the Offer of Judgment.

The Court finds in general that the fees charged, and effort expended, by Plaintiff's counsel are reasonable, with the exception that the Court concurs with Defendant's objection that it is unnecessary to have five lawyers (four of whom are partners) involved in a case in which the issues were not complex and which was resolved almost immediately. The Court has therefore deducted the time of the three partners who were most tangentially involved in the drafting and review of the complaint (at least as measured by the time they spent on that task). Defendant also objected to the rates charged by these attorneys, but as their time has been excluded, the objection to those rates is moot. By contrast, Defendant's Exhibit B letter to Plaintiff acknowledges that the rates of $550 per hour for Daniel Edelman and $230/hour for Cassandra Miller are reasonable and, accordingly, the Court accepts those rates, noting as well that"[c]ourts in this circuit generally have awarded somewhere in the range of $200 to $300 per hour for lawyers with significant experience handling these types of cases." See *Brown v. Patelco Credit Union*, 2011 WL 4375865, *3 (N.D.Ill.).

Case: 1:12-cv-00632 Document #: 20 Filed: 07/11/12 Page 2 of 2 PageID #:68
## STATEMENT

While Mr. Edelman's rate is substantially higher, in view of his status as one of the senior partners in the firm and the limited time expended (one hour), the Court does not find the request to recover his fees to be unreasonable, particularly where he is the only partner whose fees will be recovered.

Defendants object to time entries by paralegals that they characterize as "secretarial" in nature. While a few of these tasks are arguably non-legal in nature (*e.g.*, "prep letter and mailing to process server"), the Court finds that most of the paralegal tasks identified in the time entries require specialized knowledge and/or experience that goes beyond generically clerical or secretarial tasks. The filing of specialized forms, such as appearances and civil cover sheets, are examples. In any event, the rate charged by the paralegals performing these task was $100/hour, and the Court finds that rate reasonable whether the tasks are characterized as "legal" or "clerical" in nature. See, *e.g.*, *Smith v. Astrue*, 2011 WL 2064843, *2 (S.D. Ill.) (reducing attorney hours devoted to similar clerical tasks by 60% where they could have been performed by an experienced secretary or paralegal; the rates charged by paralegals here are approximately 60% lower than the $230 hour rate charged by the associate attorney assigned to the case).

Defendants object as well to the time entries related to the drafting of a settlement agreement, but the Court finds that effort to have been a reasonable attempt to try to resolve the case (indeed, counsel for the defendants undoubtedly incurred time on the same pursuit). Further, the fact that the Plaintiffs had spent time drafting settlement language was obviously known to the Defendants when the offer of judgment was made; had they wished to exclude time for that purpose, they could have so indicated in their Offer.

The Court does conclude, however, that fees incurred after Plaintiff accepted the Offer of Judgment should be excluded. By its terms, Rule 68 provides only for the recovery of "costs then accrued," that is, the costs incurred up to the point that the Offer of Judgment is made. Once the Rule 68 offer was made, "the clock stopped ticking." *Patelco Credit Union*, 2011 WL 4375865, *6. Attorney's fees are considered "costs" under Rule 68 when the underlying statute provides for attorney's fees to be awarded as part of the costs.

*Marek v. Chesney*, 473 U.S. 1, 2 (1985) ("[T]he term costs in the Rule was intended to refer to all costs properly awardable under the relevant substantive statute."). Accordingly, there is no basis to assess fees differently in the context of an Offer of Judgment. Defendants' Offer did not extend to cover fees and costs incurred after it was made and Plaintiff's acceptance of that offer renders its request for fees and costs incurred after that date unreasonable.

The Court therefore calculates the fees and costs to be awarded to Plaintiff as follows:

| | |
|---|---|
| Plaintiff's total fees and costs: | $4,011.53 |
| Less: | |
| JOL Time | 330.00 |
| MRT Time | 160.00 |
| CMC Time | 110.00 |
| Time incurred after offer was made (4/19/12) | 878.00 |
| Costs incurred after offer was made (4/19/12) | 3.55 |
| Revised total fees and costs | $2,529.98 |

John J. Tharp Jr.

# EXHIBIT C

1

1          UNITED STATES DISTRICT COURT
           NORTHERN DISTRICT OF INDIANA
2               HAMMOND DIVISION

3

4    DARRELL BRUCE,                    )
                                       )
5               PLAINTIFF,             )
                                       )
6    VS.                               )  Cause:   2:05 cv 243
                                       )
7    WELLS FARGO BANK NA,              )
                                       )
8               DEFENDANT.             )

9

10        The FAIRNESS HEARING in the above-entitled matter was
     commenced before Honorable Philip P. Simon judge of said court, at
11   the Federal Building, 5400 Federal Plaza, Hammond, Indiana, on the
     18TH day of October, 2007 commencing at the hour of 1:20 in the
12   afternoon.

13

14

15

16

17

18

19

20

21              Sharon Boleck Mroz, CSR, RPR, CPE
                Official Court Reporter
22              US District Court
                Northern District of Indiana
23              Hammond Division
                5400 Federal Plaza
24              Hammond, IN 46320
                (219) 852-6728
25

2

```
1                    Appearances:

2       Ms. Michelle R. Teggelaar
        Edelman Combs Latturner & Goodwin
3       120 S. LaSalle Street, Suite 1800
        Chicago, IL  60603
4
                    On behalf of the Plaintiff;
5
        Mr. Robert J.Emanuel PHV
6       Burke Warren MacKay and Serritella
        330 N.Wabash Avenue
7       Chicago,  IL  60611

8                    On behalf of the Defendant.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

3



INDEX

1

2    Hearing - 5

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

4

1                    EXHIBITS

2

   (None)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              THE CLERK:  All rise.

 2              THE COURT:  You can be seated.  Good afternoon everyone.

 3              We're on the record.  The cause number is 2:05 CV 243

 4    Bruce versus Wells Fargo.

 5              Back on the 21st day of June of this year, I

 6    preliminarily approved a class action settlement, and I set this

 7    date for the fairness hearing.

 8              So, if you all can introduce who you are so I know who

 9    I'm dealing with here.

10              Sir.

11              MR. EMANUEL:  My name is Bob Emanuel.  E M A N U E L.

12    And I represent Wells Fargo, and I am very sorry that I was tardy

13    today.

14              I went to the 507 building.

15              THE COURT:  Got it.

16              We have been here almost what, five years, Noel?

17              MR. EMANUEL:  I've been to this building before.  I tried

18    using a navigation system which I'm not really --

19              THE COURT:  Don't worry about it.

20              MR. EMANUEL:  Obviously.

21              THE COURT:  Ma'am.  You Miss Teggelaar?

22              MS. TEGGELAAR:  Miss Teggelaar, Plaintiff.

23              THE COURT:  Nice to see you.

24              All right.  Just for the record, it is now 21 minutes

25    after 1:00.
```

6

1    This hearing was scheduled to begin at 1:00.  There is

2  nobody in the courtroom other than the party -- other than the

3  lawyers and people from the court staff and the court security

4  officer.

5    Evidently, there is no class member who has saw fit to

6  appear to object to the settlement.

7    So, my -- ordinarily my procedure, Miss Teggelaar, is

8  just for you to give a brief summary as to what the terms of the

9  settlement are for the record, and I'll make my findings on the

10  fair and reasonableness of the settlement.

11    So, you may proceed.

12    MS. TEGGELAAR:  Pursuant to the settlement, the Plaintiff

13  Darrell Bruce is to receive a thousand dollars which is the maximum

14  provided for by the statute.  Each class member that submits a

15  claim form will be entitled to receive a payment of $200, and the

16  settlement provides for payment of $75,000 in fees in addition to

17  the class recovery.

18    There were 4,377 notices mailed to the class members.

19  And there were a relatively low number returned, undeliverable,

20  210.

21    There were eight that were returned and remailed, but we

22  received a very, very --

23    THE COURT:  That is a very high percentage, isn't it?

24    MS. TEGGELAAR:  -- of claim forms back in this case.

25  Actually there is only one other case that we had that anyone at my

```
 1   firm could recall that was rate -- or return this high.
 2        There were 1,500 timely.  There were 25 late that we had
 3   as of October 5.  That is about one-third of the class members who
 4   decided to return a claim form, which I think shows an overwhelming
 5   positive response from the class.  We usually see about ten percent
 6   returning claim forms.
 7        So, the class then -- recovery was about $300,000. It
 8   would be 305,000 if the Court elects to allow those late claim
 9   forms.
10        We did want to draw to the Court's attention that there
11   were some other claim forms that were received that did not appear
12   to be valid.  They were all sent by individuals that had the same
13   address as the class member.  They probably were family or friends,
14   and individuals did  -- that were class members also returned claim
15   forms.
16        So those, after discussing it, we were -- decided we were
17   not going to honor those claims forms.  They did not appear to be
18   valid, and we wanted to bring that to the Court's attention.
19        There was only one other issue we found out today that
20   the CAFA notice was not provided.
21        THE COURT:  I'm sorry.  I can't hear you.
22        MS. TEGGELAAR:  I'm sorry.
23        The CAFA notice was not provided at the time that was
24   required by statute and Defendant can probably speak.  It was
25   apparently a miscommunication with the administrator that was
```

8

1   handling it they believed to have done it.

2          And under CAFA, the Court cannot enter that final

3   approval order until after 90 days after the notice has been

4   provided. So, in fact we had discussed what to do in this

5   circumstance, and actually this summer I had a case where that

6   happened, and the defendants didn't provide it on time. And what

7   the Judge did -- that was in Central District of Illinois. The

8   judge held the hearing, didn't enter the final order, made findings

9   that he had approved the settlement. As soon as we -- the time had

10  passed since the notice was provided, that it could be unclear that

11  no state or Federal authorities wished to appear and object to the

12  settlement.

13         THE COURT: When will that be?

14         MR. EMANUEL: It -- and let me address this.

15         And I -- I probably ought to be in the position of

16  thanking Michelle and apologizing to her at the same time.

17         CAFA as you know is a new statute. Many of the cases --

18  I've been doing these cases for 15-some years.

19         And some settlement administrators, the one that I work

20  with, picked up on it right away and sent out the CAFA notice,

21  which is basically a notice to any Federal authority that might

22  have an interest. And I did get correspondence from them saying

23  the quote "notices" had gone out.

24         I -- it's my fault at the end of the day. I did not

25  drill down and find out did they mean the CAFA notice.

9

1       So, ultimately, what happened is that CAFA notice did not

2 go out. And until it's been out and there have been 90 days, for

3 someone to speak up, my understanding is consistent with

4 Michelle's, no final order can be entered.

5       It does leave the class and Plaintiff's counsel in a

6 position that is not enviable and we have to figure out what we

7 ought do about that.

8       I have -- as the Court noted, never -- I mean, I think

9 this settlement is -- usually defendants don't speak up much in

10 these hearings, but I've never seen a turnout like this.

11       We usually -- Michelle says ten. We usually see seven,

12 eight percent.

13       That said, I'm not worried about anyone having an

14 objection to the settlement.

15       What I'm wondering if is there any way the Court can give

16 final approval to the settlement or approve the settlement and

17 retain jurisdiction to alter that finding if there is an objection,

18 and I don't know if that's -- if that's possible, so that we can

19 go ahead and pay the class members and pay Plaintiff's counsel.

20       THE COURT: Miss Teggelaar. I don't know.

21       MS. TEGGELAAR: Well, that's also come up because

22 recently the Seventh Circuit has said we don't want any orders

23 entered that approve the settlement, retain jurisdiction because

24 that --

25       THE COURT: More than familiar with them.

1    MS. TEGGELAAR:  What we have been doing is alternatively

2    to that is having the case dismissed without prejudice, the Court

3    finding that the settlement should be approved but dismissing

4    without prejudice, subject to the settlement being implemented.

5    And then at that time have the order become with prejudice.  And I

6    mean, I'm not sure if we can  -- technically wouldn't be the final

7    order being entered.

8         THE COURT:  When was this CAFA notice sent?

9         MR. EMANUEL:  It has not.

10        THE COURT:  Has not even occurred.

11        MR. EMANUEL:  What happened today is Michelle out of

12   courtesy said to me, "Bob, did you make sure to file the CAFA

13   notice?"

14        And I called the settlement administrator and said  --

15   because he sent up a bunch of notices that were filed in this case.

16        And I said, did you send out the CAFA notice.  I cannot

17   find it.

18        And he said  -- and I don't want to imitate him; he is

19   from the very deep south.  He said basically, I don't know what a

20   CAFA notice is.

21        And I say this to be candid with the Court.

22        It did not go out.  It will go out today, and then we

23   have a 90 day period.  But I think it would be consistent if --

24        THE COURT:  What am I supposed to do here then?  What if

25   one in a hundred the notice gets out, somebody comes in here and

1  gripes about it and changes my mind.  It's not very likely.  I

2  can't unring the bell.  I can't get money back.

3  　　　　I can't -- you know, I mean, in many ways, I'm -- I

4  mean, I think I can make the findings today as it stands right now

5  so we don't even have to have another hearing, that it's a fair and

6  reasonable settlement, that it's -- and make whatever findings I

7  need to make, but take under advisement the possible

8  reconsideration of that should the CAFA notice generate some

9  adverse findings.  And unfortunately, you're going to have to wait

10 to get your money, unless you have some other solution here.

11 　　　　MS. TEGGELAAR:  Well, it's just -- it's the difficulty

12 with the class members.  I mean, if it's just a question of

13 waiting, you know, three months to get our fees to have to enter

14 it, that is something we have to deal with, but we already had

15 those individuals calling and asking about that, and --

16 　　　　THE COURT:  So, what's the solution?  What am I missing

17 here?  What would be the solution?

18 　　　　MS. TEGGELAAR:  I really don't have a solution to that.

19 I mean, I -- personally, I think the Defendant should issue the

20 class checks.  They want to wait on our fees, do it.  It's their

21 risk because it's their mistake.  We should have been prepared to

22 go forwarded too.  The longer you wait, the less likely those

23 checks get to the class members and be cashed.

24 　　　　That is something we see a lot, the longer it takes.  And

25 we could say the Defendant then has to try to skip trace them or

1  something if that does happen later.

2        THE COURT: Mr. Emanuel.

3        MR. EMANUEL: Miss Teggelaar makes good points.

4        There is some small, I think very small risk although we

5  do -- first of all, she mentioned some late claims.

6        Once we have come to a settlement, you know, we shall --

7  we generally -- more than generally. I think we have 25

8  late claims. We are going to pay those claims. And in any case,

9  whether you approved it today or whether it was in 90 days. If we

10 send a check out to someone and then it comes back, we track that

11 person down.

12       They don't just leave the checks stale.

13       And here, the amount of money is large enough that people

14 are going to get into contact with us.

15       That's why you have such a high response here. It was a

16 larger settlement per person. I really do -- I apologize to the

17 Court and I apologize to Miss Teggelaar for the issue with the

18 notice. It is embarrassing for me, but I have to be candid and

19 take responsibility for it.

20       And if there is a way that the Court can -- can approve

21 the settlement and retain jurisdiction, once the settlement is

22 approved, we'd be happy to start cutting the necessary checks.

23       THE COURT: I'll approve the settlement today.

24       MR. EMANUEL: Okay.

25       THE COURT: I mean, there is nothing about this

13

1    settlement that is unreasonable.

2          I was prepared to do that.

3          My concern is maybe not -- I don't quite understand what

4    the effect of the CAFA notice is.  Who does it go to, and what is

5    the down side risk here?

6          MR. EMANUEL:  It would go to the State Attorney General.

7    It would go to, I believe, a variety of federal agencies.

8          MS. TEGGELAAR:  I think they only give it to the US

9    Attorney.

10         MR. EMANUEL:  Okay, that's it, not the OCC?

11         MS. TEGGELAAR:  Since this is just an Indiana class.

12         MR. EMANUEL:  Okay.  And in my experience, from what I

13    read in the time that Michelle raised this issue -- I suppose I

14    shouldn't say my experience, I might be overstating things.

15         I think the chances of getting an objection here are

16    very, very slim, and I think the chances of getting an objection

17    that could be sustained are even slimmer.

18         THE COURT:  All right.

19         Here's what I'm going to do.  I'm going to issue  -- I'm

20    going to approve the settlement.

21         MR. EMANUEL:  Okay.

22         THE COURT:  And I'm going to order you to pay the class

23    members and counsel immediately, or --

24         MR. EMANUEL:  Pursuant to --

25         THE COURT:  Pursuant to the agreement, a few weeks.

1          MS. TEGGELAAR: Right.

2          THE COURT: And I will simply dismiss the case without

3   prejudice, pending -- even though I probably can't do that, but I

4   will, because this is -- you know, this is -- the risk is so low

5   here.

6          MR. EMANUEL: Uh-huh.

7          THE COURT: And we'll just keep it -- I'll wait to hear

8   back from you all --

9          MR. EMANUEL: Okay.

10         THE COURT: -- in 90 days, in which case you can file

11  something that will tell me that you can dismiss it with prejudice,

12  because nobody has objected to it.

13         MR. EMANUEL: And specifically, what I would propose is

14  that perhaps we even set a -- I don't know if you can set a status

15  date that in 91 days, we will provide the Court with proof that the

16  CAFA notice went out, and that there has been no objection or

17  response, if that's what the Court wants.

18         THE COURT: That's fine.

19         I don't think we have to have a hearing. In my world on

20  the 91st day you'll just file something that will tickle us that

21  will say, oh, by the way we sent out the notice, we got no

22  response, the dismissal can be converted from without prejudice to

23  with prejudice and the case is over.

24         MR. EMANUEL: Okay.

25         MS. TEGGELAAR: There is one other little glitch.

15

```
 1            THE COURT:  Sure.
 2            MS. TEGGELAAR:  That's because of the Seventh Circuit,
 3   not because of the CAFA notice, because we need to make sure
 4   everything is done in the settlement before it's final because the
 5   Court can't dismiss, retain jurisdiction, we need to make sure that
 6   we can do that up and through the time when they would have to give
 7   the cy pres award.
 8            So when I originally calculated that out before I was
 9   aware of this issue, triggered by the approval today and then when
10   the payment would come due and checks would be issued to class
11   members, the settlement agreement provides that their checks are
12   good for 90 days.  And after the checks are void, then the
13   Defendant has to give out cash funds to the cy pres.
14            I think I calculated that out to be about six months
15   total into April.  And I think in the draft order I submitted I
16   just left a blank that this order will become final on X date
17   unless--
18            MR. EMANUEL:  Can I  -- because if the case can't be
19   dismissed with prejudice for six months anyways --
20            MS. TEGGELAAR:  Then this will be done well before that.
21            MR. EMANUEL:  Yes.
22            THE COURT:  Okay.
23            MS. TEGGELAAR:  I mean, I could --
24            MR. EMANUEL:  Or the --
25            THE COURT:  One at a time.
```

16

1       MS. TEGGELAAR:  I'm sorry.

2       I can add a paragraph actually in what I submitted that

3  has a separate requirement that verification after the 90 days

4  passed, defendant will file something that -- saying that no

5  objection has been made, and leave the paragraph in here as it is

6  about being converted to dismissal with prejudice, and we can pick

7  a date in April some time.

8       THE COURT:  That's fine.  Why don't you go ahead and do

9  that by a week from today.

10      MS. TEGGELAAR:  I mean, I can probably as soon as I get

11  back to my office, I can make that change --

12      THE COURT:  Fair enough.  Okay.

13      MS. TEGGELAAR:  -- and send it over.

14      THE COURT:  And you wanted to appear here telephonically?

15      MR. EMANUEL:  Today I asked if I could.  We had done it

16  in the past in this case frequently.

17      I want to make clear that my request to appear

18  telephonically was made before I got Michelle's e-mail.

19      THE COURT:  Fair enough.

20      MR. EMANUEL:  Then when I talked to Michelle because I

21  told Michelle I was hoping -- she said, are you going to appear

22  telephonically.  I said, not now.  So --

23      THE COURT:  All right.

24      MR. EMANUEL:  Usually at a -- at a final approval

25  hearing, I did it in front of Judge Zagle.  Usually I say nothing

1  other than we think the settlement is fair.

2  THE COURT: I'm relatively new at this. I've probably

3  done five of these, but you know, you never know when somebody is

4  going to walk in the door and say, I don't like what I'm seeing

5  here.

6  MR. EMANUEL: Well, I would appear telephonically and our

7  local counsel is going to come and sit where I'm sitting. Once the

8  CAFA issue came up, I thought it was important for me to be here

9  and explain.

10  THE COURT: You thought it was important go to 507 State

11  Street.

12  MR. EMANUEL: It's been a -- not been my best day.

13  THE COURT: All right.

14  Here are the factors I have to consider in deciding

15  whether to grant final approval of a class action settlement: The

16  strength of the Plaintiff's case on the merits as measured against

17  the terms of the settlement; the complexity, length and expense of

18  the continued litigation; the amount of opposition to the

19  settlement among class members; the presence of any collusion in

20  gaining a settlement; the stage that the proceedings are in; and

21  the amount of discovery that's been completed. In taking -- in

22  consideration all those factors, this is a very favorable

23  settlement to the Plaintiff class as I see it, although I -- I

24  felt that it was a fairly strong case for the plaintiff. Although

25  I know that there's been no admission of liability here, I had

18

1    concern with this -- with this particular solicitation. So, it
2    -- it was a strong case and that's perhaps what led to a favorable
3    settlement in my judgment for the Plaintiff's class.
4        The law firm that is representing the Plaintiff's class
5    has appeared in this Court and across the Midwest and I assume
6    around the country litigating consumer class action litigation, and
7    as always, done excellent work in my court. And this was a complex
8    piece of litigation.
9        The fact that we have no one here in court opposing the
10   settlement, and more importantly the fact that there's been really
11   a very amazing response from the class participating in the
12   settlement, approximately a third of the prospective class or of
13   the class have returned the forms to -- asking to participate
14   really indicates the overwhelming approval that the class members
15   have in the settlement that's been negotiated by the Plaintiff's
16   counsel.
17       There's no evidence at all of any -- of any inclusion,
18   and  -- and on the issue of attorney's fees, I think they are more
19   than reasonable on a case in which approximately $300,000 is going
20   to be paid to the class. I guess what would amount to
21   approximately 25 percent of that amount in addition to that as
22   attorney's fees does not strike me at all as unreasonable and the
23   rates that were requested in the loadstar method that are set out
24   in the petition to approve the settlement, I find to be totally
25   reasonable given the prevailing market rates for this type of

1    litigation.

2            I will also approve the late filers, the people who filed

3    the claim forms late. I believe there is 25 of them. I would

4    include them as part of the final judgment here. And that they too

5    can participate in the settlement.

6            Okay. Anything else I need to do then?

7            MS. TEGGELAAR: I don't think so.

8            THE COURT: No?

9            MR. EMANUEL: No, your Honor.

10           THE COURT: So then I want to make sure I'm clear. Miss

11   Teggelaar, you'll file something today or tomorrow that is going to

12   update the proposed form of order adding the information that we

13   talked about?

14           MS. TEGGELAAR: Yes.

15           THE COURT: And I'll enter that immediately, you're

16   saying or do I want until the 90 days?

17           MS. TEGGELAAR: That -- the order that I would be

18   submitting, you could enter immediately.

19           THE COURT: And then in 90 days you'll be filing

20   something else that I can convert what I'm entering tomorrow or the

21   next day into a final dismissal with prejudice?

22           MS. TEGGELAAR: The order that I will submit will have a

23   provision in it stating that it will become final with prejudice

24   after a certain date, and I can count out six months from --

25           THE COURT: I got it.

20

1        MS. TEGGELAAR:  -- today.

2        THE COURT:  I'm following you now.

3        MS. TEGGELAAR:  We won't have to go and enter another --

4        THE COURT:  I was a little murky on that.  Got it.

5        okay.  Thank you very much.  Thank you, sir.

6        MR. EMANUEL:  And again I apologize.  I do have a couple

7   of comments once we left the record.

8        THE COURT:  Yeah.  Okay.  We can go off the record.

9        (WHICH WERE ALL THE PROCEEDINGS HAD).

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              C E R T I F I C A T E

 2

 3       I, Sharon Boleck Mroz, being a duly authorized

 4  and acting official court reporter for the

 5  United States District Court, for the Northern

 6  District of Indiana, Hammond Division, do hereby

 7  certify that I did report in machine shorthand the

 8  foregoing proceedings, and that my shorthand notes

 9  so taken at said time and place were reduced to

10  typewriting under my personal direction.

11       I further certify that the foregoing typewritten

12  transcript constitutes a true record of said

13  proceedings, so ordered to be transcribed.

14

15  _____

16                        Sharon Boleck Mroz

17                        Official Court Reporter

18

19

20

21

22

23

24

25
```

# **EXHIBIT D**

1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - X

ALTAGRACIA DIAZ, on behalf of    :
herself and all others
similarly situated,              :
                                            12 CV 3781
         Plaintiff,             :

            -against-           :   U.S. Courthouse
                                    Central Islip, N.Y.
RESIDENTIAL CREDIT SOLUTIONS,    :
INC.,
                                :

         Defendant.
                                :   September 29, 2014
- - - - - - - - - - - - - - - X   9:30 a.m.

                TRANSCRIPT OF FAIRNESS HEARING
BEFORE:

         HONORABLE ARTHUR D. SPATT, U.S.D.J.

APPEARANCES:

For the Plaintiff:    LAW OFFICES OF KLEINMAN, LLC
                      626 Rexcorp Plaza
                      Uniondale, New York 11556
                      BY:  ABRAHAM KLEINMAN, ESQ.


For the Defendant:    LOWENSTEIN SANDLER, LLP
                      1251 Avenue of the Americas
                      New York, New York
                      BY:  JASON HALPER, ESQ.



Court Reporter:       HARRY RAPAPORT, CSR
                      United States District Court
                      100 Federal Plaza
                      Central Islip, New York 11722
                      (631) 712-6105



Proceedings recorded by mechanical stenography.
Transcript produced by computer-assisted transcription.

2

1          THE CLERK:  Civil cause for fairness hearing,

2     Diaz against Residential Credit Solutions, Inc.

3          THE COURT:  Please state your appearances.

4          MR. KLEINMAN:  Good morning, your Honor.

5          Law offices of Kleinman LLC, by Abraham

6     Kleinman, for the plaintiff and the class.

7          THE COURT:  Good morning.

8          MR. HALPER:  Good morning, your Honor.

9          Jason Halper of Loweinstein Sandler LLP, for the

10    defendant.

11          THE COURT:  I didn't get your name, what is it.

12          MR. HALPER:  Jason Halper, H-A-L-P-E-R.

13          THE COURT:  Mr. Kleinman, you are interested in

14    me approving this settlement, right?

15          MR. KLEINMAN:  We are, your Honor.

16          THE COURT:  Why?

17          MR. KLEINMAN:  Your Honor, this is a case that

18    involved a Fair Debt Collections Practices Act, where the

19    plaintiff complained a violative collection letter.

20          With the assistance of your Honor we reached a

21    settlement several months ago, and subsequent to that

22    notice was sent out.

23          Notice was sent, your Honor, to 378 persons.

24    Only 350 of those were effective and reached their

25    destination.

3

1    Of those 350 notices that reached their

2    destination, ninety-one persons opted into the class.

3    Eighty-eight of those were timely, your Honor. Three were

4    a bit late. And at this juncture, if your Honor approves

5    the class, we would ask that the Court allows those three

6    that were late to be included in the class.

7    Should your Honor approve the class and approve

8    all 91 claim forms each member would receive $1,098.90.

9    THE COURT: $1,098 and 98 cents?

10    MR. KLEINMAN: 90 cents.

11    Plaintiff believes it is a terrific result for

12    the class because in an ordinary situation the maximum

13    amount a consumer could receive under the Act would be

14    $1,000.

15    Here each class member, should the Court

16    approve, would be getting in excess of the statutory

17    amount listed in the Fair Debt Collections Practices Act.

18    Also at this time, your Honor, we would ask the

19    class representative receive an incentive fee totalling

20    $5,000 for her participation in the class.

21    THE COURT: That is Ms. Diaz. A male or female?

22    MR. KLEINMAN: A female, at Altagracia Diaz.

23    THE COURT: She is going to get 5,000?

24    MR. KLEINMAN: Should the Court approve.

25    The reason we ask for the incentive fee is

4

1   Ms. Diaz was very involved in the class, and followed the

2   travel of the case, appeared for deposition, appeared for

3   a conference before Magistrate Judge Tomlinson, and has

4   been very effective and has followed the case in toto.

5           We would also ask, your Honor, that the Court

6   approve the attorney's fees in the amount of $98,330.

7           THE COURT:  That would be in addition to the

8   100,000?

9           MR. KLEINMAN:  It would, your Honor.

10          THE COURT:  And what is the hourly rate for

11  that?

12          MR. KLEINMAN:  My hourly rate was at $300, and

13  Ms. Hardy in Illinois, if I can have a moment to double

14  check, I believe that was at $325 per hour for Ms. Hardy

15  of the Edelman Combs firm in Illinois.

16          THE COURT:  And what about payments to the

17  paralegal?  What rate is being paid?

18          MR. KLEINMAN:  They pay their paralegal between

19  100 and $125 per hour, your Honor.

20          THE COURT:  Mr. Halper.

21          MR. HALPER:  Good morning, your Honor.

22          We have no objection to the settlement.

23          The only thing that I would point out to your

24  Honor is that in the proposed final order for approval of

25  the class settlement that the plaintiff filed on September

5

1    24th, in paragraph one it does mention that there were 88

2    class members who submitted a timely claim firm.

3           So, if we are going to approve --

4           THE COURT:  Which form are we talking about?

5           MR. HALPER:  I'm sorry, your Honor.

6           The proposed final order, document 62-4 on the

7    documents, which was filed by the plaintiff on September

8    24th.

9           MR. KLEINMAN:  If the Court would like, your

10   Honor, I can present a copy.

11          THE COURT:  I don't see it.  Can I see a copy?

12          MR. KLEINMAN:  Can I approach?

13          THE COURT:  Yes.

14          MR. KLEINMAN:  Thank you.

15          (Handed to the Court.)

16          THE COURT:  Just one minute.

17          I do have a copy.  It is Exhibit C, for Charley,

18   right?

19          MR. KLEINMAN:  Yes, your Honor.

20          THE COURT:  Okay.

21          You can return this.

22          MR. KLEINMAN:  May I approach?

23          THE COURT:  Yes.

24          So, you mentioned that the final order says 88

25   class members, when there actually are going to be 91 if I

6

1    approve the three late filings?

2            MR. HALPER:  Yes.

3            THE COURT:  I will approve the three late

4    filings, so it will be 91.

5            MR. HALPER:  Yes, your Honor.

6            We have no objection to that.

7            The only other thing I will mention, your Honor,

8    in paragraphs 6 and 17 of the proposed final order, it

9    states that the claims that are being released in this

10   case are being dismissed without prejudice.  We would just

11   ask the claims be dismissed with prejudice.

12           I have conferred with Mr. Kleinman about that,

13   and if you look at paragraph 21 --

14           THE COURT:  Any objection to the dismissal with

15   prejudice, Mr. Kleinman?

16           MR. KLEINMAN:  Your Honor, we would be happy to

17   dismiss it with prejudice after a period where an appeal

18   might be filed.

19           THE COURT:  Okay.

20           MR. HALPER:  And that is fine with me.

21           If we were to do that, I would ask that

22   paragraphs 6 and 17 be clarified.

23           THE COURT:  You will have to amend that.

24           MR. HALPER:  Yes.

25           THE COURT:  Anything else?

7

1     MR. HALPER:  Not from the defendant, your Honor.

2     MR. KLEINMAN:  If I may, your Honor?  I would

3 just like the Court to note that there have been no

4 objections or exclusions, and no one has appeared today.

5     However, I was informed that a Ms. Francine

6 Moore, who was a claim member, whose claim was title, who

7 the Court has since approved, was planning in attending

8 today.  And I do not see her in the Court.

9     I have a conference before Judge Feuerstein at

10 11:00 o'clock this morning, and if the Court allows I will

11 stay to address the concerns.

12     THE COURT:  What concerns does she have?

13     MR. KLEINMAN:  She just wanted to see the

14 proceedings, but nonetheless, if I can stay I will address

15 any concerns she may have.

16     THE COURT:  Anything else, counsel?

17     MR. KLEINMAN:  No, your Honor.

18     THE COURT:  This is one of the easiest class

19 actions fairness hearings, I have ever been in.  As a

20 matter of fact, it is probably the only one in which

21 there is no objection.  And the attorney's fees are fair.

22 That combination we rarely see.

23     We have a situation where under the statute the

24 damages would be a thousand dollars a person generally

25 with some exceptions, to the Fair Debt Collections

HARRY RAPAPORT, CERTIFIED REALTIME REPORTER
OFFICIAL COURT REPORTER

8

```
1   Practices Act violation.  And here the claimants are going

2   to receive $1,098.90.  So they are a little bit ahead of

3   the game.

4              I think that, therefore, the $100,000 to be

5   distributed to the 91 class members is fair.  Each class

6   member, as I said would get $1,098.90, which is a little

7   more than they would receive under the statute.

8              The $5,000 to the class representative is also

9   in my opinion fair.  She is the one who put the work in.

10             Also, the attorney's fees of $94,330 at rates of

11  300 and 325 dollars an hour is also fair.

12             The paralegal of 100 to 125, that is okay as

13  well.

14             So that, surprisingly, everything in this

15  agreement is fair.  And I'm going to approve it in its

16  entirety.

17             So, I want you to send me a final approval order

18  with the revisions that counsel for the defendant has

19  raised.  And that is paragraph 17 has to be revised.

20             What is the other revision?

21             MR. HALPER:  It was also paragraph six, your

22  Honor, it was to be without prejudice.

23             THE COURT:  Yes.

24             MR. HALPER:  And I believe --

25             THE COURT:  It is going to be with prejudice.
```

9

1              MR. HALPER:  And paragraph 1 references there
2    were 88 participating --
3              THE COURT:  It has to be 91?
4              MR. HALPER:  Yes.
5              THE COURT:  So you will have to make those
6    changes.
7              Send that to me with notice and I will sign it.
8              MR. KLEINMAN:  Thank you, your Honor.
9              THE COURT:  Okay.
10             This has been a very easy fairness hearing.
11             Thank you very much.
12             MR. KLEINMAN:  Thank you, your Honor.
13             Just for completeness of the record, those
14   members who do not cash their checks, those monies will go
15   to the Legal Aid Society, your Honor.
16             THE COURT:  Thank you.
17             This fairness hearing is concluded.
18             MR. HALPER:  Thank you, Judge.
19
20
21             (End of proceedings.)
22
23
24
25

# EXHIBIT E

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HARRIS N.A., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:09-cv-06661 |
| | ) | |
| ACADIA INVESTMENTS L.C., and LOREN W. HERSHEY, | ) - | Hon. Sidney I. Schenkier |
| | ) | |
| | ) | |
| Defendants. | ) | |

DECLARATION OF DAVID T.B. AUDLEY

I, David T.B. Audley, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that the following is true and correct.

1. The undersigned is an attorney for BMO Harris Bank N.A. ("*Harris*") in this case and is authorized to make this Declaration on behalf of Harris in support of Plaintiff's Motion for Attorneys' Fees and Costs Pursuant to Fed.R.Civ.P. 54(D) and Local Rule 54.3 (the "*Motion*"). This Declaration is made based upon my personal knowledge of the facts contained herein.

2. I received my law degree from the University of Wisconsin in 1985. I am attorney licensed to practice in the State of Illinois. I am admitted to practice in the United States District Courts for the Northern District of Illinois, Southern District of Indiana, Eastern District of Wisconsin, Western District of Wisconsin and Massachusetts. I am also admitted to practice in the United States Courts of Appeals for the Seventh Circuit and Sixth Circuit.

3. I am a partner in the firm of Chapman and Cutler LLP. I have had primary responsibility for the services rendered in this case on behalf of Harris.

4.     My current hourly rate is $745.00.  My hourly rates in 2009, 2010 and 2011 were $560, $595 and $650, respectively.  The hourly rates for the other attorneys and paralegals at Chapman and Cutler LLP who worked on this case are reflected in the table below.

| Attorney/Paralegal | 2009 Rate | 2010 Rate | 2011 Rate | 2012 Rate |
|---|---|---|---|---|
| Terry McIroy | 610.00 | 650.00 | 710.00 | 775.00 |
| Leo Gagion | N/A | 650.00 | 710.00 | 775.00 |
| Michael Benz | 560.00 | 595.00 | 650.00 | 715.00 |
| Steve Hastings | 560.00 | 595.00 | 650.00 | 715.00 |
| Dan Baker | 495.00 | 520.00 | 570.00 | 655.00 |
| Jim Sullivan | 470.00 | 500.00 | 530.00 | 575.00 |
| Laura Appleby | 285.00 | 335.00 | 390.00 | 455.00 |
| David Standa | 245.00 | 245.00 | 315.00 | 390.00 |
| Kaitlin Corkran | 245.00 | 290.00 | 365.00 | |
| John Giazzon | 200.00 | 210.00 | 225.00 | 235.00 |

5.     These are the actual rates which Chapman and Cutler LLP charges and has charged paying clients (including Harris) in other cases for the types of services rendered in this case. These hourly rates fall within, and do not exceed, the prevailing market hourly rates in Chicago (and in the case of Leo Gagion and Kaitlin Corkran, in New York, as reflected by Mr. Gagion's Declaration also submitted with this Motion) for similar services by lawyers and paralegals of reasonably comparable skill, experience and reputation.

6.     For services and disbursements incurred in connection with the representation of Harris in this case, Harris has paid or become obligated to pay attorneys' fees and costs to

2

Chapman and Cutler LLP in the total amount of $613,777.25, comprised of $19,747.00 in fees and $14.88 in costs as reflected on the detailed billing records and time entries attached as Exhibits 9, 10 and 11 to the Motion, $499,192.00 in fees and $72,047.83 in costs as reflected on the detailed billing records and time entries attached as Exhibits 12, 13 and 14 to the Motion, and $22,299.50 in fees and $476.04 in costs for Harris' local Virginia counsel as reflected on the detailed billing records and time entries as attached as Exhibits 15, 16 and 17 to the Motion.

7.     The amount of fees requested in the Motion, and the hours expended by Chapman and Cutler LLP in its representation of Harris in this case, are reasonable. The referenced Exhibits to the Motion relate to discrete categories of fees and costs incurred by Harris as a result of Acadia's default under the Credit Agreement, and thereafter the enforcement of Harris' rights under the Credit Agreement, $15.5 Million Note and Hershey's $15.5 Million Guaranty, including post-default/pre-litigation efforts to resolve matters and thereafter the litigation itself, as well as post-judgment collection activities occurring in Chicago, Illinois, Fairfax County, Virginia, and New York City.

8.     Specifically, the Chapman fees and costs identified at paragraph 11 of the Motion as "Matter No. 1679539," totaling $19,747.00 in fees, and $14.88 in costs, were incurred as a result of default under the Credit Agreement starting in February 2009, which resulted in, *inter alia*, the negotiation, drafting and execution of the Forbearance and Second Amendment between Harris, Acadia and Hershey, and before any litigation ensued in the Fall of 2009. The separate Chapman fees and costs identified at paragraph 11 of the Motion as "Matter No. 1966589", totaling $499,192.00 in fees, and $72,047.83 in costs, were incurred by Harris from August 2009 through February 1, 2012, and relate to activity after default occurred under the Forbearance and Second Amendment, which necessitated the issuance of a formal demand for payment and the subsequent litigation phase of the matter, including all post-judgment collection efforts. Those

3

post-judgment collection efforts, alone, include: (i) the utilization of a partner in Chapman's New York City Office, Leo Gagion, relating to domestication of the Judgment and enforcement efforts seeking to obtain over $1.5 million in distributions otherwise payable to Hershey, currently being held by a private equity fund, DLJ Private Equity Partners Fund II, L.P. (the "*DLJ Fund*"), which has now been the subject of objections filed by Hershey and his New York lawyers, as well as (ii) the utilization of a Virginia firm, McGuireWoods, to domesticate the Judgment in Fairfax County, Virginia (where Hershey resides), and thereafter to conduct post-judgment citation examinations of Hershey and other collection efforts.

9.    Detailed reports of the fees and costs incurred (redacted as necessary to protect attorney client privilege) are attached hereto as Exhibits 9 through 17, as referenced in the tables above. These reports provide the name of the attorney or paralegal providing the services, a description of the services provided, the date(s) the services were provided, the amount of time expended for such services, and the charge for such services based upon the normal and customary hourly rate charged by each service provider. Costs are also broken down in these reports by the date incurred, line item description, and the amount(s) charged for each expense.

10.    As to my direct participation in this credit and the litigation itself, in the Fall of 2009 default occurred under the Forbearance and Second Amendment, which was not cured by Acadia, necessitating pre-filing loan document reviews, meetings with Harris, and the preparation and issuance of default and demand notices, all as reflected in the detailed billing and time entries attached as Exhibit 12.

11.    After multiple fruitless negotiations with Hershey were attempted to reach a non-litigation resolution, the lawsuit was prepared and filed in October, 2009, and thereafter prosecuted through summary judgment, which was opposed by Acadia and Hershey throughout, on multiple grounds.

4

12.    Discovery was initiated by Acadia and Hershey, including document production and the depositions of multiple Harris employees. In addition, during the litigation, Harris sought to enforce its rights under the loan documents in seeking to obtain payment from the various private equity funds in which Acadia held an interest, and which had been pledged to Harris as collateral. These private equity funds, in turn, initiated extensive communications with Harris as to Acadia's capital call defaults thereunder, with multiple and lengthy discussions occurring with these private equity funds to try and accomplish a sale of these funds, which necessitated Acadia and Hershey's consent, but which was never obtained.

13.    Continual subsequent attempts at settlement were also made by Harris to try and avoid further litigation costs. Settlement, however, could not be reached, requiring the preparation and filing of the summary judgment motion, statements and counter statements of material fact, and legal memoranda submitted by all of the parties. After summary judgment was granted, Hershey would not initially agree to resolve matters, including a relatively small interest rate issue that required extensive negotiations with counsel to Acadia and Hershey, ultimately resulting in a resolution of the issue per stipulation (but which Hershey subsequently, but unsuccessfully, attempted to withdraw from).

14.    After the Judgment was entered, post-judgment collection activities were then initiated in this Court via the issuance of multiple third party citations, as well as the registration of the Judgment in Fairfax County, Virginia, and New York state court located in New York City. The Declarations of Leo Gagion of Chapman's New York office (Exhibit 3 the Motion), and Doug Foley of McGuireWoods' Norfolk, Virginia office (Exhibit 4 the Motion), describe these post-judgment activities.

15.    In addition, Chapman has represented Harris in Hershey's efforts before this Court to enjoin or stay enforcement of the Judgment, Hershey's subsequent motion to quash third party

citations issued by the clerk of this Court, as well as Hershey's appellate efforts in the Seventh Circuit, including settlement conferences before the Seventh Circuit settlement panel. Chapman has also represented Harris against Hershey's more recent attempts to utilize the Acadia bankruptcy to enjoin further collection efforts by Harris.

16.    All of these efforts are as set forth in the detailed billing and time entries attached to the Motion as Exhibits 12, 13 and 14.


_____
David T.B. Audley

# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HARRIS N.A., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:09-cv-06661 |
| | ) | |
| ACADIA INVESTMENTS L.C., and LOREN W. | ) | Hon. Sidney I. Schenkier |
| HERSHEY, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DECLARATION OF DANIEL W. BAKER

I, Daniel W. Baker, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that the following is true and correct.

1. The undersigned is an attorney for BMO Harris Bank N.A. ("*Harris*") in this case and is authorized to make this Declaration on behalf of Harris in support of Plaintiff's Motion for Attorneys' Fees and Costs Pursuant to Fed.R.Civ.P. 54(D) and Local Rule 54.3 (the "*Motion*"). This Declaration is made based upon my personal knowledge of the facts contained herein.

2. I received my law degree from the University of Chicago in 1995. I am an attorney licensed to practice in the State of Illinois.

3. I am a partner in the firm of Chapman and Cutler LLP. I had primary responsibility for the services rendered in this case on behalf of Harris prior to the matter being transferred to our litigation department, where David Audley, a partner in our litigation group, assumed primary responsibility.

4. My hourly rates in 2009, 2010 and 2011 were $495, $520 and $570, respectively.

5. These are the actual rates which Chapman and Cutler LLP charges and has charged paying clients (including Harris) in other cases for the types of services I rendered to Harris in

this matter. These hourly rates fall within, and do not exceed, the prevailing market hourly rates in Chicago, Illinois for similar services by lawyers and paralegals of reasonably comparable skill, experience and reputation.

6. For services and disbursements incurred in connection with my representation of Harris in this case, Harris has paid or become obligated to pay attorneys' fees and costs to Chapman and Cutler LLP in the total amount of $19,761.85. This figure is comprised of $19,747.00 in fees and $14.88 in costs and expenses.

7. Detailed reports of these fees and expenses incurred to date are attached to the Motion as Exhibits 9, 10 and 11.

8. The amount of fees requested in the Motion, and the hours expended by myself and others under my supervision at Chapman and Cutler LLP in its representation of Harris in this matter, are reasonable. I was the principal attorney representing Harris in the preparation of the notice of acceleration, as well as the negotiation, preparation and execution of the Forbearance Agreement and Second Amendment to Credit Agreement ("*Forbearance and Second Amendment*"), after default occurred under the Credit Agreement, as well as other matters incident to the credit, including conferences with Harris and the review of letters to private equity funds, all of which are described in the time entries attached to the Motion as Exhibits 9, 10 and 11.

Daniel W. Baker

2

# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HARRIS N.A., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:09-cv-06661 |
| | ) | |
| ACADIA INVESTMENTS L.C., and LOREN W. HERSHEY, | ) | Hon. Sidney I. Schenkier |
| | ) | |
| | ) | |
| Defendants. | ) | |

DECLARATION OF LEO V. GAGION

I, Leo V. Gagion, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that the following is true and correct.

1.   The undersigned is an attorney for BMO Harris Bank N.A. ("*Harris*") in this case and is authorized to make this Declaration on behalf of Harris in support of Plaintiff's Motion for Attorneys' Fees and Costs Pursuant to Fed.R.Civ.P. 54(D) and Local Rule 54.3 (the *"Motion"*). This Declaration is made based upon my personal knowledge of the facts contained herein.

2.   I received my law degree from the Fordham University School of Law in 1984. I am an attorney licensed to practice in the State of New York. I am admitted to practice in the United States District Courts for the Eastern District of New York, Southern District of New York and Northern District of New York. I am also admitted to practice in the United States Courts of Appeals for the Federal Circuit, Second Circuit and Tenth Circuit.

3.   I am a partner in the General Litigation Department of Chapman and Cutler LLP, headquartered in Chapman's New York City office. I have had primary responsibility for the post-judgment collection legal services rendered in this case on behalf of Harris in New York State Supreme Court, New York County.

HersheyGagionDecl.doc
1966589

4.    My current hourly rate is $775.00. My hourly rate in 2011 was $710.00.

5.    These are the actual rates which Chapman and Cutler LLP charges and has charged paying clients (including Harris) in other cases for the types of services rendered in this case. These hourly rates fall within, and do not exceed, the prevailing market hourly rates in New York City for similar services by lawyers and paralegals of reasonably comparable skill, experience and reputation.

6.    For the 168 total hours for legal services and disbursements incurred from September 9, 2011 to February 1, 2012 in connection with my representation of Harris in this case to prosecute post-judgment collection activities in New York state court, Harris has paid or become obligated to pay attorneys' fees and costs to Chapman and Cutler LLP in the total amount of $123,245.00.

7.    Detailed reports of these fees and expenses incurred to date for my representation of Harris in this matter are attached to the Motion as part of Exhibits 12 (one entry on September 7, 2011) and Exhibits 13 and 14.

8.    The amount of fees requested in the Motion, and the hours expended by myself on behalf of Harris in this matter, are reasonable. From September 9, 2011 to February 1, 2012, I have devoted my time and attention to a number of different matters in connection with enforcing the Judgment obtained in this Court. Specifically, I devoted time and attention to the registration of the Judgment in this case with the New York State Supreme Court in New York County under Article 54 of the NY CPLR. My work included researching the process for such registration both in New York federal and state court, and the preparation of the judgment documents for filing with the New York State Supreme Court, including the preparation of a substantive affidavit supporting the filing of the Judgment. In addition, I devoted substantial time to commencing and prosecuting the matter of *BMO Harris Bank N.A. v. DLJ Private Equity*

*Partners Fund II*, Index No. 112067/2011 (N.Y. State Supreme, N.Y. Co.), a turnover action, pursuant to NY CPLR 5225(b) & 5227, that Harris commenced in October 2011, for the purpose of securing approximately $1.5 million in distributions that the DLJ Private Equity Fund owes to Loren W. Hershey, the Judgment Debtor in this matter, but had not yet paid to him. My work on this matter was extensive and included researching and drafting the Verified Petition, negotiating with the DLJ Private Equity Fund over the terms of the turnover, preparation of a proposed judgment for the turnover proceeding, and defense of an extensive motion of the Judgment Debtor, brought by Order to Show Cause, to intervene and vacate the New York Court's Order granting the Verified Petition. The defense of the Judgment Debtor's Motion consisted of substantial briefing of the issues to the Court (including an extensive Memorandum of Law and two substantive Affidavits) and preparation for and attending the hearing on the motion held on January 25, 2012.

_____
Leo V. Gagion

3

# EXHIBIT 4

Document2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BMO HARRIS N.A., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:09-cv-06661 |
| | ) | |
| ACADIA INVESTMENTS L.C., and LOREN W. HERSHEY, | ) | Hon. Sidney I. Schenkier |
| | ) | |
| Defendants. | ) | |
| | ) | |

DECLARATION OF DOUGLAS M. FOLEY

I, Douglas M. Foley, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that the following is true and correct.

1.    The undersigned is an attorney for BMO Harris Bank N.A. ("*Harris*") in this case and is authorized to make this Declaration on behalf of Harris in support of Plaintiff's Motion for Attorneys' Fees and Costs Pursuant to Fed.R.Civ.P. 54(D) and Local Rule 54.3 (the "*Motion*"). This Declaration is made based upon my personal knowledge of the facts contained herein.

2.    I received my law degree from the George Mason University School of Law in 1992. I am an attorney licensed to practice in the Commonwealth of Virginia in all state and federal courts. I am admitted to practice in the State of North Carolina, the State of New York and the District of Columbia. I am also admitted to practice in the United States Courts of Appeals for the Fourth Circuit.

3.    I am a partner in the firm of McGuireWoods LLP. I have had primary responsibility for the services rendered in this case on behalf of Harris.

4.    My current hourly rate is $700.00.  My hourly rate in 2011 was $650.00.  The hourly rates for the other attorneys and paralegals at McGuireWoods LLP who worked on this case are reflected in the table below.

| Attorney/Paralegal | 2011 Rate | 2012 Rate |
|---|---|---|
| Cullen Ann Drescher | $350.00 | n/a |
| Connie Ferrell | $260.00 | $270.00 |
| Linda J. Neilson | $220.00 | $240.00 |
| Kenneth M. Misken | $450.00 | n/a |
| Erin Q. Ashcroft | $365.00 | $400.00 |

5.    These are the actual rates which McGuireWoods LLP charges and has charged paying clients (including Harris) in other cases for the types of services rendered in this case. These hourly rates fall within, and do not exceed, the prevailing market hourly rates in Virginia for similar services by lawyers and paralegals of reasonably comparable skill, experience and reputation.

6.    For services and disbursements incurred in connection with the representation of Harris in this case Harris has paid or become obligated to pay attorneys' fees and costs to McGuireWoods LLP in the total amount of $22,775.54.  This figure is comprised of $22,299.50 in fees and $476.04 in costs and expenses.

7.    Detailed reports of the fees and expenses incurred to date is attached to the Motion as Exhibits 15, 16 and 17).

Case: 1:09-cv-06661 Document #: 163-2 Filed: 03/02/12 Page 4 of 19 PageID #:1054

8. The amount of fees requested in the Motion, and the hours expended by McGuireWoods LLP in its representation of Harris in this case, are reasonable.

Douglas M. Foley

\37415755.1

# EXHIBIT F

## LAFFEY MATRIX – 2014-2015

Years (Rate for June 1 – May 31, based on prior year's CPI-U)

| Experience | 14-15 |
|---|---|
| 20+ years | 520 |
| 11-19 years | 460 |
| 8-10 years | 370 |
| 4-7 years | 300 |
| 1-3 years | 255 |
| Paralegals & Law Clerks | 150 |

*Explanatory Notes:*

1.  This matrix of hourly rates for attorneys of varying experience levels and paralegals/law clerks has been prepared by the Civil Division of the United States Attorney's Office for the District of Columbia. The matrix is intended to be used in cases in which a "fee-shifting" statute permits the prevailing party to recover "reasonable" attorney's fees. *See, e.g.,* 42 U.S.C. § 2000e-5(k) (Title VII of the 1964 Civil Rights Act); 5 U.S.C. § 552(a)(4)(E) (Freedom of Information Act); 28 U.S.C. § 2412(b) (Equal Access to Justice Act). The matrix does **not** apply to cases in which the hourly rate is limited by statute. *See* 28 U.S.C. § 2412(d).

2.  This matrix is based on the hourly rates allowed in *Laffey v. Northwest Airlines, Inc.,* 572 F. Supp. 354 (D.D.C. 1983), *aff'd in part, rev'd in part on other grounds,* 746 F.2d 4 (D.C. Cir. 1984), *cert. denied,* 472 U.S. 1021 (1985). It is commonly referred to by attorneys and federal judges in the District of Columbia as the "Laffey Matrix" or the "United States Attorney's Office Matrix." The various "brackets" in the column headed "Experience" refer to the years following the attorney's graduation from law school, and are intended to correspond to "junior associates" (1-3 years after law school graduation), "senior associates" (4-7 years), "experienced federal court litigators" (8-10 and 11-19 years), and "very experienced federal court litigators" (20 years or more). Thus, the "1-3 years" bracket is generally applicable to attorneys in their first, second, and third years after graduation from law school, and the "4-7 years" bracket generally becomes applicable on the third anniversary of the attorney's graduation (*i.e.,* at the beginning of the fourth year following law school). *See Laffey,* 572 F. Supp. at 371; *but cf. EPIC v. Dep't of Homeland Sec.,* No. 11-2261, ___ F. Supp. 2d ___, 2013 WL 6047561, *6 -*7 (D.D.C. Nov. 15, 2013) (attorney not admitted to bar compensated at "Paralegals & Law Clerks" rate); *EPIC v. Dep't of Homeland Sec.,* 982 F. Supp.2d 56, 60-61 (D.D.C. 2013) (same).

3.  The hourly rates approved in *Laffey* were for work done principally in 1981-82. The matrix begins with those rates. *See Laffey,* 572 F. Supp. at 371 (attorney rates) & 386 n.74 (paralegal and law clerk rate). The rates for subsequent yearly periods were determined by adding the change in the cost of living for the Washington, D.C. area to the applicable rate for the prior year, and then rounding to the nearest multiple of $5 (up if within $3 of the next multiple of $5). The result is subject to adjustment if appropriate to ensure that the relationship between the highest rate and the lower rates remains reasonably constant. Changes in the cost of living are measured by the Consumer Price Index for All Urban Consumers (CPI-U) for Washington-Baltimore, DC-MD-VA-WV, as announced by the Bureau of Labor Statistics for May of each year.

4.  Use of an updated Laffey Matrix was implicitly endorsed by the Court of Appeals in *Save Our Cumberland Mountains v. Hodel,* 857 F.2d 1516, 1525 (D.C. Cir. 1988) (en banc). The Court of Appeals subsequently stated that parties may rely on the updated *Laffey* Matrix prepared by the United States Attorney's Office as evidence of

prevailing market rates for litigation counsel in the Washington, D.C. area. *See Covington v. District of Columbia*, 57 F.3d 1101, 1105 & n.14, 1109 (D.C. Cir. 1995), *cert. denied*, 516 U.S. 1115 (1996). Most lower federal courts in the District of Columbia have relied on the United States Attorney's Office Matrix, rather than the so-called "Updated Laffey Matrix," as the "benchmark for reasonable fees" in this jurisdiction. *Miller v. Holzmann*, 575 F. Supp. 2d 2, 18 n.29 (D.D.C. 2008) (quoting *Pleasants v. Ridge*, 424 F. Supp. 2d 67, 71 n.2 (D.D.C. 2006)); *see, e.g., Berke v. Bureau of Prisons*, 942 F. Supp. 2d 71, 77 (D.D.C. 2013); *Heller v. District of Columbia*, 832 F. Supp. 2d 32, 40-49 (D.D.C. 2011); *American Lands Alliance v. Norton*, 525 F. Supp. 2d 135, 150 (D.D.C. 2007). *But see Salazar v. District of Columbia*, 123 F. Supp. 2d 8, 14-15 (D.D.C. 2000). The United States Attorney's Office does not use the "Updated Laffey Matrix" to determine whether fee awards under fee shifting statutes are reasonable.

# EXHIBIT G

Edelman, Combs, Latturner & Goodwin LLC
20 S. Clark Street
Suite 1500
Chicago, IL 60603-3403

,                                                                    Date:   7/19/2017

Regarding:  TATE & KIRLIN ASSOCIATES V OCASIO, ERICKSON J
Invoice No:   00069

### Services Rendered

| Date | Staff | Description | Hours | Rate | Charges |
|------|-------|-------------|-------|------|---------|
| 10/12/2015 | CMC | work on retainer agree | 0.10 | $700.00 | $70.00 |
| 10/14/2015 | DAE | prepare complaint | 1.00 | $700.00 | $700.00 |
| 10/15/2015 | CAC | updating info in TM | 0.10 | $290.00 | $29.00 |
| 10/16/2015 | CAC | speaking to DAE re file | 0.10 | $290.00 | $29.00 |
| 10/16/2015 | CAC | calendaring reminder to contact Zimmerman before sending out complaint to client | 0.10 | $290.00 | $29.00 |
| 10/19/2015 | CAC | emails to/from DA | 0.10 | $290.00 | $29.00 |
| 10/19/2015 | CAC | editing complaint | 0.70 | $290.00 | $203.00 |
| 10/19/2015 | CAC | editing class docs | 0.80 | $290.00 | $232.00 |
| 10/19/2015 | CAC | email to DA re autho, file | 0.10 | $290.00 | $29.00 |
| 10/19/2015 | JOL | work on complaint; conf dae | 0.30 | $700.00 | $210.00 |
| 10/20/2015 | CAC | email to co-counsel | 0.10 | $290.00 | $29.00 |
| 10/20/2015 | CAC | email to/from DAE | 0.10 | $290.00 | $29.00 |
| 10/20/2015 | LA | scanned exhibits to tm, attached to docs, email to cat | 0.50 | $125.00 | $62.50 |
| 10/21/2015 | CAC | email from/to Zimmerman | 0.10 | $290.00 | $29.00 |
| 10/21/2015 | DAE | revise class papers | 1.00 | $700.00 | $700.00 |

| 10/21/2015 | LA | printed and saved docs to tm | 0.20 | $125.00 | $25.00 |
| 10/21/2015 | LA | trying to convert from word perfect to real word | 0.20 | $125.00 | $25.00 |
| 10/21/2015 | LA | converting to word format, email to tom | 0.50 | $125.00 | $62.50 |
| 10/27/2015 | LA | editing complaint and class papers | 1.00 | $125.00 | $125.00 |
| 10/29/2015 | CAC | email from/to co-counsel | 0.10 | $290.00 | $29.00 |
| 10/29/2015 | CAC | email from/to LA | 0.10 | $290.00 | $29.00 |
| 10/29/2015 | LA | edited and gave to cat | 0.20 | $125.00 | $25.00 |
| 10/30/2015 | CAC | email to LA | 0.10 | $290.00 | $29.00 |
| 11/02/2015 | CAC | discussing w/ DAE | 0.10 | $290.00 | $29.00 |
| 11/02/2015 | CAC | email to LA | 0.10 | $290.00 | $29.00 |
| 11/02/2015 | LA | edited class papers and emailed to zimmerman | 0.50 | $125.00 | $62.50 |
| 11/03/2015 | CAC | calendaring reminder re Zimmerman getting back to us | 0.10 | $290.00 | $29.00 |
| 11/05/2015 | CAC | email to Zimmerman | 0.10 | $290.00 | $29.00 |
| 11/05/2015 | CAC | signing off on letter to client | 0.10 | $290.00 | $29.00 |
| 11/05/2015 | LA | drafted letter to cl | 0.20 | $125.00 | $25.00 |
| 11/06/2015 | CAC | emails from/to client | 0.30 | $290.00 | $87.00 |
| 11/06/2015 | CAC | email to LA re complaint is ready to file | 0.10 | $290.00 | $29.00 |
| 11/06/2015 | CAC | memo to DAE re whether to add individual claim | 0.10 | $290.00 | $29.00 |
| 11/06/2015 | CAC | discussing credit report issue w/ TLG | 0.10 | $290.00 | $29.00 |
| 11/06/2015 | CAC | calendaring reminder to f/u re client approving cmplnt | 0.10 | $290.00 | $29.00 |
| 11/06/2015 | LA | saved to tm, log, file | 0.10 | $125.00 | $12.50 |
| 11/06/2015 | LA | scanned to tm, email to client | 0.20 | $125.00 | $25.00 |

Edelman, Combs, Latturner & Goodwin LLC
Page No.:    3

| 11/09/2015 | CAC | instructions to LA re file it today | 0.10 | $290.00 | $29.00 |
|---|---|---|---|---|---|
| 11/09/2015 | CAC | email to LA re we need mtn to enter/cont. class cert | 0.10 | $290.00 | $29.00 |
| 11/09/2015 | CAC | creating case notes | 0.20 | $290.00 | $58.00 |
| 11/09/2015 | CAC | email to client re filing today | 0.10 | $290.00 | $29.00 |
| 11/09/2015 | LA | prepped and filed initial docs | 1.50 | $125.00 | $187.50 |
| 11/09/2015 | LA | drafted motion, redacted exhibits | 0.50 | $125.00 | $62.50 |
| 11/09/2015 | LA | drafted civil cover sheet | 0.20 | $125.00 | $25.00 |
| 11/10/2015 | CAC | email from/to LA re noticing up motion | 0.10 | $290.00 | $29.00 |
| 11/10/2015 | CAC | updating case notes | 0.10 | $290.00 | $29.00 |
| 11/10/2015 | LA | delivered to ct corp | 0.40 | $125.00 | $50.00 |
| 11/10/2015 | LA | courtesy copies | 0.20 | $125.00 | $25.00 |
| 11/10/2015 | LA | filed summons returned | 0.20 | $125.00 | $25.00 |
| 11/10/2015 | LA | filing class papers | 0.80 | $125.00 | $100.00 |
| 11/10/2015 | LA | copied cat on filings, drafted summons, email to clerk | 0.50 | $125.00 | $62.50 |
| 11/10/2015 | LA | added email to get notifications | 0.30 | $125.00 | $37.50 |
| 11/11/2015 | LA | created logging file, prepped for binder | 0.40 | $125.00 | $50.00 |
| 11/13/2015 | LA | logged andf iled appearances | 0.20 | $125.00 | $25.00 |
| 11/13/2015 | LA | log, file | 0.10 | $125.00 | $12.50 |
| 11/16/2015 | CAC | reading order, calendaring deadlines therefrom and those triggered by it | 0.20 | $290.00 | $58.00 |
| 11/16/2015 | CAC | email to SMB and LA re discovery and JISR | 0.10 | $290.00 | $29.00 |
| 11/16/2015 | CAC | emailt o LA re calling clerk | 0.10 | $290.00 | $29.00 |
| 11/16/2015 | LA | ECF email settings | 0.30 | $125.00 | $37.50 |
| 11/16/2015 | LA | saved docs to tm | 0.10 | $125.00 | $12.50 |

Edelman, Combs, Latturner & Goodwin LLC

Page No.:    4

| | | | | | |
|---|---|---|---|---|---|
| 11/17/2015 | CAC | email to client re SMB handling case now | 0.10 | $290.00 | $29.00 |
| 11/17/2015 | SMB | email to CAC regarding JSR | 0.10 | $230.00 | $23.00 |
| 11/17/2015 | SMB | Revied complaint and Judge Ellis standing order, drafted JSR | 3.00 | $230.00 | $690.00 |
| 11/18/2015 | CAC | email from/to SMB re JISR for this case | 0.10 | $290.00 | $29.00 |
| 11/18/2015 | SMB | Began drafting plf's first set of discovery | 2.00 | $230.00 | $460.00 |
| 11/19/2015 | CAC | updating case notes | 0.20 | $290.00 | $58.00 |
| 11/25/2015 | CAC | email from/to TLG | 0.10 | $290.00 | $29.00 |
| 11/25/2015 | CAC | emails to/from LA | 0.10 | $290.00 | $29.00 |
| 11/25/2015 | CAC | VM from OC | 0.10 | $290.00 | $29.00 |
| 11/25/2015 | CAC | email from/to OC | 0.10 | $290.00 | $29.00 |
| 11/25/2015 | TLG | look up status of service and resp to email from OC | 0.10 | $600.00 | $60.00 |
| 11/30/2015 | CAC | updating case notes | 0.10 | $290.00 | $29.00 |
| 11/30/2015 | LA | log, file | 0.10 | $125.00 | $12.50 |
| 11/30/2015 | LA | log, file | 0.10 | $125.00 | $12.50 |
| 11/30/2015 | LA | log, file | 0.10 | $125.00 | $12.50 |
| 12/01/2015 | CAC | email to LA re filing SMB appearance | 0.10 | $290.00 | $29.00 |
| 12/01/2015 | LA | saved to tm, log, file | 0.10 | $125.00 | $12.50 |
| 12/02/2015 | CAC | email to LA | 0.10 | $290.00 | $29.00 |
| 12/02/2015 | LA | left message with court | 0.10 | $125.00 | $12.50 |
| 12/03/2015 | CAC | discussing case w/ DAE | 0.10 | $290.00 | $29.00 |
| 12/03/2015 | CAC | email from to SMB re motion for leave to conduct discovery against Tate | 0.10 | $290.00 | $29.00 |
| 12/03/2015 | LA | log, file | 0.10 | $125.00 | $12.50 |

| 12/03/2015 | SMB | email CAC | 0.10 | $230.00 | $23.00 |
| 12/03/2015 | SMB | Reviewed Judge Ellis's calendar | 0.10 | $230.00 | $23.00 |
| 12/08/2015 | LA | log, file | 0.10 | $125.00 | $12.50 |
| 12/08/2015 | SMB | Email to/from Hinshaw re: extension; email to co-counsel re:extension | 0.10 | $230.00 | $23.00 |
| 12/09/2015 | CAC | updating case notes | 0.10 | $290.00 | $29.00 |
| 12/09/2015 | CAC | email to LA re sttl inquiry letter | 0.10 | $290.00 | $29.00 |
| 12/09/2015 | CAC | email to LA re copy of answer | 0.10 | $290.00 | $29.00 |
| 12/09/2015 | CAC | email from/to SMB re OC ext | 0.10 | $290.00 | $29.00 |
| 12/09/2015 | SMB | email from/to CAC re: Hinshaw extension | 0.10 | $230.00 | $23.00 |
| 12/10/2015 | LA | drafted stttlemtn inquiry letter | 0.30 | $125.00 | $37.50 |
| 12/14/2015 | CAC | updating case status in TM | 0.10 | $290.00 | $29.00 |
| 12/14/2015 | CAC | signing off on sttl inquiry letter | 0.10 | $290.00 | $29.00 |
| 12/14/2015 | LA | scan to tm, email to oc | 0.20 | $125.00 | $25.00 |
| 12/14/2015 | LA | copied cat | 0.10 | $125.00 | $12.50 |
| 12/15/2015 | CAC | email to LA re calling clerk | 0.10 | $290.00 | $29.00 |
| 12/15/2015 | LA | left message with clerk | 0.10 | $125.00 | $12.50 |
| 12/15/2015 | LA | log, file | 0.10 | $125.00 | $12.50 |
| 12/16/2015 | CAC | reading court order, to LA re docketing it | 0.10 | $290.00 | $29.00 |
| 12/16/2015 | LA | docket | 0.10 | $125.00 | $12.50 |
| 12/22/2015 | CAC | emailing JISR to Zimmerman | 0.10 | $290.00 | $29.00 |
| 12/22/2015 | CAC | drafting stip to withdraw class cert | 0.40 | $290.00 | $116.00 |
| 12/22/2015 | CAC | email to OC re stip to withdraw class cert | 0.10 | $290.00 | $29.00 |
| 12/22/2015 | CAC | email to LA re class cert stip | 0.10 | $290.00 | $29.00 |

| 12/22/2015 | CAC | working on JISR | 0.40 | $290.00 | $116.00 |
| 12/23/2015 | CAC | email from/to OC | 0.10 | $290.00 | $29.00 |
| 12/29/2015 | CAC | reviewing Zimmerman's changes to JISR | 0.10 | $290.00 | $29.00 |
| 12/29/2015 | CAC | email to/from Strickler re class cert stip | 0.10 | $290.00 | $29.00 |
| 12/29/2015 | CAC | email to/from Hill reJISR | 0.10 | $290.00 | $29.00 |
| 12/29/2015 | CAC | email from/to co-counsel | 0.10 | $290.00 | $29.00 |
| 12/29/2015 | CAC | email to LA re sending JISR to OC | 0.10 | $290.00 | $29.00 |
| 12/29/2015 | CAC | email to LA re filing class cert stip | 0.10 | $290.00 | $29.00 |
| 12/29/2015 | LA | accepted redlines, email to oc | 0.30 | $125.00 | $37.50 |
| 12/29/2015 | SMB | Reviewed co-counsel's changes to JSR and sent email to CAC re: dates | 0.10 | $230.00 | $23.00 |
| 12/30/2015 | CAC | transfer memo | 0.30 | $290.00 | $87.00 |
| 12/30/2015 | CAC | working on discovery | 2.00 | $290.00 | $580.00 |
| 12/30/2015 | CAC | memo re docket | 0.10 | $290.00 | $29.00 |
| 12/31/2015 | CAC | finalizing first draft of discovery | 1.00 | $290.00 | $290.00 |
| 12/31/2015 | CMC | work on disc requests | 0.40 | $700.00 | $280.00 |
| 12/31/2015 | LA | edit, filed, log, file, save to tm | 0.40 | $125.00 | $50.00 |
| 1/04/2016 | CAC | editing JISR | 0.30 | $290.00 | $87.00 |
| 1/04/2016 | CAC | email from/to SMB re discovery | 0.10 | $290.00 | $29.00 |
| 1/04/2016 | CAC | email to OC | 0.10 | $290.00 | $29.00 |
| 1/04/2016 | CAC | email from/to co-counsel | 0.10 | $290.00 | $29.00 |
| 1/04/2016 | LA | docketed | 0.10 | $125.00 | $12.50 |
| 1/05/2016 | SMB | Made CMC changes to discovery | 0.20 | $230.00 | $46.00 |
| 1/06/2016 | CAC | email to Zimmermand w/ aff defs | 0.10 | $290.00 | $29.00 |
| 1/06/2016 | CAC | finalizing transfer memo | 0.10 | $290.00 | $29.00 |

| 1/06/2016 | CAC | drafting mtns to strike affirmative defenses | 1.00 | $290.00 | $290.00 |
|---|---|---|---|---|---|
| 1/06/2016 | CAC | email to LA re file JISR | 0.10 | $290.00 | $29.00 |
| 1/06/2016 | CAC | email to SMB re sending discovery to Zimmerman to edit | 0.10 | $290.00 | $29.00 |
| 1/06/2016 | LA | filed jisr | 0.30 | $125.00 | $37.50 |
| 1/06/2016 | LA | reading through answer, copy cac | 0.30 | $125.00 | $37.50 |
| 1/06/2016 | SMB | Email to CAC re: emailing Zimmerman due to my problems with TM | 0.10 | $230.00 | $23.00 |
| 1/06/2016 | SMB | Proof-read motion to strike FF's affirmative defenses | 0.20 | $230.00 | $46.00 |
| 1/06/2016 | SMB | Proof-read the motion to strike FF's affirmative defenses | 0.20 | $230.00 | $46.00 |
| 1/06/2016 | SMB | Conf. w/CAC re: substance of Tate and FF's affirmative defenses, drafting motion to strike, whether first set of discovery needed to be changed based on their answers | 0.10 | $230.00 | $23.00 |
| 1/08/2016 | KO | Assembled courtesy copies of motions to strike for judge | 0.20 | $125.00 | $25.00 |
| 1/08/2016 | KO | Filed motions to strike defendant's affirmative defenses | 0.30 | $125.00 | $37.50 |
| 1/08/2016 | KO | Drafted and filed notices of motion for motions to strike | 0.20 | $125.00 | $25.00 |
| 1/12/2016 | JOL | prep for hearing on 1-13; rev of file | 0.30 | $700.00 | $210.00 |
| 1/12/2016 | LA | docketed | 0.10 | $125.00 | $12.50 |
| 1/12/2016 | SMB | Email to co-counsel Jordan Rudnick | 0.10 | $230.00 | $23.00 |
| 1/12/2016 | SMB | Drafted memo to JOL for initial status and motion to strike; printed copies of motions, complaint, and JSR | 0.40 | $230.00 | $92.00 |
| 1/12/2016 | SMB | Call with OC, Jodan Rudnick | 0.10 | $230.00 | $23.00 |

Edelman, Combs, Latturner & Goodwin LLC

Page No.: 8

| 1/13/2016 | JOL | apear on status  conf other attorneys | 1.60 | $700.00 | $1,120.00 |
|-----------|-----|---------------------------------------|------|---------|-----------|
| 1/13/2016 | LA | log, file | 0.10 | $125.00 | $12.50 |
| 1/13/2016 | SMB | Emailed Zimmerman re: revising discovery in light of the ruling on the motions | 0.10 | $230.00 | $23.00 |
| 1/13/2016 | SMB | Drafted CSR and calendared discovery dates and status date | 0.10 | $230.00 | $23.00 |
| 1/13/2016 | SMB | Prepared for initial hearing and presentment of motions; printed notes and complaint | 0.30 | $230.00 | $69.00 |
| 1/13/2016 | SMB | Attended initial status and presentment of our motions to strike w/JOL and Zimmerman co-counsel | 1.50 | $230.00 | $345.00 |
| 1/15/2016 | LA | log, file | 0.10 | $125.00 | $12.50 |
| 1/15/2016 | LA | editing disc, email to co counsel | 0.70 | $125.00 | $87.50 |
| 1/15/2016 | SMB | Conf. w/LA re: revising discovery to add interrogatories about affirmative defenses | 0.10 | $230.00 | $23.00 |
| 1/18/2016 | LA | fixing cert of service, attaching exhibits, etc. | 0.20 | $125.00 | $25.00 |
| 1/18/2016 | LA | served discovery, docket, log, file, mailed to d's | 0.50 | $125.00 | $62.50 |
| 1/18/2016 | LA | editing disc requests | 0.30 | $125.00 | $37.50 |
| 1/18/2016 | SMB | Proofread; made revisions (conf. w/LA); signed discovery to be sent to Defendants. | 0.10 | $230.00 | $23.00 |
| 1/18/2016 | SMB | Received email from Zimmerman with proposed changes to first set of discovery; Email to LA instructing her to make changes and add new interrogs re: affirmative defenses | 0.10 | $230.00 | $23.00 |
| 1/20/2016 | SMB | Reviewed LA's 26(a)(1) draft, added Zimmerman, printed for JOL review, and emailed to co-counsel for any proposed changes | 0.20 | $230.00 | $46.00 |

| 1/26/2016 | SMB | Email to Zimmerman and LA re: sending 26a(1)(A) disclosures | 0.00 | $230.00 | $0.00 |
|---|---|---|---|---|---|
| 1/27/2016 | LA | email to oc | 0.20 | $125.00 | $25.00 |
| 1/27/2016 | LA | save to tm, log, file | 0.10 | $125.00 | $12.50 |
| 2/01/2016 | LA | log, file | 0.10 | $125.00 | $12.50 |
| 2/02/2016 | LA | log, file | 0.10 | $125.00 | $12.50 |
| 2/02/2016 | LA | log, file | 0.10 | $125.00 | $12.50 |
| 2/04/2016 | LA | log, file | 0.10 | $125.00 | $12.50 |
| 2/04/2016 | SMB | Call from Hinshaw re Tate; asked about individual settlment; I asked for a balance sheet showing net worth- to be produced "attorneys eyes only" | 0.10 | $230.00 | $23.00 |
| 2/15/2016 | SMB | Conf. w/DAE re Tate's financials | 0.10 | $230.00 | $23.00 |
| 2/25/2016 | LA | email to SMB re disc responses | 0.20 | $125.00 | $25.00 |
| 2/25/2016 | SMB | Conf w/TNH re discovery over-due | 0.10 | $230.00 | $23.00 |
| 2/26/2016 | SMB | Email to Zimmerman with net worth and disco | 0.10 | $230.00 | $23.00 |
| 3/01/2016 | SMB | Email to CMC re extension | 0.10 | $230.00 | $23.00 |
| 3/01/2016 | SMB | Email to Zimmerman re extension | 0.10 | $230.00 | $23.00 |
| 3/01/2016 | SMB | Email to OC re extension and attaching requests | 0.10 | $230.00 | $23.00 |
| 3/02/2016 | LA | log, file | 0.10 | $125.00 | $12.50 |
| 3/04/2016 | SMB | Check PACER for last court appearance | 0.10 | $230.00 | $23.00 |
| 3/04/2016 | SMB | Email from/to co-counsel re appearance | 0.10 | $230.00 | $23.00 |
| 3/07/2016 | SS | saved ecf doc | 0.10 | $125.00 | $12.50 |
| 3/09/2016 | SMB | Email to DAE and CMC re individual demand | 0.10 | $230.00 | $23.00 |
| 3/10/2016 | LA | log, file | 0.10 | $125.00 | $12.50 |

Edelman, Combs, Latturner & Goodwin LLC

Page No.:    10

| | | | | | |
|---|---|---|---|---|---|
| 3/10/2016 | SMB | Email to OC re class size and actual damages | 0.10 | $230.00 | $23.00 |
| 3/10/2016 | SMB | Conf w/HAK re settlment class v individual | 0.10 | $230.00 | $23.00 |
| 3/10/2016 | SMB | Email to co-counsel re discovery responses | 0.10 | $230.00 | $23.00 |
| 3/10/2016 | SMB | Docket discovery response dates | 0.10 | $230.00 | $23.00 |
| 3/10/2016 | SMB | Email to Co-counsel re proposed response | 0.10 | $230.00 | $23.00 |
| 3/15/2016 | SMB | Conf w/DAE re settlment | 0.10 | $230.00 | $23.00 |
| 3/15/2016 | SMB | Email to co-counsel re proposed response to OC | 0.10 | $230.00 | $23.00 |
| 3/15/2016 | SMB | Docketed discovery response extension | 0.10 | $230.00 | $23.00 |
| 3/15/2016 | SMB | Forwarded email from OC to Zimmerman | 0.10 | $230.00 | $23.00 |
| 4/01/2016 | CMC | work on conf order | 0.00 | $700.00 | $0.00 |
| 4/01/2016 | CMC | work on cnf order | 0.30 | $700.00 | $210.00 |
| 4/01/2016 | SMB | email to co-counsel | 0.10 | $230.00 | $23.00 |
| 4/01/2016 | SMB | Printed and reviewed confidentialtiy | 0.10 | $230.00 | $23.00 |
| 4/05/2016 | LA | log, file | 0.10 | $125.00 | $12.50 |
| 4/05/2016 | LA | saved doc to tm | 0.10 | $125.00 | $12.50 |
| 4/18/2016 | SMB | Email from/to OC re confidentiality | 0.10 | $230.00 | $23.00 |
| 4/18/2016 | SMB | Scan PDF confidentiality; save to TM | 0.10 | $230.00 | $23.00 |
| 4/20/2016 | LA | log, file | 0.10 | $125.00 | $12.50 |
| 4/20/2016 | LA | saved disc docs to tm | 0.20 | $125.00 | $25.00 |
| 4/20/2016 | LA | log, file oc disc docs | 0.20 | $125.00 | $25.00 |
| 4/20/2016 | SMB | Rec'd message from OC; called LM | 0.10 | $230.00 | $23.00 |

Edelman, Combs, Latturner & Goodwin LLC
Page No.:    11

| 4/20/2016 | SMB | Email to OC re discovery | 0.10 | $230.00 | $23.00 |
| 4/21/2016 | CMC | rev discovery | 1.50 | $700.00 | $1,050.00 |
| 4/21/2016 | SMB | Rev'd discovery responses w/CMC; conf. w/DAE re deps | 1.50 | $230.00 | $345.00 |
| 4/21/2016 | SMB | PC w/Sharon Harris | 0.30 | $230.00 | $69.00 |
| 4/21/2016 | SMB | Rev's notes; transcribe for co-counsel | 0.60 | $230.00 | $138.00 |
| 4/21/2016 | SMB | Rev'd disco responses; printed produced docs | 0.50 | $230.00 | $115.00 |
| 4/21/2016 | SMB | Conf w/CMC re discovery | 0.10 | $230.00 | $23.00 |
| 4/22/2016 | LA | log, file | 0.20 | $125.00 | $25.00 |
| 4/27/2016 | LA | email to client | 0.10 | $125.00 | $12.50 |
| 4/27/2016 | LA | save to tm | 0.10 | $125.00 | $12.50 |
| 4/27/2016 | LA | log, file disc | 0.10 | $125.00 | $12.50 |
| 4/27/2016 | LA | drafted letter to client | 0.10 | $125.00 | $12.50 |
| 4/27/2016 | LA | scanned letter to TM | 0.10 | $125.00 | $12.50 |
| 4/27/2016 | LA | mailed disc requests to client | 0.10 | $125.00 | $12.50 |
| 4/27/2016 | LA | docketed disc response date | 0.10 | $125.00 | $12.50 |
| 4/27/2016 | LA | converting PDF disc requests to word doc | 0.80 | $125.00 | $100.00 |
| 4/27/2016 | SMB | Email to OC re discovery | 0.10 | $230.00 | $23.00 |
| 4/27/2016 | SMB | Email to LA re discovery | 0.10 | $230.00 | $23.00 |
| 4/27/2016 | SMB | Email to co-counsel re defendant's discovery requests | 0.10 | $230.00 | $23.00 |
| 4/29/2016 | LA | log, file | 0.10 | $125.00 | $12.50 |
| 5/02/2016 | SMB | Call w/Sharon Harris | 0.10 | $230.00 | $23.00 |
| 5/02/2016 | SMB | Email from/to OC re protective order | 0.10 | $230.00 | $23.00 |
| 5/05/2016 | LA | log, file | 0.10 | $125.00 | $12.50 |

Edelman, Combs, Latturner & Goodwin LLC
Page No.:    12

| 5/10/2016 | SMB | Email to client cc sharris | 0.10 | $230.00 | $23.00 |
| 5/12/2016 | SMB | Email to client | 0.10 | $230.00 | $23.00 |
| 5/13/2016 | SMB | Email from/to co-counsel | 0.10 | $230.00 | $23.00 |
| 5/13/2016 | SMB | Rev'd client answers | 0.10 | $230.00 | $23.00 |
| 5/17/2016 | SMB | Call w/OC re client's discovery responses | 0.60 | $230.00 | $138.00 |
| 5/17/2016 | SMB | Email to client re call | 0.10 | $230.00 | $23.00 |
| 5/18/2016 | SMB | Drafted discovery responses | 1.20 | $230.00 | $276.00 |
| 5/19/2016 | SMB | Call w/Sharon Harris and client re discovery responses | 0.60 | $230.00 | $138.00 |
| 5/19/2016 | SMB | Made revisions to discovery responses | 0.10 | $230.00 | $23.00 |
| 5/23/2016 | LA | scanned disc to TM, bates stamped, marked confidential | 0.30 | $125.00 | $37.50 |
| 5/23/2016 | LA | conf with SMB re disc production | 0.10 | $125.00 | $12.50 |
| 5/23/2016 | LA | updated doc production | 0.10 | $125.00 | $12.50 |
| 5/23/2016 | LA | conf with SMB re verification page | 0.10 | $125.00 | $12.50 |
| 5/23/2016 | LA | drafted verification page | 0.10 | $125.00 | $12.50 |
| 5/23/2016 | SMB | Email from/to SHarris | 0.10 | $230.00 | $23.00 |
| 5/23/2016 | SMB | Email to client w/responses | 0.10 | $230.00 | $23.00 |
| 5/23/2016 | SMB | Rev'd disc. responses w/CMC | 0.10 | $230.00 | $23.00 |
| 5/23/2016 | SMB | Email to DAE and CMC re damages | 0.10 | $230.00 | $23.00 |
| 5/23/2016 | SMB | Conf LA re bates stamp; drafting verification | 0.20 | $230.00 | $46.00 |
| 5/23/2016 | SMB | Email to/from Sharon Harris (x2) re responses | 0.20 | $230.00 | $46.00 |
| 5/24/2016 | CMC | rev disc resp | 0.40 | $700.00 | $280.00 |
| 5/24/2016 | SMB | Email from/to SHarris | 0.10 | $230.00 | $23.00 |

Edelman, Combs, Latturner & Goodwin LLC
Page No.:    13

| 5/24/2016 | SMB | Email to/from Sharon Harris | 0.10 | $230.00 | $23.00 |
| 5/25/2016 | LA | log, file | 0.10 | $125.00 | $12.50 |
| 5/25/2016 | LA | conf with SMB re disc production | 0.10 | $125.00 | $12.50 |
| 5/25/2016 | LA | editing doc production | 0.10 | $125.00 | $12.50 |
| 5/25/2016 | LA | editing doc production | 0.20 | $125.00 | $25.00 |
| 5/25/2016 | LA | mailed disc responses to OC | 0.10 | $125.00 | $12.50 |
| 5/25/2016 | SMB | Email to/from (x2) sharon harris | 0.20 | $230.00 | $46.00 |
| 5/25/2016 | SMB | Email to/from Sharon Harris | 0.10 | $230.00 | $23.00 |
| 5/25/2016 | SMB | Email to Co-counsel re signed verification | 0.10 | $230.00 | $23.00 |
| 5/25/2016 | SMB | Proofread, print, sign, and scan responses and docs | 0.20 | $230.00 | $46.00 |
| 5/25/2016 | SMB | Email to LA re changing doc label | 0.10 | $230.00 | $23.00 |
| 6/21/2016 | LM | log | 0.10 | $125.00 | $12.50 |
| 6/23/2016 | SMB | Email from/to OC | 0.10 | $230.00 | $23.00 |
| 6/27/2016 | SMB | email to OC strickler re discovery responses | 0.10 | $230.00 | $23.00 |
| 6/27/2016 | SMB | Email to Sharon Harris re date for call | 0.10 | $230.00 | $23.00 |
| 6/27/2016 | SMB | Email from/to OC Hinshaw conf time | 0.10 | $230.00 | $23.00 |
| 6/27/2016 | SMB | email to OC Tate re discovery conf | 0.10 | $230.00 | $23.00 |
| 6/28/2016 | LM | prepped docket memo | 0.10 | $125.00 | $12.50 |
| 6/28/2016 | SMB | email to/from OC, cocounsel (x2) re R37 | 0.20 | $230.00 | $46.00 |
| 6/30/2016 | CMC | work on idsc | 0.30 | $700.00 | $210.00 |
| 6/30/2016 | LM | log, file | 0.10 | $125.00 | $12.50 |
| 6/30/2016 | SMB | Rev'd R37 issue w/CMC and DAE | 0.20 | $230.00 | $46.00 |

Edelman, Combs, Latturner & Goodwin LLC

Page No.: 14

| 6/30/2016 | SMB | Email to/from OC (x2) | 0.20 | $230.00 | $46.00 |
| 6/30/2016 | SMB | Prep for R37 conf | 1.50 | $230.00 | $345.00 |
| 7/07/2016 | SMB | Recap of R37 call; emailed to OC/Tate and Sharon Harris | 0.20 | $230.00 | $46.00 |
| 7/07/2016 | SMB | R37 call w/Sharon Harris and OC strickler | 0.40 | $230.00 | $92.00 |
| 7/07/2016 | SMB | Rev'd r37 notes prior to call | 0.20 | $230.00 | $46.00 |
| 7/07/2016 | SMB | Email from/to Sharon Harris | 0.10 | $230.00 | $23.00 |
| 7/07/2016 | SMB | Rule 37 call w/Sharon Harris and OC Kate Oblak | 0.30 | $230.00 | $69.00 |
| 7/07/2016 | SMB | Rev'd responses; prepare for R37 conf | 0.50 | $230.00 | $115.00 |
| 7/11/2016 | SMB | rev'd notes from R37 conf. rev'd FFIF's disc responses | 0.20 | $230.00 | $46.00 |
| 7/11/2016 | SMB | Drafted and sent email to Sharon and OC Strickler w/recap of R37 conf | 0.30 | $230.00 | $69.00 |
| 7/13/2016 | LM | log, file | 0.10 | $125.00 | $12.50 |
| 7/14/2016 | CMC | conf w SMB re: settlement with t&K | 0.20 | $700.00 | $140.00 |
| 7/14/2016 | SMB | call w/sharon harris | 0.10 | $230.00 | $23.00 |
| 7/14/2016 | SMB | Email from/to Sharon Harris | 0.10 | $230.00 | $23.00 |
| 7/14/2016 | SMB | conf w/CMC | 0.10 | $230.00 | $23.00 |
| 7/14/2016 | SMB | f/u call w/Kate Oblak and | 0.10 | $230.00 | $23.00 |
| 7/15/2016 | SMB | email to/from DAE | 0.10 | $230.00 | $23.00 |
| 7/15/2016 | SMB | email from/to Sharon Harris | 0.10 | $230.00 | $23.00 |
| 7/15/2016 | SMB | email from/to Sharon Harris | 0.10 | $230.00 | $23.00 |
| 7/15/2016 | SMB | Email to OC f/u w/R37 | 0.10 | $230.00 | $23.00 |
| 7/18/2016 | JOL | review of first's counterclaim against tate; rev of file; research; conf dae | 0.60 | $700.00 | $420.00 |
| 7/18/2016 | LM | log, file | 0.10 | $125.00 | $12.50 |

| 7/19/2016 | SMB | Email to/from OC Kate Oblak | 0.10 | $230.00 | $23.00 |
|---|---|---|---|---|---|
| 7/21/2016 | LM | log, file | 0.10 | $125.00 | $12.50 |
| 7/21/2016 | LM | log, file | 0.10 | $125.00 | $12.50 |
| 7/25/2016 | LM | log, file | 0.10 | $125.00 | $12.50 |
| 7/25/2016 | LM | log, file | 0.10 | $125.00 | $12.50 |
| 7/26/2016 | LM | log, file | 0.10 | $125.00 | $12.50 |
| 7/28/2016 | LM | log, file | 0.10 | $125.00 | $12.50 |
| 8/02/2016 | SMB | conf DAE | 0.10 | $230.00 | $23.00 |
| 8/05/2016 | LM | log, file | 0.10 | $125.00 | $12.50 |
| 8/08/2016 | SMB | Email from/to DAE/CMC re settlement | 0.20 | $230.00 | $46.00 |
| 8/08/2016 | SMB | email from/to Sharon Harris re OC's email re consent to treatment (x2) | 0.20 | $230.00 | $46.00 |
| 8/09/2016 | SMB | email from/to Sharon Harris | 0.10 | $230.00 | $23.00 |
| 8/09/2016 | SMB | email from/to Sharon Harris | 0.10 | $230.00 | $23.00 |
| 8/09/2016 | SMB | forwarded email to DAE/CMC | 0.10 | $230.00 | $23.00 |
| 8/10/2016 | SMB | email from/to Sharon Harris | 0.10 | $230.00 | $23.00 |
| 8/11/2016 | CMC | work on mot to compel; dep notices; subpoena; t/c atty 1st Fin. | 2.50 | $700.00 | $1,750.00 |
| 8/11/2016 | LM | log, file | 0.10 | $125.00 | $12.50 |
| 8/11/2016 | SMB | drafting 30(b)(6) notice of dep | 0.70 | $230.00 | $161.00 |
| 8/11/2016 | SMB | Rev'd notes; save temp 30b6 notice; subpoena dep notice | 0.30 | $230.00 | $69.00 |
| 8/11/2016 | SMB | Conf w/CMC re discovery; deps | 1.40 | $230.00 | $322.00 |
| 8/11/2016 | SMB | Call w/Nicole Strickler and CMC | 0.20 | $230.00 | $46.00 |
| 8/11/2016 | SMB | conf w/DAE and CMC re discovery | 0.20 | $230.00 | $46.00 |
| 8/11/2016 | SMB | VM from OC; left message for OC - | 0.10 | $230.00 | $23.00 |

Edelman, Combs, Latturner & Goodwin LLC

Page No.:   16

Jennifer Weller

| 8/11/2016 | SMB | Email to SH (x2) | 0.20 | $230.00 | $46.00 |
| 8/11/2016 | SMB | save dep notices and discovery requests to TM; Print dep notice; memo to docket | 0.20 | $230.00 | $46.00 |
| 8/11/2016 | SMB | conf w/CMC | 0.20 | $230.00 | $46.00 |
| 8/11/2016 | SMB | email to client w/notice of dep and discovery requests | 0.10 | $230.00 | $23.00 |
| 8/11/2016 | SMB | Rev'd and printed discovery responses, supplemental production, and email re additional docs; saved docs to TM | 0.70 | $230.00 | $161.00 |
| 8/11/2016 | SMB | email SH re call Friday | 0.10 | $230.00 | $23.00 |
| 8/12/2016 | CMC | conf w SMB re: discovery | 0.20 | $700.00 | $140.00 |
| 8/12/2016 | LM | log, file | 0.10 | $125.00 | $12.50 |
| 8/12/2016 | SMB | Rev'd sample subpoena; rev'd FRCP; looked up contact info for hospital | 0.50 | $230.00 | $115.00 |
| 8/12/2016 | SMB | email to SH re dep dates | 0.10 | $230.00 | $23.00 |
| 8/12/2016 | SMB | Drafted addend A to subpoena | 0.30 | $230.00 | $69.00 |
| 8/12/2016 | SMB | email to OC JW re outstanding discovery | 0.10 | $230.00 | $23.00 |
| 8/12/2016 | SMB | Conf w/CMC; revised notices and subpoena; convert to word doc; email to SH | 0.60 | $230.00 | $138.00 |
| 8/12/2016 | SMB | drafted second set of discovery requests | 0.70 | $230.00 | $161.00 |
| 8/12/2016 | SMB | Drafting 30b6 notice of deps; subpoena to Weiss | 1.50 | $230.00 | $345.00 |
| 8/12/2016 | SMB | Conf w/TNH re subpoena | 0.10 | $230.00 | $23.00 |
| 8/15/2016 | CMC | work on discovery. | 0.20 | $700.00 | $140.00 |
| 8/15/2016 | SMB | Email to SH re dep notices | 0.10 | $230.00 | $23.00 |

Edelman, Combs, Latturner & Goodwin LLC

Page No.:    17

| 8/15/2016 | SMB | VM from OC; left message | 0.10 | $230.00 | $23.00 |
|---|---|---|---|---|---|
| 8/15/2016 | SMB | call w/Sharon Harris; email re second discovery requests | 0.30 | $230.00 | $69.00 |
| 8/15/2016 | SMB | Amended subpoena; printed notices and second discovery requests; emailed to co-counsel; signed; note to LM | 1.00 | $230.00 | $230.00 |
| 8/15/2016 | SMB | left message for SH | 0.10 | $230.00 | $23.00 |
| 8/16/2016 | LM | scan to TM | 0.10 | $125.00 | $12.50 |
| 8/16/2016 | SMB | Make revisions to discovery requests; notices per co-counsel; print; sign; conf. w/LM re mailing | 0.60 | $230.00 | $138.00 |
| 8/16/2016 | SMB | email to/from OC (x2) re subpeona to Weiss | 0.20 | $230.00 | $46.00 |
| 8/16/2016 | SMB | Conf w/CMC and DAE; Email response to OC w/notice of deps | 0.30 | $230.00 | $69.00 |
| 8/17/2016 | CMC | conf re class discovery | 0.20 | $700.00 | $140.00 |
| 8/17/2016 | LM | log, file | 0.10 | $125.00 | $12.50 |
| 8/17/2016 | SMB | conf w/CMC re email response | 0.20 | $230.00 | $46.00 |
| 8/17/2016 | SMB | issue re subpoena; email from co-counsel | 0.20 | $230.00 | $46.00 |
| 8/18/2016 | SMB | email to OC re notice of dep | 0.10 | $230.00 | $23.00 |
| 8/18/2016 | SMB | Drafting motion to compel | 2.50 | $230.00 | $575.00 |
| 8/19/2016 | LM | started prepping discovery | 0.80 | $125.00 | $100.00 |
| 8/19/2016 | SMB | Call w/Sharon Harris | 0.20 | $230.00 | $46.00 |
| 8/19/2016 | SMB | email to JWeller w/requested info | 0.10 | $230.00 | $23.00 |
| 8/19/2016 | SMB | forwarded email to SH | 0.10 | $230.00 | $23.00 |
| 8/19/2016 | SMB | Call w/Jennifer Weller | 0.30 | $230.00 | $69.00 |
| 8/22/2016 | SMB | conf w/CMC; email to OC | 0.20 | $230.00 | $46.00 |
| 8/22/2016 | SMB | memo to docket; calendar reminder | 0.20 | $230.00 | $46.00 |

Edelman, Combs, Latturner & Goodwin LLC
Page No.:     18

dates

| 8/22/2016 | SMB | drafting motion to compel | 0.50 | $230.00 | $115.00 |
| 8/23/2016 | SMB | conf/CMC and DAE | 0.10 | $230.00 | $23.00 |
| 8/24/2016 | SMB | drafting motion to compel | 0.50 | $230.00 | $115.00 |
| 8/24/2016 | SMB | Conf w/CMC; email to zimmerman | 0.30 | $230.00 | $69.00 |
| 8/25/2016 | LM | log, file | 0.10 | $125.00 | $12.50 |
| 8/26/2016 | CMC | t/c atty def and co-counsel | 0.50 | $700.00 | $350.00 |
| 8/26/2016 | SMB | email from/to SH | 0.10 | $230.00 | $23.00 |
| 8/26/2016 | SMB | Conf call w/plf counsel and co-counsel | 0.20 | $230.00 | $46.00 |
| 8/29/2016 | CMC | work on mot to compel | 0.30 | $700.00 | $210.00 |
| 8/29/2016 | CMC | work on disc mot | 0.30 | $700.00 | $210.00 |
| 8/29/2016 | SMB | email to co-counsel re meeting time | 0.10 | $230.00 | $23.00 |
| 8/29/2016 | SMB | revised motion to compel; printed exhibits; to CMC for review (8/28) | 0.50 | $230.00 | $115.00 |
| 8/30/2016 | CMC | conf w sMB | 0.20 | $700.00 | $140.00 |
| 8/30/2016 | SMB | Rev'd returned motion; scanned Exhibit pgs.; Sent motion to co-counsel for review | 0.20 | $230.00 | $46.00 |
| 8/31/2016 | CMC | t/c j Weller; t/c Zimmerman; conf w dAE; Conf w SmB | 1.00 | $700.00 | $700.00 |
| 8/31/2016 | SMB | email from/to SH re call; email to all attnys re conferenc eline | 0.20 | $230.00 | $46.00 |
| 8/31/2016 | SMB | call with co-counsel | 0.20 | $230.00 | $46.00 |
| 8/31/2016 | SMB | conf w/CMC re settlment | 0.10 | $230.00 | $23.00 |
| 9/01/2016 | CMC | work on sett prop | 0.20 | $700.00 | $140.00 |
| 9/01/2016 | SMB | Conf w/CMC re demand | 0.10 | $230.00 | $23.00 |
| 9/01/2016 | SMB | revised demand | 0.10 | $230.00 | $23.00 |

Edelman, Combs, Latturner & Goodwin LLC
Page No.:    19

| 9/01/2016 | SMB | email to co-counsel re demand | 0.10 | $230.00 | $23.00 |
| 9/01/2016 | SMB | Rev'd co-counsel revisions to mtn to compel; accepted changes; made revisions | 0.30 | $230.00 | $69.00 |
| 9/01/2016 | SMB | Drafted global demand | 0.30 | $230.00 | $69.00 |
| 9/02/2016 | SMB | email from client re dep | 0.10 | $230.00 | $23.00 |
| 9/02/2016 | SMB | Drafting discovery responses | 0.50 | $230.00 | $115.00 |
| 9/02/2016 | SMB | rev'd co-counsel changes; conf w/CMC; made changes; email to co-counsel | 0.30 | $230.00 | $69.00 |
| 9/02/2016 | SMB | email to client w/settlment demand | 0.10 | $230.00 | $23.00 |
| 9/02/2016 | SMB | email to SH re deps | 0.10 | $230.00 | $23.00 |
| 9/02/2016 | SMB | email to/from SH | 0.10 | $230.00 | $23.00 |
| 9/02/2016 | SMB | email to OC w/settlement demand | 0.20 | $230.00 | $46.00 |
| 9/06/2016 | LM | redacted exhibits for motion to compel | 0.20 | $125.00 | $25.00 |
| 9/06/2016 | LM | prepped notice of motion | 0.30 | $125.00 | $37.50 |
| 9/06/2016 | SMB | Drafting discovery responses/objections | 1.80 | $230.00 | $414.00 |
| 9/06/2016 | SMB | Drafting discov. resp/object | 1.00 | $230.00 | $230.00 |
| 9/06/2016 | SMB | Drafting repsonses; objections; revisions | 2.50 | $230.00 | $575.00 |
| 9/06/2016 | SMB | discovery response objections | 0.50 | $230.00 | $115.00 |
| 9/07/2016 | CPM | Review and conf SMB re motion to compel | 0.40 | $325.00 | $130.00 |
| 9/07/2016 | LM | filed m. to compel and notice, prepped courtesy copies | 0.60 | $125.00 | $75.00 |
| 9/07/2016 | LM | scan to TM | 0.10 | $125.00 | $12.50 |
| 9/07/2016 | SMB | revisions to discovery requests | 0.20 | $230.00 | $46.00 |
| 9/07/2016 | SMB | email from/to co-counsel re demand | 0.20 | $230.00 | $46.00 |
| 9/07/2016 | SMB | email from co-counsel | 0.10 | $230.00 | $23.00 |

| 9/07/2016 | SMB | email to client re discovery responses | 0.10 | $230.00 | $23.00 |
| 9/07/2016 | SMB | email from client re medical services rec'd | 0.20 | $230.00 | $46.00 |
| 9/07/2016 | SMB | email to co-counsel re demand (x2) | 0.20 | $230.00 | $46.00 |
| 9/07/2016 | SMB | emailed motion to co-counsel; made revision; give to CPM | 0.20 | $230.00 | $46.00 |
| 9/08/2016 | LM | finished prepping discovery responses | 0.60 | $125.00 | $75.00 |
| 9/08/2016 | LM | email to SMB | 0.10 | $125.00 | $12.50 |
| 9/08/2016 | LM | revised doc production | 0.40 | $125.00 | $50.00 |
| 9/08/2016 | LM | started putting together discovery responses | 0.90 | $125.00 | $112.50 |
| 9/09/2016 | LM | email to SMB | 0.10 | $125.00 | $12.50 |
| 9/09/2016 | LM | log, file | 0.10 | $125.00 | $12.50 |
| 9/09/2016 | LM | left voicemail for client | 0.10 | $125.00 | $12.50 |
| 9/09/2016 | SMB | email from/to SH (x2) | 0.20 | $230.00 | $46.00 |
| 9/09/2016 | SMB | email to/from client re responses | 0.10 | $230.00 | $23.00 |
| 9/09/2016 | SMB | email to/from OC confirming extension | 0.10 | $230.00 | $23.00 |
| 9/09/2016 | SMB | conf w/LM re contacting client | 0.10 | $230.00 | $23.00 |
| 9/09/2016 | SMB | call from client | 0.10 | $230.00 | $23.00 |
| 9/09/2016 | SMB | Left message for Nicole Strickler and Stephanie Strickler | 0.10 | $230.00 | $23.00 |
| 9/09/2016 | SMB | email to client | 0.10 | $230.00 | $23.00 |
| 9/12/2016 | SMB | revised motion to compel; conf w/TNH and DAE; send to OC; add exhibits | 3.00 | $230.00 | $690.00 |
| 9/13/2016 | CPM | Conf SMB and DAE re mtc; Class Definition; discovery | 0.40 | $325.00 | $130.00 |
| 9/13/2016 | LM | log, file | 0.10 | $125.00 | $12.50 |

| 9/13/2016 | LM | log, file | 0.10 | $125.00 | $12.50 |
| 9/13/2016 | LM | log, file | 0.10 | $125.00 | $12.50 |
| 9/13/2016 | LM | email to SMB | 0.10 | $125.00 | $12.50 |
| 9/13/2016 | LM | drafted notice of motion | 0.10 | $125.00 | $12.50 |
| 9/13/2016 | LM | filed motion for extension | 0.20 | $125.00 | $25.00 |
| 9/13/2016 | SMB | email to/from SH re response to extension | 0.10 | $230.00 | $23.00 |
| 9/13/2016 | SMB | email to client w/verification; email from client's partner | 0.20 | $230.00 | $46.00 |
| 9/13/2016 | SMB | conf w/CPM; conf DAE | 0.30 | $230.00 | $69.00 |
| 9/13/2016 | SMB | call w/OC Stephanie Strickler | 0.10 | $230.00 | $23.00 |
| 9/13/2016 | SMB | email to OC re agreed motion; (x2) | 0.20 | $230.00 | $46.00 |
| 9/13/2016 | SMB | email from DAE re amend cut-off | 0.10 | $230.00 | $23.00 |
| 9/14/2016 | LM | updated docs to be produced | 0.20 | $125.00 | $25.00 |
| 9/14/2016 | LM | email to SMB | 0.10 | $125.00 | $12.50 |
| 9/14/2016 | LM | updated doc production | 0.10 | $125.00 | $12.50 |
| 9/14/2016 | LM | email to SMB | 0.10 | $125.00 | $12.50 |
| 9/14/2016 | LM | scan to TM | 0.10 | $125.00 | $12.50 |
| 9/14/2016 | LM | prepped courtesy copies | 0.10 | $125.00 | $12.50 |
| 9/14/2016 | SMB | complile responses; verification; doc production; email to OC | 0.30 | $230.00 | $69.00 |
| 9/14/2016 | SMB | rev'd discovery responses; doc production; email to SH | 0.60 | $230.00 | $138.00 |
| 9/14/2016 | SMB | added docs to production; email to LM( x2) | 0.20 | $230.00 | $46.00 |
| 9/15/2016 | LM | mailed discovery | 0.10 | $125.00 | $12.50 |
| 9/15/2016 | LM | log, file | 0.10 | $125.00 | $12.50 |

Edelman, Combs, Latturner & Goodwin LLC

Page No.:   22

| | | | | | |
|---|---|---|---|---|---|
| 9/15/2016 | LM | bound discovery, prepped cover letter to OC | 0.40 | $125.00 | $50.00 |
| 9/16/2016 | SMB | email from/to SH re depositions | 0.10 | $230.00 | $23.00 |
| 9/20/2016 | SMB | draft email to all counsel for SH review | 0.10 | $230.00 | $23.00 |
| 9/20/2016 | SMB | email to counsel for Def | 0.20 | $230.00 | $46.00 |
| 9/20/2016 | SMB | call w/OC JW re demand; response; appearance tomorrow | 0.10 | $230.00 | $23.00 |
| 9/20/2016 | SMB | email from/SH re convo w/JW | 0.10 | $230.00 | $23.00 |
| 9/20/2016 | SMB | left message for jennifer weller | 0.10 | $230.00 | $23.00 |
| 9/20/2016 | SMB | call w/co-counsel re deps, discovery, etc | 0.30 | $230.00 | $69.00 |
| 9/20/2016 | SMB | email from/to client re rescheduling deps | 0.10 | $230.00 | $23.00 |
| 9/22/2016 | LM | log, file | 0.10 | $125.00 | $12.50 |
| 9/23/2016 | SMB | emailt to OC re status of settlement demand | 0.10 | $230.00 | $23.00 |
| 9/27/2016 | SMB | email to CPM re other case w/FFIF | 0.10 | $230.00 | $23.00 |
| 9/27/2016 | SMB | call with SH re settlement demand and deps | 0.20 | $230.00 | $46.00 |
| 9/27/2016 | SMB | conf w/CMC re settlement | 0.20 | $230.00 | $46.00 |
| 9/27/2016 | SMB | revised demand | 0.20 | $230.00 | $46.00 |
| 9/28/2016 | SMB | save counter to TM; email to client w/OC counter | 0.20 | $230.00 | $46.00 |
| 9/28/2016 | SMB | memo re discovey close | 0.10 | $230.00 | $23.00 |
| 9/29/2016 | LM | scan to TM, log, file | 0.10 | $125.00 | $12.50 |
| 9/29/2016 | SMB | fwd discovery response to LM | 0.10 | $230.00 | $23.00 |
| 10/03/2016 | LM | log, file | 0.10 | $125.00 | $12.50 |
| 10/03/2016 | SMB | Email to client w/counter-demand | 0.10 | $230.00 | $23.00 |

Edelman, Combs, Latturner & Goodwin LLC

Page No.:    23

| | | | | | |
|---|---|---|---|---|---|
| 10/03/2016 | SMB | email from/to client | 0.00 | $230.00 | $0.00 |
| 10/03/2016 | SMB | Revise SA; scan and email to OC | 0.20 | $230.00 | $46.00 |
| 10/04/2016 | LM | log, file | 0.10 | $125.00 | $12.50 |
| 10/05/2016 | LM | log, file | 0.10 | $125.00 | $12.50 |
| 10/12/2016 | SMB | email to OC re settlement demand | 0.10 | $230.00 | $23.00 |
| 10/14/2016 | SMB | email from/to client | 0.10 | $230.00 | $23.00 |
| 10/17/2016 | SMB | call w/OC | 0.10 | $230.00 | $23.00 |
| 10/17/2016 | SMB | conf w/CMC re status; corr from to co-counsel (x2) | 0.30 | $230.00 | $69.00 |
| 10/17/2016 | SMB | email to TZ re status | 0.10 | $230.00 | $23.00 |
| 10/17/2016 | SMB | email to client | 0.10 | $230.00 | $23.00 |
| 10/18/2016 | SMB | Print complaint and last demand for court | 0.20 | $230.00 | $46.00 |
| 10/18/2016 | SMB | CASR; to docket | 0.20 | $230.00 | $46.00 |
| 10/18/2016 | SMB | revised proposed email to co-counsel; to CMC (x2) | 0.20 | $230.00 | $46.00 |
| 10/18/2016 | SMB | Email to CMC w/draft to Zimmerman | 0.10 | $230.00 | $23.00 |
| 10/18/2016 | SMB | Status on settlement | 0.80 | $230.00 | $184.00 |
| 10/18/2016 | SMB | conf w/CMC re Ocasio | 0.10 | $230.00 | $23.00 |
| 10/19/2016 | LM | log, file | 0.10 | $125.00 | $12.50 |
| 10/19/2016 | LM | log, file | 0.10 | $125.00 | $12.50 |
| 10/27/2016 | CMC | t/c Tom Z re: counteroffer | 0.20 | $700.00 | $140.00 |
| 10/27/2016 | SMB | call w/co-counsel | 0.10 | $230.00 | $23.00 |
| 10/27/2016 | SMB | revised demand; email to client | 0.20 | $230.00 | $46.00 |
| 10/28/2016 | LM | log, file | 0.10 | $125.00 | $12.50 |
| 10/28/2016 | SMB | rev'd notes re demand | 0.10 | $230.00 | $23.00 |

| 10/28/2016 | SMB | revised demand letter; email to OC | 0.20 | $230.00 | $46.00 |
| 11/10/2016 | SMB | email from/to OC | 0.10 | $230.00 | $23.00 |
| 11/10/2016 | SMB | email from/to co-counsel | 0.10 | $230.00 | $23.00 |
| 11/10/2016 | SMB | email to OC | 0.10 | $230.00 | $23.00 |
| 11/14/2016 | SMB | email to co-counsel | 0.10 | $230.00 | $23.00 |
| 11/14/2016 | SMB | email to client | 0.10 | $230.00 | $23.00 |
| 11/14/2016 | SMB | Conf w/CMC re settlement demand | 0.10 | $230.00 | $23.00 |
| 11/16/2016 | LM | edited settlement demand | 0.20 | $125.00 | $25.00 |
| 11/16/2016 | LM | email to SMB | 0.10 | $125.00 | $12.50 |
| 11/16/2016 | SMB | email to/from client re revised demand | 0.10 | $230.00 | $23.00 |
| 11/16/2016 | SMB | email to LM re settlement template | 0.10 | $230.00 | $23.00 |
| 11/16/2016 | SMB | email to OC | 0.10 | $230.00 | $23.00 |
| 11/16/2016 | SMB | call w/OC | 0.10 | $230.00 | $23.00 |
| 11/16/2016 | SMB | Call to Co-counsel; LM w/secretary | 0.10 | $230.00 | $23.00 |
| 11/17/2016 | SMB | attended status | 0.80 | $230.00 | $184.00 |
| 11/17/2016 | SMB | Conf w/CMC re settlemetn proposal | 0.10 | $230.00 | $23.00 |
| 11/17/2016 | SMB | email to OC re settlement | 0.10 | $230.00 | $23.00 |
| 11/17/2016 | SMB | email to client re settlement | 0.20 | $230.00 | $46.00 |
| 11/17/2016 | SMB | Call w/Tom Zimmerman | 0.10 | $230.00 | $23.00 |
| 11/18/2016 | LM | log, file | 0.10 | $125.00 | $12.50 |
| 11/18/2016 | SMB | Call w/JW | 0.10 | $230.00 | $23.00 |
| 11/18/2016 | SMB | left message for JW | 0.10 | $230.00 | $23.00 |
| 11/18/2016 | SMB | email from/to client | 0.10 | $230.00 | $23.00 |
| 11/29/2016 | LM | log, file | 0.10 | $125.00 | $12.50 |

Edelman, Combs, Latturner & Goodwin LLC

Page No.:    25

| 11/29/2016 | SMB | email to OC re status of settlement | 0.10 | $230.00 | $23.00 |
| 11/30/2016 | SMB | call to co-cousnel re upcoming status | 0.10 | $230.00 | $23.00 |
| 11/30/2016 | SMB | vm from JW; called back re status on 12-2-16 | 0.10 | $230.00 | $23.00 |
| 12/01/2016 | SMB | call w/OC to clerk | 0.20 | $230.00 | $46.00 |
| 12/01/2016 | SMB | call w/sharon harris | 0.10 | $230.00 | $23.00 |
| 12/05/2016 | LM | log, file | 0.10 | $125.00 | $12.50 |
| 12/16/2016 | SMB | email from/to Sharon Harris | 0.10 | $230.00 | $23.00 |
| 1/05/2017 | LM | log, file | 0.10 | $125.00 | $12.50 |
| 1/05/2017 | SMB | email to OC | 0.10 | $230.00 | $23.00 |
| 1/06/2017 | SMB | email updated motion | 0.10 | $230.00 | $23.00 |
| 1/06/2017 | SMB | revised motion | 0.20 | $230.00 | $46.00 |
| 1/06/2017 | SMB | email to LM re motion | 0.10 | $230.00 | $23.00 |
| 1/06/2017 | SMB | email to all OC w/draft motion | 0.10 | $230.00 | $23.00 |
| 1/06/2017 | SMB | drafted joint motion for extension | 0.30 | $230.00 | $69.00 |
| 1/09/2017 | LM | filed motion for ext of time, notice of motion, prepped courtesy copies | 0.20 | $125.00 | $25.00 |
| 1/09/2017 | SMB | email from/to SH re motion | 0.10 | $230.00 | $23.00 |
| 1/10/2017 | LM | log, file | 0.10 | $125.00 | $12.50 |
| 1/10/2017 | LM | scan to TM | 0.10 | $125.00 | $12.50 |
| 1/10/2017 | LM | log, file | 0.10 | $125.00 | $12.50 |
| 1/12/2017 | LM | log, file | 0.10 | $125.00 | $12.50 |
| 1/23/2017 | SMB | email from SH; email to OC | 0.20 | $230.00 | $46.00 |
| 1/27/2017 | CMC | work on sett agree | 0.20 | $700.00 | $140.00 |
| 1/30/2017 | SMB | revised settlement agreement; email to co-counsel | 0.30 | $230.00 | $69.00 |
| 2/01/2017 | SMB | email to OC | 0.10 | $230.00 | $23.00 |

Edelman, Combs, Latturner & Goodwin LLC
Page No.:    26

| 2/01/2017 | SMB | email from/to OC re class documents | 0.10 | $230.00 | $23.00 |
|---|---|---|---|---|---|
| 2/02/2017 | LM | scan to TM | 0.10 | $125.00 | $12.50 |
| 2/02/2017 | SMB | rev'd zimmerman changes; conf CMC; send to OC | 0.50 | $230.00 | $115.00 |
| 2/02/2017 | SMB | email from/to SH | 0.10 | $230.00 | $23.00 |
| 2/07/2017 | SMB | Revise settlemetn notice | 0.50 | $230.00 | $115.00 |
| 2/07/2017 | SMB | email from/to OC | 0.20 | $230.00 | $46.00 |
| 2/07/2017 | SMB | revised class docs | 1.00 | $230.00 | $230.00 |
| 2/07/2017 | SMB | email to Sharon Harris (x2) | 0.10 | $230.00 | $23.00 |
| 2/07/2017 | SMB | Revise class papers | 0.30 | $230.00 | $69.00 |
| 2/08/2017 | CMC | work o0n sett docs | 0.30 | $700.00 | $210.00 |
| 2/08/2017 | SMB | revise SA; final approval | 1.50 | $230.00 | $345.00 |
| 2/08/2017 | SMB | email to SH | 0.10 | $230.00 | $23.00 |
| 2/08/2017 | SMB | revised class notice | 0.40 | $230.00 | $92.00 |
| 2/08/2017 | SMB | revise prelim app order | 0.20 | $230.00 | $46.00 |
| 2/09/2017 | SMB | email to co-counsel | 0.10 | $230.00 | $23.00 |
| 2/13/2017 | LM | docket memo | 0.10 | $125.00 | $12.50 |
| 2/13/2017 | LM | filed motion for extension of time | 0.10 | $125.00 | $12.50 |
| 2/13/2017 | LM | scan to TM | 0.10 | $125.00 | $12.50 |
| 2/13/2017 | LM | prepped courtesy copies for judge | 0.10 | $125.00 | $12.50 |
| 2/13/2017 | LM | log, file | 0.10 | $125.00 | $12.50 |
| 2/13/2017 | SMB | email to cocounsel | 0.10 | $230.00 | $23.00 |
| 2/13/2017 | SMB | drafted joint motion | 0.20 | $230.00 | $46.00 |
| 2/13/2017 | SMB | email second Joint Motion to OC | 0.10 | $230.00 | $23.00 |
| 2/13/2017 | SMB | email to LM | 0.10 | $230.00 | $23.00 |

| 2/13/2017 | SMB | revised motion | 0.10 | $230.00 | $23.00 |
| 2/13/2017 | SMB | email to cocounsel | 0.10 | $230.00 | $23.00 |
| 2/15/2017 | SMB | email to co-counsel re status of class docs | 0.10 | $230.00 | $23.00 |
| 2/16/2017 | LM | log, file | 0.10 | $125.00 | $12.50 |
| 2/16/2017 | LM | log, file | 0.10 | $125.00 | $12.50 |
| 2/17/2017 | SMB | rev'd SA | 0.20 | $230.00 | $46.00 |
| 2/17/2017 | SMB | email from/to co cousnel | 0.10 | $230.00 | $23.00 |
| 2/21/2017 | SMB | email from/to co-counsel | 0.10 | $230.00 | $23.00 |
| 2/23/2017 | LM | log, file | 0.10 | $125.00 | $12.50 |
| 2/28/2017 | SMB | email from co-counsel; rev'd settlement docs | 0.20 | $230.00 | $46.00 |
| 3/01/2017 | SMB | email to sharon harris | 0.10 | $230.00 | $23.00 |
| 3/06/2017 | LM | drafted notice of motion | 0.10 | $125.00 | $12.50 |
| 3/06/2017 | LM | filed motion for preliminary approval and bound courtesy copies | 0.40 | $125.00 | $50.00 |
| 3/06/2017 | LM | scan to TM | 0.10 | $125.00 | $12.50 |
| 3/06/2017 | SMB | email from/to OC | 0.10 | $230.00 | $23.00 |
| 3/06/2017 | SMB | rev'd and compiled settlement docs for filing; email; prelim dates | 1.60 | $230.00 | $368.00 |
| 3/06/2017 | SMB | email to OC; email to LM | 0.20 | $230.00 | $46.00 |
| 3/07/2017 | LM | log, file | 0.10 | $125.00 | $12.50 |
| 3/07/2017 | LM | log, file | 0.10 | $125.00 | $12.50 |
| 3/09/2017 | SMB | email from OC | 0.10 | $230.00 | $23.00 |
| 3/10/2017 | LM | email to judge | 0.10 | $125.00 | $12.50 |
| 3/10/2017 | LM | circulated agreement to CMC to sign | 0.10 | $125.00 | $12.50 |

Edelman, Combs, Latturner & Goodwin LLC

Page No.:    28

| | | | | | |
|---|---|---|---|---|---|
| 3/10/2017 | LM | conf SMB | 0.10 | $125.00 | $12.50 |
| 3/10/2017 | SMB | prep case coverage memo for CPM; print docs | 0.50 | $230.00 | $115.00 |
| 3/10/2017 | SMB | email to co counsel | 0.10 | $230.00 | $23.00 |
| 3/13/2017 | LM | email to SMB | 0.10 | $125.00 | $12.50 |
| 3/13/2017 | LM | scan to TM | 0.10 | $125.00 | $12.50 |
| 3/13/2017 | LM | scan to TM | 0.10 | $125.00 | $12.50 |
| 3/13/2017 | LM | email to OC | 0.10 | $125.00 | $12.50 |
| 3/13/2017 | LM | scan to TM | 0.10 | $125.00 | $12.50 |
| 3/13/2017 | SMB | email from co counsel; fwd to LM; Fwd fully executed | 0.20 | $230.00 | $46.00 |
| 3/14/2017 | CPM | Appear on Prelimin Apprv w SMB; Conf SMB on procedural steps following Prelim Approval | 1.60 | $325.00 | $520.00 |
| 3/14/2017 | LM | log, file | 0.10 | $125.00 | $12.50 |
| 3/14/2017 | LM | conf SMB | 0.10 | $125.00 | $12.50 |
| 3/14/2017 | LM | email to SMB | 0.10 | $125.00 | $12.50 |
| 3/14/2017 | LM | scan to TM | 0.10 | $125.00 | $12.50 |
| 3/14/2017 | LM | scan to TM | 0.10 | $125.00 | $12.50 |
| 3/14/2017 | LM | log, file | 0.10 | $125.00 | $12.50 |
| 3/14/2017 | LM | drafted paralegal memo | 0.90 | $125.00 | $112.50 |
| 3/14/2017 | LM | scan to TM | 0.10 | $125.00 | $12.50 |
| 3/14/2017 | SMB | Attend preliminary approval | 1.40 | $230.00 | $322.00 |
| 3/14/2017 | SMB | email to LM | 0.10 | $230.00 | $23.00 |
| 3/14/2017 | SMB | conf LM; conf CPM; draft CASR; email from to co-counsel re preliminary approval motion | 0.90 | $230.00 | $207.00 |
| 3/15/2017 | LM | log, file | 0.10 | $125.00 | $12.50 |

| 3/15/2017 | LM | log, file | 0.10 | $125.00 | $12.50 |
| 3/15/2017 | SMB | email from/to OC | 0.10 | $230.00 | $23.00 |
| 3/15/2017 | SMB | conf CPM re new nos for class | 0.10 | $230.00 | $23.00 |
| 3/16/2017 | LM | edited phone message draft | 0.60 | $125.00 | $75.00 |
| 3/16/2017 | LM | scan to TM | 0.10 | $125.00 | $12.50 |
| 3/16/2017 | LM | log, file | 0.10 | $125.00 | $12.50 |
| 3/16/2017 | LM | conf SMB | 0.10 | $125.00 | $12.50 |
| 3/16/2017 | SMB | fwd cafa to LM; fwd email to co counsel | 0.10 | $230.00 | $23.00 |
| 3/21/2017 | LM | log, file | 0.10 | $125.00 | $12.50 |
| 3/28/2017 | SMB | conf CMC; revise notice; email to OC | 0.30 | $230.00 | $69.00 |
| 3/28/2017 | SMB | email to CL re phone number and script | 0.10 | $230.00 | $23.00 |
| 3/28/2017 | SMB | revise paralegal memo and phone script; conf TNH re objections | 0.30 | $230.00 | $69.00 |
| 3/30/2017 | SMB | email from Jennifer; to Sharon re any changes to class notice | 0.10 | $230.00 | $23.00 |
| 3/30/2017 | SMB | email from/to Jennifer w/notice updated | 0.20 | $230.00 | $46.00 |
| 3/31/2017 | SMB | Reviewed revised notice; email to OC | 0.20 | $230.00 | $46.00 |
| 4/10/2017 | LM | email to RN | 0.10 | $125.00 | $12.50 |
| 4/10/2017 | LM | email to RN | 0.10 | $125.00 | $12.50 |
| 4/10/2017 | LM | email to paralegals | 0.10 | $125.00 | $12.50 |
| 4/10/2017 | SMB | email to LM | 0.10 | $230.00 | $23.00 |
| 4/12/2017 | SMB | fwd email to CMC; conf CMC | 0.10 | $230.00 | $23.00 |
| 4/17/2017 | LM | spoke to class member | 0.10 | $125.00 | $12.50 |
| 4/17/2017 | LM | email to RN | 0.10 | $125.00 | $12.50 |
| 4/17/2017 | LM | spoke to class member | 0.10 | $125.00 | $12.50 |

Edelman, Combs, Latturner & Goodwin LLC

Page No.:    30

| 4/18/2017 | LM | log, file | 0.10 | $125.00 | $12.50 |
|-----------|-----|-----------|------|---------|--------|
| 4/18/2017 | LM | spoke to class member | 0.10 | $125.00 | $12.50 |
| 4/18/2017 | LM | scan to TM | 0.10 | $125.00 | $12.50 |
| 4/19/2017 | SMB | email to co-counsel re fee petition | 0.20 | $230.00 | $46.00 |
| 4/19/2017 | SMB | docket memo re fee petition | 0.10 | $230.00 | $23.00 |
| 4/20/2017 | LM | spoke to class member | 0.10 | $125.00 | $12.50 |
| 4/21/2017 | LM | log, file | 0.10 | $125.00 | $12.50 |
| 5/01/2017 | CPM | Email from cc re claim form; respond; email rw re action setps | 0.30 | $325.00 | $97.50 |
| 5/01/2017 | RW | sent claims form to class admin | 0.20 | $125.00 | $25.00 |
| 5/01/2017 | RW | logging adn filing | 0.10 | $125.00 | $12.50 |
| 5/03/2017 | RW | took call from class member | 0.20 | $125.00 | $25.00 |
| 5/16/2017 | CPM | Work Mtn Attorney fees | 0.40 | $325.00 | $130.00 |
| 5/17/2017 | CJV | Prepare preliminary motion and memo for attys fees. | 1.90 | $230.00 | $437.00 |
| 5/17/2017 | CJV | Supplement preliminary motion for attys fees. | 0.60 | $230.00 | $138.00 |
| 5/18/2017 | CJV | RE: 31758 - Preliminary Motion for Attorney Fees | 0.00 | $230.00 | $0.00 |
| 5/18/2017 | CJV | Continue preparing and supplement preliminary motion for atty's fees. | 0.20 | $230.00 | $46.00 |
| 5/18/2017 | CPM | work on preliminary attorney fees motion | 0.40 | $325.00 | $130.00 |
| 5/18/2017 | RW | updated contact info | 0.10 | $125.00 | $12.50 |
| 5/18/2017 | RW | made contact entries for defendants | 0.20 | $125.00 | $25.00 |
| 5/19/2017 | CPM | Email to CC re motion for fees and time and expense | 0.20 | $325.00 | $65.00 |
| 5/22/2017 | CJV | Review CC supplemental email correspondence and supplement | 0.60 | $230.00 | $138.00 |

Edelman, Combs, Latturner & Goodwin LLC

Page No.:    31

Preliminary Motion For Atty's Fees with
CC fee and expense info

| 5/26/2017 | CJV | correspond w sharon CC RE: Ocasio v. First Financial, Tate & Kirlin | 0.10 | $230.00 | $23.00 |
| 5/26/2017 | CJV | conf RW on filing fee petition and associated exhibits and appendicies | 0.50 | $230.00 | $115.00 |
| 5/26/2017 | CJV | correspond CC RE: Ocasio v. First Financial, Tate & Kirlin | 0.10 | $230.00 | $23.00 |
| 5/26/2017 | CPM | Prepare time and expense; review fee petition; review time and expense for redactions; conf RW and CJV re filings | 1.30 | $325.00 | $422.50 |
| 5/26/2017 | RW | organzing and filing fee petition | 0.50 | $125.00 | $62.50 |
| 5/26/2017 | RW | prepping fees memo to file | 1.90 | $125.00 | $237.50 |
| 5/30/2017 | RW | making courtesy copies | 0.40 | $125.00 | $50.00 |
| 6/26/2017 | RW | tm saving, loggin adn filign | 0.10 | $125.00 | $12.50 |
| 6/27/2017 | CPM | Review claims from OC; email exchange re same | 0.40 | $325.00 | $130.00 |
| 7/05/2017 | CPM | Email exchange and call re payments | 0.30 | $325.00 | $97.50 |
| 7/10/2017 | CPM | Review draft admin affidavit; respond to oc email re same; review file re same | 0.30 | $325.00 | $97.50 |
| 7/10/2017 | CPM | Respond to OC re claim forms | 0.20 | $325.00 | $65.00 |
| 7/11/2017 | RW | logging and filing | 0.10 | $125.00 | $12.50 |
| 7/11/2017 | TLG | process check | 0.20 | $600.00 | $120.00 |
| 7/17/2017 | CPM | Work on Final approval memo | 0.80 | $325.00 | $260.00 |
| 7/17/2017 | RW | editting final approval memo | 0.80 | $125.00 | $100.00 |
| 7/18/2017 | CPM | Email to client re status of settlement | 0.30 | $325.00 | $97.50 |
| 7/18/2017 | CPM | Drafting, revising final approval memo; send to OC | 2.80 | $325.00 | $910.00 |
| 7/18/2017 | RW | updating actors in TM | 0.40 | $125.00 | $50.00 |

Edelman, Combs, Latturner & Goodwin LLC
Page No.:    32

| 7/19/2017 | CPM | Finalize Final Approval Memo; Prepare time and Exp for filing | 0.40 | $325.00 | $130.00 |
| 7/19/2017 | RW | logging and filing | 0.10 | $125.00 | $12.50 |

Total Fees    $43,288.00

### Expenses

| Start Date | Description | Charges |
| --- | --- | --- |
| 11/09/2015 | Filing Fee- DAE Visa chk 26732 | $400.00 |
| 1/18/2016 | Postage | $3.28 |
| 1/27/2016 | Copy | $2.00 |
| 1/27/2016 | Postage | $0.96 |
| 1/27/2016 | Legal research cost- PACER chk 26903 | $7.00 |
| 2/01/2016 | Copy | $1.00 |
| 2/04/2016 | Phone charge | $0.35 |
| 3/31/2016 | Legal research cost- PACER | $2.80 |
| 4/04/2016 | Copy | $11.00 |
| 4/27/2016 | Postage | $0.88 |
| 5/18/2016 | Print | $2.40 |
| 5/23/2016 | Print | $2.40 |
| 5/23/2016 | Print | $2.25 |
| 5/23/2016 | Print | $2.10 |
| 5/23/2016 | Print | $2.40 |
| 5/23/2016 | Print | $0.75 |
| 5/23/2016 | Print | $1.80 |
| 5/23/2016 | Print | $5.10 |
| 5/25/2016 | Print | $4.80 |

Edelman, Combs, Latturner & Goodwin LLC

Page No.:    33

| 5/25/2016 | Print | $2.10 |
|-----------|-------|-------|
| 5/25/2016 | Print | $0.15 |
| 5/25/2016 | Print | $2.25 |
| 5/25/2016 | Print | $2.40 |
| 5/25/2016 | Print | $2.40 |
| 5/25/2016 | Print | $2.25 |
| 5/25/2016 | Print | $0.15 |
| 5/25/2016 | Print | $0.15 |
| 5/25/2016 | Print | $2.40 |
| 5/25/2016 | Print | $2.40 |
| 5/26/2016 | Postage | $1.99 |
| 6/28/2016 | Print | $0.15 |
| 6/30/2016 | Print | $2.25 |
| 6/30/2016 | Print | $0.30 |
| 6/30/2016 | Legal research cost- PACER | $0.50 |
| 7/01/2016 | Print | $0.15 |
| 7/12/2016 | Print | $0.15 |
| 7/14/2016 | Print | $0.30 |
| 7/26/2016 | Print | $0.90 |
| 7/26/2016 | Print | $0.30 |
| 8/09/2016 | Print | $0.30 |
| 8/10/2016 | Print | $0.30 |
| 8/11/2016 | Print | $0.45 |

Edelman, Combs, Latturner & Goodwin LLC
Page No.:   34

| 8/11/2016 | Print | $1.05 |
| 8/11/2016 | Print | $0.30 |
| 8/11/2016 | Print | $1.35 |
| 8/11/2016 | Print | $3.90 |
| 8/11/2016 | Print | $0.45 |
| 8/11/2016 | Print | $0.60 |
| 8/11/2016 | Print | $0.60 |
| 8/11/2016 | Print | $0.15 |
| 8/11/2016 | Print | $0.15 |
| 8/11/2016 | Print | $0.60 |
| 8/11/2016 | Print | $0.60 |
| 8/12/2016 | Print | $0.15 |
| 8/12/2016 | Print | $0.45 |
| 8/12/2016 | Print | $0.60 |
| 8/12/2016 | Print | $0.60 |
| 8/14/2016 | Print | $1.50 |
| 8/14/2016 | Print | $2.55 |
| 8/15/2016 | Print | $1.50 |
| 8/15/2016 | Print | $0.45 |
| 8/15/2016 | Print | $0.15 |
| 8/15/2016 | Print | $0.30 |
| 8/15/2016 | Print | $0.45 |
| 8/15/2016 | Print | $0.15 |

Edelman, Combs, Latturner & Goodwin LLC
Page No.:    35

| 8/15/2016 | Print | $0.30 |
| 8/15/2016 | Print | $0.30 |
| 8/15/2016 | Print | $0.60 |
| 8/15/2016 | Print | $0.60 |
| 8/16/2016 | Postage | $1.15 |
| 8/16/2016 | Postage | $1.59 |
| 8/16/2016 | Print | $0.60 |
| 8/16/2016 | Print | $0.60 |
| 8/16/2016 | Print | $1.65 |
| 8/16/2016 | Print | $0.60 |
| 8/16/2016 | Print | $0.60 |
| 8/16/2016 | Print | $0.30 |
| 8/17/2016 | Print | $0.60 |
| 8/18/2016 | Print | $0.30 |
| 8/18/2016 | Print | $1.35 |
| 8/18/2016 | Print | $1.35 |
| 8/18/2016 | Print | $1.20 |
| 8/22/2016 | Print | $0.15 |
| 8/23/2016 | Print | $1.05 |
| 8/28/2016 | Print | $0.45 |
| 8/28/2016 | Print | $0.15 |
| 8/28/2016 | Print | $1.35 |
| 8/28/2016 | Print | $0.15 |
| 8/28/2016 | Print | $0.15 |

| 8/28/2016 | Print | $0.15 |
| 8/28/2016 | Print | $0.15 |
| 8/28/2016 | Print | $0.15 |
| 8/28/2016 | Print | $0.30 |
| 8/28/2016 | Print | $1.05 |
| 9/01/2016 | Print | $1.05 |
| 9/01/2016 | Print | $0.30 |
| 9/01/2016 | Print | $1.05 |
| 9/02/2016 | Print | $0.30 |
| 9/02/2016 | Print | $0.30 |
| 9/06/2016 | Print | $1.95 |
| 9/06/2016 | Print | $1.50 |
| 9/06/2016 | Print | $2.55 |
| 9/06/2016 | Print | $2.40 |
| 9/06/2016 | Print | $1.35 |
| 9/07/2016 | Print | $0.15 |
| 9/07/2016 | Print | $0.30 |
| 9/07/2016 | Print | $0.30 |
| 9/07/2016 | Print | $1.95 |
| 9/07/2016 | Print | $1.05 |
| 9/07/2016 | Print | $1.20 |
| 9/07/2016 | Print | $1.05 |
| 9/07/2016 | Print | $1.95 |

Edelman, Combs, Latturner & Goodwin LLC

Page No.:    37

| 9/07/2016 | Print | $1.05 |
| 9/09/2016 | Print | $0.15 |
| 9/09/2016 | Print | $1.95 |
| 9/09/2016 | Print | $1.05 |
| 9/09/2016 | Print | $0.30 |
| 9/12/2016 | Print | $1.05 |
| 9/12/2016 | Print | $0.15 |
| 9/12/2016 | Print | $0.15 |
| 9/13/2016 | Print | $0.75 |
| 9/13/2016 | Print | $0.75 |
| 9/13/2016 | Print | $0.75 |
| 9/13/2016 | Print | $0.30 |
| 9/14/2016 | Print | $2.40 |
| 9/14/2016 | Print | $0.60 |
| 9/14/2016 | Print | $0.30 |
| 9/14/2016 | Print | $0.30 |
| 9/14/2016 | Print | $0.60 |
| 9/15/2016 | Postage | $6.80 |
| 9/15/2016 | Print | $0.15 |
| 9/15/2016 | Print | $14.85 |
| 9/26/2016 | Print | $0.30 |
| 9/27/2016 | Print | $0.45 |
| 9/27/2016 | Print | $0.30 |

| 9/27/2016 | Print | $0.30 |
| 9/28/2016 | Print | $0.30 |
| 9/28/2016 | Print | $0.15 |
| 9/28/2016 | Print | $0.30 |
| 9/29/2016 | Print | $1.50 |
| 9/29/2016 | Print | $0.15 |
| 10/03/2016 | Print | $0.30 |
| 10/03/2016 | Print | $0.30 |
| 10/04/2016 | Copy | $1.50 |
| 10/12/2016 | Print | $0.15 |
| 10/18/2016 | Print | $0.15 |
| 10/18/2016 | Print | $0.30 |
| 10/18/2016 | Print | $0.30 |
| 10/27/2016 | Print | $0.30 |
| 10/27/2016 | Print | $0.30 |
| 10/27/2016 | Print | $0.30 |
| 10/28/2016 | Print | $0.30 |
| 10/28/2016 | Print | $0.30 |
| 11/11/2016 | Print | $0.30 |
| 11/14/2016 | Print | $0.30 |
| 11/16/2016 | Print | $0.30 |
| 1/05/2017 | Print | $0.30 |
| 1/09/2017 | Print | $0.30 |
| 1/09/2017 | Print | $0.30 |

Edelman, Combs, Latturner & Goodwin LLC
Page No.:    39

| 1/09/2017 | Print | $0.60 |
| 1/09/2017 | Print | $0.60 |
| 1/10/2017 | Print | $0.30 |
| 1/10/2017 | Print | $0.60 |
| 1/26/2017 | Print | $1.65 |
| 2/02/2017 | Print | $1.80 |
| 2/07/2017 | Print | $0.90 |
| 2/07/2017 | Print | $1.80 |
| 2/08/2017 | Print | $0.90 |
| 2/08/2017 | Print | $0.90 |
| 2/08/2017 | Print | $0.45 |
| 2/08/2017 | Print | $0.45 |
| 2/08/2017 | Print | $0.90 |
| 2/08/2017 | Print | $0.90 |
| 2/13/2017 | Print | $0.15 |
| 2/13/2017 | Print | $0.30 |
| 2/13/2017 | Print | $0.30 |
| 2/13/2017 | Print | $0.60 |
| 2/13/2017 | Print | $0.30 |
| 2/13/2017 | Print | $0.60 |
| 3/06/2017 | Print | $0.30 |
| 3/06/2017 | Print | $2.40 |
| 3/06/2017 | Print | $2.10 |

Edelman, Combs, Latturner & Goodwin LLC
Page No.:    40

| 3/06/2017 | Print | $1.05 |
| 3/07/2017 | Print | $0.60 |
| 3/07/2017 | Print | $2.40 |
| 3/07/2017 | Print | $2.10 |
| 3/07/2017 | Print | $1.05 |
| 3/10/2017 | Print | $0.15 |
| 3/10/2017 | Print | $2.40 |
| 3/10/2017 | Print | $0.15 |
| 3/10/2017 | Print | $0.15 |
| 3/10/2017 | Print | $2.40 |
| 3/10/2017 | Print | $1.80 |
| 3/10/2017 | Print | $2.55 |
| 3/10/2017 | Print | $0.30 |
| 3/10/2017 | Print | $2.10 |
| 3/10/2017 | Print | $1.05 |
| 3/10/2017 | Print | $1.05 |
| 3/13/2017 | Print | $1.95 |
| 3/14/2017 | Print | $2.40 |
| 3/14/2017 | Print | $0.15 |
| 3/14/2017 | Print | $1.20 |
| 3/16/2017 | Print | $0.30 |
| 4/14/2017 | Print | $0.15 |
| 4/18/2017 | Print | $0.15 |

Edelman, Combs, Latturner & Goodwin LLC
Page No.: 41

| 5/01/2017 | Postage | $0.46 |
| 5/01/2017 | Print | $0.45 |
| 5/01/2017 | Print | $0.15 |
| 5/18/2017 | Print | $1.05 |
| 5/18/2017 | Print | $1.05 |
| 5/26/2017 | Print | $6.00 |
| 5/26/2017 | Print | $1.05 |
| 5/30/2017 | Print | $18.15 |
| 5/30/2017 | Print | $1.20 |
| 5/30/2017 | Print | $5.25 |

Total Expenses $662.86

Total New Charges $43,950.86

### Staff Summary

| Name | Position | Hours | Rate | Fees |
|---|---|---|---|---|
| | Associate | 14.20 | $290.00 | $4,118.00 |
| Corey J Varma | | 4.00 | $230.00 | $920.00 |
| Cathleen M. Combs | Partner | 9.50 | $700.00 | $6,650.00 |
| Cassandra P Miller | Partner | 10.50 | $325.00 | $3,412.50 |
| Daniel A. Edelman | Partner | 2.00 | $700.00 | $1,400.00 |
| James O. Latturner | Partner | 2.80 | $700.00 | $1,960.00 |
| Shelby Kost | Paralegal | 0.70 | $125.00 | $87.50 |
| Lauren Sanford | Paralegal | 19.30 | $125.00 | $2,412.50 |
| Lauren Muhr | Paralegal | 16.50 | $125.00 | $2,062.50 |
| Rufus Coates Welsh | | 5.10 | $125.00 | $637.50 |
| Sarah M Barnes | Associate | 84.50 | $230.00 | $19,435.00 |
| | Paralegal | 0.10 | $125.00 | $12.50 |
| Tara L. Goodwin | Partner | 0.30 | $600.00 | $180.00 |

Tot Hrs: 169.50